COPY

Peter J. Bezek, CA Bar No. 102310
Robert A. Curtis, CA Bar No. 203870
**FOLEY BEZEK BEHLE & CURTIS, LLP**
15 West Carrillo Street
Santa Barbara, California 93101
Telephone:  (805) 962-9495
Facsimile:   (805) 962-0722
pbezek@foleybezek.com
rcurtis@foleybezek.com

J. Paul Gignac, CA Bar No. 125676
**ARIAS OZZELLO & GIGNAC LLP**
115 S. La Cumbre Lane, Suite 300
Santa Barbara, California 93105
Telephone:  (805) 683-7400
Facsimile:   (805) 683-7401
j.paul@aogllp.com

Jeffrey S. Goldenberg (pending pro hac vice), Ohio Bar No. 0063771
Todd Naylor (pending pro hac vice), Ohio Bar. No. 0068388
**GOLDENBERG SCHNEIDER & GROH, LPA**
35 East Seventh Street, Suite 600
Cincinnati, Ohio 45202-2012
Telephone: (513) 345-8291
Facsimile: (513) 345- 8294
jgoldenberg@gsglegal.com
tnaylor@gsglegal.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| STEVE DOYLE AND JEAN WOODWARD  on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>      vs.<br><br>CHRYSLER GROUP, LLC, a Delaware limited liability company,<br><br>             Defendant. | Case No.:   SACV13-620 JVS(ANx)<br><br>**CLASS ACTION**<br><br>**COMPLAINT** |

All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge.   Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THIS ACTION

1.     Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons nationwide who purchased or leased 2005–2007 Jeep Liberty and Jeep Cherokee models ("Vehicles" or "Covered Vehicles") manufactured by defendant Chrysler Group, LLC ("Chrysler" or "Defendant").   Plaintiffs also bring this action on behalf of state-specific California and Texas Subclasses.

2.     Defendant   designed,   manufactured,   tested,   warranted,   advertised, distributed, sold and leased the Covered Vehicles with inherently defective window regulators, lift plates, and related mechanisms ("Regulators").

3.     While Defendant knew these Regulators were defective prior to offering the Covered Vehicles for sale, Plaintiffs and the members of the Class had no such knowledge. Despite its knowledge of the defect, Defendant did not affirmatively fix the defective Regulators or even disclose the existence of the defective

Regulators prior to selling or leasing the Covered Vehicles. Accordingly, Defendant affirmatively misrepresented to Plaintiffs and the Class that these Covered Vehicles were free of known defects (defects known to Defendant) at the time they were offered for sale or lease.

4.    The defective Regulators routinely fail, causing the affected window to bind, stick, tip forward, chatter and fall to the bottom of the door. Often the windows suddenly and loudly fall or drop out of position and down into the inside of the door frames. These failures occur when the windows are in a partially or totally closed position. The windows also stick in all positions, including closed, partially closed and totally open. In these instances, it is impossible to move the window to open or close it further. These failures occur while the motor is off and while it is running; the failures also occur while the Vehicles are standing still and while the Vehicles are being operated at all speeds.

5.    Defendant has issued multiple Technical Service Bulletins ("TSBs") to its dealerships addressing the defect. Copies of three such TSB's -- TSB 23-008-09 (dated April 15, 2009), TSB 23-026-10 (dated December 09, 2010), and TSB 23-002-11 (dated January 11, 2011) – are attached hereto as Exhibits 1, 2, and 3, respectively. Defendant did not provide these TSBs to the Plaintiffs or to members of the Class.

**COMPLAINT**

6.      These TSB's were designed to provide detailed instructions to technicians employed at Chrysler dealers on how to "repair" Regulators that have failed. However, the procedures mandated by the TSB's do not actually "repair" anything. Instead, they simply call for the replacement of the defective Regulators with identical or substantially similarly defective Regulators. Accordingly, the Regulators continue to repeatedly fail and break in a never ending cycle – usually at significant expense to Vehicle owners.

7.      Defendant implicitly acknowledges in the TSB's that the repeated Regulator failure is virtually inevitable, and that multiple "repair" attempts will likely be necessary to keep a Vehicle's windows functional during the life of the Vehicle. TSB 23-008-09 instructs technicians as follows: "Before proceeding, inspect the affected door to determine if any previous work has been completed on that door." Defendant created a specific door label (Part Number 68058661AA - "Door Label") that is to be installed on the door after the first "repair" attempt to "identify that this door has been modified and contains revised components internally."

8.      Defendant issued to all original purchasers and lessees, including Plaintiffs and the other Class members, a written manufacturer's warranty that expressly warranted that Defendant's Basic Limited Warranty "covers the cost of all parts and labor needed to repair any" item "that is defective in material, workmanship, or factory preparation." The Basic Limited Warranty goes on to state that "You

pay nothing for these repairs." A true and correct copy of the Basic Limited Warranty is attached hereto as Exhibit 4.

9.     In recognition of the ongoing and cyclical nature of the problem, Defendant sent letters in or about December 2010 to some but not all owners/ lessors of 2006-2007 Covered Vehicles informing them that they were eligible to receive repairs of their "Window Lift Plate" under an extended, 7 year/ unlimited mile warranty. A copy of this letter is attached hereto as Exhibit 5.

10.    Defendant stated in the letter that "We are extending the warranty period for Window Lift Plate repairs because some vehicles have experienced repeat concerns with window components. **If your vehicle is operating properly, there is nothing you are required to do**. If you are experiencing the conditions as described in this warranty extension within 7 years from the vehicle's in service date, simply contact your dealer to have the repairs performed. Your dealer will inspect the window regulators for proper operation and repair if necessary." (emphasis in original).

11.    TSB 23-026-10 (attached as Exhibit 2) sets forth the repair procedure used by Chrysler dealers to "repair" Vehicles covered by the extended 7 year/ unlimited mile warranty. It specifies that the extended warranty only applies to 2006-2007 model year vehicles "built on or after March 15, 2006." Defendant has issued no

similar extended warranty coverage for owners of Covered Vehicles built prior to March 15, 2006.

12.    Defendant (1) knew of the defects that were present in Covered Vehicles when they left Defendant's manufacturing facilities, and that the defects rendered the Vehicles unfit for their intended purposes; (2) failed to repair or disclose the defects prior to selling or leasing the Covered Vehicles; (3) failed to repair the defective Regulators as required by the Vehicles' Basic Limited Warranty and, at most, simply replaced and continue to replace defective parts with similarly defective parts; and (4) instituted an extended warranty program that fails to adequately compensate all Vehicle owners for their losses.

13.    Accordingly, Plaintiffs bring this action to assert the following claims on behalf of a nationwide class, and California and Texas subclasses, of Vehicle lessees and owners: violations of California and Texas consumer protection statutes (California and Texas subclasses); breach of express warranties (nationwide class); breach of implied warranties (nationwide class); and other common law causes of action (nationwide class).

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and

because this is a class action in which the members of the classes and Defendant are citizens of different states.

15.    Venue is proper in this judicial district under 28 U.S.C. §1391 because Plaintiff Steve Doyle resides in this district and because Defendant does business throughout this district.    At all pertinent times, Defendant was and is in the business of manufacturing, marketing, advertising, distributing, selling and leasing Covered Vehicles, throughout this judicial district, California, and the nation, by and through various authorized dealers.    The Covered Vehicles that form the basis of this Complaint were placed in the stream of commerce by Defendant.

## PARTIES

16.    Plaintiff Steve Doyle ("Plaintiff Doyle") is a California citizen residing in Santa Ana, California.    Plaintiff Doyle purchased a new 2005 Jeep Liberty in July 2005.

17.    Plaintiff Jean Woodward ("Plaintiff Woodward") is a Texas citizen residing in San Antonio, Texas.    Plaintiff Woodward purchased a new 2006 Jeep Liberty in August 2006.

18.    Defendant Chrysler Group, LLC ("Defendant" or "Chrysler") is a limited liability company formed on April 28, 2009 under the laws of the State of Delaware and has its principal place of business in Auburn Hills, Michigan.    On June 10, 2009, Defendant purchased substantially all of the assets of Chrysler LLC

**COMPLAINT**

(n/k/a Old Carco LLC) ("Old Carco"), which filed for Chapter 11 bankruptcy on April 30, 2009, and assumed the liabilities for the claims brought by Plaintiffs in this case. *See In re Old Carco LLC (f/k/a Chrysler LLC)*, Case No. 09-50002 (Bankr. S.D.N.Y.).

19.     In this Complaint, when reference is made to any act, deed or conduct of Defendant, the allegation means that Defendant engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendant.

## FACTUAL ALLEGATIONS

### Defendant's Failure to Fix or Disclose The Defect

20.     Defendant designed, engineered, manufactured, tested, warranted, advertised, distributed, sold and leased 2005-2007 Jeep Liberty and Cherokee vehicles equipped with defective Regulators.

21.     Upon information and belief, the same or substantially similar defect at issue in these Covered Vehicles was present in prior model years dating back to at least 2003.     Thus, Defendant knew the Regulators in the Covered Vehicles were defective prior to offering the Covered Vehicles for sale or lease.

22.     Rather than affirmatively fixing the defective Regulators or disclosing the existence of the defective Regulators prior to selling the Covered Vehicles to

Plaintiffs and the Class, Defendant failed to disclose the existence of the defective Regulators.  By failing to fix or disclose the existence of the known defect prior to offering the Covered Vehicles for sale or lease, Defendant affirmatively misrepresented that these Covered Vehicles were free of known defects at the time they were offered for sale and lease.

23.    These Regulators routinely fail in a sudden, loud and crashing fashion, and result in a shocking exposure to weather and debris, putting the driver and passengers at risk.  Moreover, the unexpected inability to close or open a failed window poses a substantial and unacceptable safety risk for persons and property inside the vehicles.  Examples from the hundreds of complaints about the defective Regulators in the Covered Vehicles posted on the National Highway Transportation Safety Administration include:

- "Window carrier on rear passenger window Jeep Liberty failed while in a car wash.  This resulted in window falling in its track with the consequent impact of baby in car seat exposed to soap, liquid and associated perils of brushes and poisons.  This is second identical failure of power window regulator in my vehicle…  Vehicle is 2007 Jeep Liberty with only 8500 miles on it…."

- "2007 Jeep Liberty.  4th time window regulator failed in past three years…Dealer people know about the problem but said no recall yet. I

COMPLAINT

guess someone has to die and sue them before they will recall… Please help us before someone gets really hurt."

- "I have a 2007 Jeep Liberty and I was driving along in the rain with my 3 year old daughter and 6 week son in the back.  The rear driver side window came crashing down out of nowhere soaking my son and daughter with the rain that was falling… I now have 2 sick children and I am going back to Afghanistan in 4 days.  Please Help!"

24.    Defendant issued to all original purchasers and lessees, including Plaintiffs and the other class members, a written manufacturer's warranty, the Defendant's Basic Limited Warranty, that "covers the cost of all parts and labor needed to repair any" item "that is defective in material, workmanship, or factory preparation."  The Basic Limited Warranty goes on to state that "You pay nothing for these repairs." See Exhibit 4.  In violation of this express warranty, and as evidenced by the many complaints or repeat Regulator failures, Defendant merely replaces a defective Regulator with another defective Regulator.

25.    Due to the inherent and permanent nature of the common defect in the Covered Vehicles' Regulators which cause them to fail, even after repeated replacements, Plaintiffs and the members of the Class have incurred and will continue to incur significant expenses.

26.    Additionally, because the Regulators fail at any time, Covered Vehicles (and any personal property located in Covered Vehicles) may be unexpectedly exposed to theft, vandalism, and weather damage and the passengers inside exposed to unsafe and dangerous conditions.  As such, the defective Regulators make these Covered Vehicles unfit for the use for which they were intended in that they cannot be relied upon as a safe and reliable means of transport.

### Plaintiffs' Experiences with the Defect

27.    Plaintiff Woodward purchased a new 2006 Jeep Liberty in August 2006 from the Ingram Park Chrysler Jeep dealership in San Antonio, Texas.  Plaintiff Woodward's 2006 Jeep Liberty is a Covered Vehicle and contains the defective Regulators. Plaintiff Woodward had no knowledge that the Regulators were defective at the time of purchase, and Defendant did not disclose the defect during the purchase process.

28.    Four Regulators have failed since Plaintiff Woodward purchased her 2006 Jeep Liberty.  The first Regulator (left rear window) failed and was allegedly "repaired" while the standard warranty was still in effect.  However, Defendant merely installed an equally defective Regulator.

29.    Following the expiration of the standard warranty, three more defective Regulators failed (one failure occurred in 2011 and two failures occurred in 2013).  Two of these three failures involved the left rear Regulator (the same Regulator

that allegedly had been "repaired" previously pursuant to the standard warranty) and one involved the right rear Regulator.  So, Plaintiff Woodward has had the left rear Regulator replaced three times and the right rear regulator replaced once. During each "repair," another defective Regulator was placed in her Vehicle. Plaintiff Woodward paid approximately $1,140 for these replacements.

30.     Plaintiff Steve Doyle ("Plaintiff Doyle") purchased a new 2005 Jeep Liberty from Long Beach Chrysler Jeep, Inc. in Long Beach, California, on or around July 31, 2005.  Plaintiff Doyle's 2005 Jeep Liberty is a Covered Vehicle and contains defective Regulators.  Plaintiff Doyle had no knowledge that the Regulators were defective at the time of purchase, and Defendant did not disclose the defect during the purchase process.

31.     Plaintiff Doyle purchased an optional 7 Year/ 70,000 Mile "Max Care" extended DaimlerChrysler Service Contract at the time of the purchase.  The extended warranty included a $100 deductible.

32.     Three regulators have failed since Plaintiff Doyle purchased his Covered Vehicle.  The first two Regulators were "repaired" under the terms of the "Max Care" extended warranty on August 4, 2009 and December 2, 2010, respectively. These "repairs" were performed subject to Plaintiff Doyle's payment of a $100 deductible for each service.  However, equally defective Regulators were installed.

33.    The third Regulator failed on Plaintiff Doyle's vehicle after his "Max Care" extended warranty expired; Plaintiff Doyle was forced to pay $284 to "repair" the Regulator on January 30, 2013. Once again, an equally defective Regulator was installed.

### Defendant's Warranties and Response to the Defect

34.    Defendant issued to all original purchasers and lessees, including Plaintiffs and the other Class members, a written manufacturer's warranty. This Basic Limited Warranty "covers the cost of all parts and labor needed to repair any" item "that is defective in material, workmanship, or factory preparation." The Basic Limited Warranty goes on to state that "You pay nothing for these repairs." Exhibit 4.

35.    Defendant knew, or at least should have known, of the defects in the Regulators at the time of sale or lease of the Covered Vehicles.  Plaintiffs and Class members, however, had no such knowledge.  The Regulator defects were and are latent in nature because they are not obvious or ascertainable upon reasonable examination.

36.    Despite having more than adequate opportunity to successfully remedy the defect(s) in the Regulators, Defendant has failed to do so, and has instead merely replaced defective Regulators with defective Regulators.

37.     Defendant concealed, and continues to conceal, the fact that the Covered Vehicles contain the defective Regulators. Defendant also continues to conceal the fact that the replacement Regulators are also defective.  Therefore, Plaintiffs did not discover and could not have discovered this defect through reasonable diligence.

38.     Plaintiffs and the other class members reasonably relied on Defendant's warranties regarding the quality, durability and other material characteristics of their Covered Vehicles, including but not limited to the representation that the Covered Vehicles contained no known defects (defects known to Defendant) at the time of sale or lease.

39.     Plaintiffs' claims for relief did not arise until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, Defendant's wrongful conduct.   Therefore, the applicable statutes of limitations have been tolled by Defendant's knowing and active concealment and denial of the material facts that the Covered Vehicles have the defective Regulators and that the replacement Regulators are also defective.  Accordingly, Chrysler is estopped from relying on any statute of limitations because of its concealment of the defective Regulators.

40.     Defendant intentionally kept Plaintiffs and the other Class members ignorant of vital information essential to pursue their claims, without any fault or lack of diligence on Plaintiffs' or Class members' part.  Plaintiffs and the other Class

**COMPLAINT**

members could not reasonably have discovered the fact that the Covered Vehicles have defective Regulators, or that Defendant simply replaced the defective Regulators with equally defective Regulators, when they purchased or leased their Covered Vehicles.

41.     Defendant was and is under a continuing duty to disclose to Plaintiffs and the other class members the true character, quality and nature of the Covered Vehicles, including the defective nature of the Regulators.

42.     At all relevant times, and continuing to this day, Defendant knowingly, affirmatively and actively misrepresented and concealed the true character, quality and nature of the Covered Vehicles, including the defective nature of Regulators. Plaintiffs and the other Class members reasonably and in good faith relied upon Defendant's affirmative misrepresentations and knowing, affirmative and/or active concealment. Based on the foregoing, Defendant is estopped from relying on any statutes of limitations in defense of this action and is estopped from relying on any express warranty limitations (including the extended warranties), including mileage and time limitations.

43.     Further, Defendant's express warranty has failed its essential purpose, as Defendant has not permanently repaired the defective Regulators. Accordingly, any limitations contained in the express warranties are unenforceable with respect to the defective Regulators in the Covered Vehicles.

**COMPLAINT**

44.    Defendant implicitly acknowledged that the limitations contained in the express warranties are unenforceable as to the Regulators when Defendant sent letters in or about December 2010 to certain owners/ lessors of 2006-2007 Covered Vehicles informing them that they were eligible for repairs of their "Window Lift Plate" under an extended, 7 year/ unlimited mile warranty.  Plaintiffs Woodward and Doyle did not receive a letter from Defendant extending the warranty for their Covered Vehicles

45.    Defendant stated in the letter that "We are extending the warranty period for Window Lift Plate repairs because some vehicles have experienced repeat concerns with window components. **If your vehicle is operating properly, there is nothing you are required to do**.  If you are experiencing the conditions as described in this warranty extension within 7 years from the vehicle's in service date, simply contact your dealer to have the repairs performed.  Your dealer will inspect the window regulators for proper operation and repair if necessary." (emphasis in original).  Exhibit 5

46.    TSB 23-026-10 sets forth the repair procedure used by Chrysler dealers to "repair" Vehicles covered by the extended 7 year/ unlimited mile warranty. It specifies that the extended warranty only applies to 2006-2007 model year vehicles "built on or after March 15, 2006."    Defendant has issued no similar extended

16

**COMPLAINT**

warranty coverage for owners of Covered Vehicles that fall outside the Scope of TSB 23-026-10.

47.    Defendant's extended warranty program insufficiently compensates owners and lessees of Covered Vehicles.  First, not all owners and lessees of Covered Vehicles are eligible for the extended warranty.  Second, "repairs" made pursuant to extended warranty simply replace defective Regulators with defective Regulators.  Third, Defendant's extended warranty program fails to fully reimburse Covered Vehicle owners and lessees for the loss of value to the Vehicles. Fourth, seven years is too short of a term, because the consumers reasonably expect the useful life of a Covered Vehicles to last longer.

## CLASS ACTION ALLEGATIONS

48.    Plaintiffs bring this action on behalf of themselves and all others similarly situated under Fed. R. Civ. P. 23.

49.    Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the Class that Plaintiffs seek to represent ("the Nationwide Class") shall be defined as follows:

> During the fullest period allowed by law, all persons nationwide that purchased or leased a Covered Vehicle manufactured by Chrysler.  Covered Vehicle is defined to include model years 2005 through 2007 Jeep Liberty vehicles and 2005 through 2007 Jeep Cherokee vehicles.

> Excluded from the Nationwide Class are:  (1) Defendant, any entity in which Defendant has a controlling interest, and its

legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) Class Counsel; and (4) any Covered Vehicle with a build date prior to June 10, 2004.

50.   Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiff Doyle also seeks to represent a California resident subclass ("the California Subclass") defined as follows:

> During the fullest period allowed by law, all persons in the State of California that purchased or leased a Covered Vehicle manufactured by Chrysler.  Covered Vehicle is defined to include model years 2005 through 2007 Jeep Liberty vehicles and 2005 through 2007 Jeep Cherokee vehicles.

> Excluded from the California Subclass are:  (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) Class Counsel; and (4) any Covered Vehicle with a build date prior to June 10, 2004.

51.   Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiff Woodward also seeks to represent a Texas resident subclass ("the Texas Subclass") defined as follows:

> During the fullest period allowed by law, all persons in the State of Texas that purchased or leased a Covered Vehicle manufactured by Chrysler.  Covered Vehicle is defined to include model years 2005 through 2007 Jeep Liberty vehicles and 2005 through 2007 Jeep Cherokee vehicles.

**COMPLAINT**

> Excluded from the Texas Subclass are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) Class Counsel; and (4) any Covered Vehicle with a build date prior to June 10, 2004.

52.    As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and/or the members of the California and Texas Subclasses, including Plaintiffs.

53.    Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death or emotional distress suffered by Plaintiffs and/or the Class Members.

54.    While the exact number of Class Members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Nationwide Class and/or Subclasses is ascertainable based upon the records maintained by Defendant and governmental officials. Upon information and belief, Defendant sold and leased several hundred thousand Covered Vehicles nationwide during the relevant time period, all of which have the defective Regulators at issue. Moreover, upon information and belief, Defendant sold and leased substantially more than forty Covered Vehicles in the states of California and Texas, respectively. Therefore, the Class Members are so numerous that

**COMPLAINT**

individual joinder of all Class Members is impracticable under Fed. R. Civ. P. 23(a)(1).

55.    Common questions of law and fact exist as to all Class Members, as required by Fed. R. Civ. P. 23(a)(2), and final injunctive relief is appropriate respecting the Class as a whole because Defendant has acted or refused to act on grounds that generally apply to the Class, within the meaning of Fed. R. Civ. P. 23(b)(2).  These common legal and factual questions include:

a)  whether each Covered Vehicle was sold or leased with defective Regulators;

b)  whether Defendant's express warranty covers the defects;

c)  whether Defendant breached express warranties made to the Class Members;

d)  whether Defendant breached implied warranties made to the Class Members;

e)  whether Defendant knew that the Regulators in the Covered Vehicles were defective at the time of sale or lease;

f)  whether Defendant should have know that the Regulators in the Covered Vehicles were defective at the time of sale or lease;

g)  whether Defendant replaced defective Regulators with defective Regulators;

h) whether Defendant concealed the defects; and

i) whether the Class Members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution of value; and

j) whether the Class Members are entitled to injunctive relief.

56. Plaintiffs' claims are typical of the claims of the Class Members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class Member have a Covered Vehicle with the same defective Regulators.

57. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class Members. Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously. Therefore, the interests of the Class Members will be fairly and adequately protected.

58. A class action is superior to any other available means for fairly and efficiently adjudicating the controversy. In this regard, the Class Members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden and expense of individual prosecutions against large corporations such as Defendant. Further, neither Plaintiffs nor their counsel is

aware of any on-going litigation concerning this controversy already begun by any of the Class Members. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendant's records and the records available publicly will easily identify the Class Members. This defect is common to all Covered Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class Members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale and comprehensive supervision by a single court

59.    A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendant has acted or refused to act on grounds that apply generally to the Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members, including but not limited to extending the warranty for all Covered Vehicles for the lifetime of the Covered Vehicles as to these Regulators.

**COMPLAINT**

## FIRST CLAIM FOR RELIEF

### Breach of Express Warranty

### (Asserted on behalf of the Nationwide Class)

60.     Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 thru 59 inclusive as if fully alleged herein.

61.     In the course of selling its Covered Vehicles, Defendant expressly warranted that the Basic Limited Warranty "covers the cost of all parts and labor needed to repair any" item "that is defective in material, workmanship, or factory preparation." The Basic Limited Warranty goes on to state that "You pay nothing for these repairs."

62.     Upon information and belief, Defendant's standard warranty language is identical for all Covered Vehicles sold nationwide.

63.     Defendant did not provide at the time of sale, and has not provided since then, vehicles conforming to the express warranties.

64.     Defendant breached and continues to breach express warranties because the defective Regulators were present in the Covered Vehicles at the time of sale.

65.     Defendant breached and continues to breach express warranties because Defendant did not (and does not) cover the full expenses associated with repairing and/or replacing the defective Regulators in Plaintiffs' and the Class Members' Covered Vehicles.

66.    Defendant breached and continues to breach express warranties because it merely replaces the defective Regulators with additional defective Regulators and is unable to successfully repair the defective Regulators in Plaintiffs' and the Class Members' Covered Vehicles, despite having had reasonable opportunities to do so. As such, the express warranties fail their essential purpose.

67.    Despite the fact that the Regulators continue to fail despite being "repaired," Defendant continues to replace the defective parts with identical or substantially similar defective Regulators.  Thus, the defect is inherent and permanent in nature.

68.    Defendant acknowledges that the failures recur and that multiple Repairs will be necessary. TSB-23-008-09 instructs Chrysler technicians as follows: "Before proceeding, inspect the affected door to determine if any previous work has been completed on that door."  (Exhibit 1.)  Defendant devised a Door Label that is to be installed on the door after the first repair to "identify that this door has been modified and contains revised components internally."

69.    Defendant actually knew of and intentionally concealed the Regulator defects in the Covered Vehicles from Plaintiffs and the Class Members.

70.    Defendant fraudulently concealed material information from Plaintiffs and the Class regarding the existence and extent of the Regulator defects.  Defendant also fraudulently concealed the material fact that the replacement Regulators were defective.  Therefore, any limitations imposed by Defendant as to the scope of their

COMPLAINT

obligations under the express warranties to repair and adjust defective parts and/or any disclaimers in the written warranties prepared by Defendant that purport to preclude recovery by Plaintiffs or the Class Members are unconscionable, both substantively and procedurally, and are unenforceable as a matter of law.

71.    Any such limitations or exclusions have been imposed unilaterally by Defendant via adhesive, "take it or leave it" contracts with no ability by Plaintiffs or the Class Members to negotiate the substance or coverage of the warranties, and Plaintiffs and the Class Members did not have any meaningful choices of reasonably available alternative sources of supply of suitable Vehicles free of the above unconscionable conditions.

72.    Furthermore, Defendant's express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Class Members whole and because Defendant has failed and/or refused to adequately provide the promised remedies within a reasonable time.

73.    Accordingly, recovery by Plaintiffs and the Class Members is not limited to the limited warranty of repair or replacement of parts defective in materials and workmanship and factory preparation, and Plaintiffs and the Class Members seek all remedies as allowed by law.

74.    Also, as alleged herein, at the time that Defendant warranted and sold the Vehicles, it knew that the Vehicles were inherently defective, and Defendant

wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs and the Class Members were therefore induced to purchase the Vehicles under false and/or fraudulent pretenses.

75. Further, the enforcement under these circumstances of any limitations whatsoever on the recovery of incidental and/or consequential damages is barred because any such limitations work to reallocate the risks between the parties in an unconscionable and objectively unreasonable manner, and result in overly harsh or one-sided results that shock the conscience, especially in light of the fact that Defendant simply placed defective Regulators in the Vehicles when those Vehicles are brought in for repairs.

76. Moreover, many of the damages flowing from the Vehicles cannot be resolved by the limited remedies contained in the express warranty as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein and due to their failure to provide such limited remedy within a reasonable time. Therefore, any limitation on Plaintiffs' and the Class Members' remedies would cause the available remedy to be insufficient to make them whole.

77. Defendant was previously provided notice of the defects in the Regulators by numerous customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

78.    Plaintiffs and the Class Members have suffered damages directly and proximately caused by Defendant's breach of the express warranty and are entitled to recover damages including, but not limited to, out of pocket expenses to replace the Regulators and diminution of value.

## SECOND CLAIM FOR RELIEF

### Breach of Implied Warranty of Fitness for Ordinary Use and Merchantability

### (Asserted on behalf of Nationwide Class)

79.    Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 thru 78 inclusive as if fully re-alleged herein.

80.    At all relevant times, Defendant marketed, sold, and distributed the Vehicles for use by Plaintiffs and Class Members and Defendant knew of the use for which the Vehicles were intended, and impliedly warranted the Vehicles to be for ordinary use.

81.    The Vehicles, when sold, were defective, unmerchantable, and unfit for ordinary use.

82.    As described throughout the Complaint, the Vehicles contain defective Regulators which render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class Members would not have purchased the Defective Vehicles had they known of the defects.

**COMPLAINT**

83.    The damages at issue arose from the reasonably anticipated use of the Vehicles.

84.    Defendant breached the implied warranties of merchantability and fitness for ordinary use when the Vehicles were sold to Plaintiffs and Class Members because the Regulators repeatedly fail such that the windows are not operational.

85.    As a direct and proximate result of Defendant's breach of the implied warranties of merchantability and fitness for ordinary use, Plaintiffs and Class Members have suffered damage.

### THIRD CLAIM FOR RELIEF

### Negligence

### (Asserted on behalf of Nationwide Class)

86.    Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 thru 85 inclusive as if fully re-alleged herein.

87.    Defendant had a duty to Plaintiffs and Class Members to provide a safe product in design and manufacture and to notify and warn NHTSA of the defective Regulators.

88.    Defendant breached this duty of reasonable care to Plaintiffs and Class Members by designing defective Regulators in such a manner that they are prone to failure.

89.    Defendant breached this duty of reasonable care to Plaintiffs and Class Members by manufacturing and/or assembling the Vehicles in such a manner that the Regulators repeatedly fail.

90.    Defendant breached this duty of reasonable care to Plaintiffs and Class Members by failing to recall the Vehicles at the earliest possible date.

91.    Defendant breached this duty of reasonable care to Plaintiffs and Class Members by failing to exercise due care under the circumstances.

92.    As a direct and proximate result of Defendant's negligence as set forth above, Plaintiffs and Class Members have sustained and will continue to sustain damages including but not limited to loss of use of their Vehicles, economic losses, consequential damages, and equitable and declaratory relief.

## FOURTH CLAIM FOR RELIEF

### Breach of Duty of Good Faith and Fair Dealing

### (Asserted on behalf of Nationwide Class)

93.    Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 thru 92 inclusive as if fully re-alleged herein.

94.    Every contract contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

95.     Defendant breached the covenant of good faith and fair dealing by, among other things, failing to disclose to Plaintiffs and Class Members the known defective Regulators and by failing to actually repair the defective Regulators (as opposed to merely replacing defective Regulators with defective Regulators).

96.     Defendant acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class Members some benefit of the bargain originally intended by the parties, thereby causing them damage in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### Unjust Enrichment

### (Asserted on behalf of Nationwide Class)

97.     Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 thru 96 inclusive as if fully re-alleged herein.

98.     As a direct and proximate result of Defendant's failure to disclose the known defective Regulators and material misrepresentations regarding the known defective Regulators and the scope of warranty coverage in the Vehicles, Defendant has profited through the sale and lease of these Vehicles. Although these Vehicles are purchased and leased through Defendant's agents, the money from the Vehicle sales flows directly back to Defendant.

99.     Additionally, as a direct and proximate result of Defendant's failure to disclose the known defective Regulators and material misrepresentations regarding

**COMPLAINT**

the known defective Regulators, Plaintiffs and Class Members have incurred substantial cost to replace the defective Regulators and therefor have conferred an unjust substantial benefit upon Defendant.

100.    Further, as a direct and proximate result of Defendant's failure to disclose the known defective Regulators and material misrepresentations regarding the known defective Regulators, Defendant has profited to the extent that Plaintiffs and Class Members purchased and leased the Covered Vehicles, purchased certified Chrysler parts directly from Defendant to replace the defective Regulators, and had to pay for repairs out of their own pockets that should have been covered under warranty or otherwise paid by Defendant.

101.    Defendant has therefore been unjustly enriched due to the known defective Regulators through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiffs and Class Members.

## SIXTH CLAIM FOR RELIEF

### Breach of Express Warranty – Cal. Com. Code § 2313

### (Asserted on Behalf of California Subclass)

102.    Plaintiffs Doyle repeats and incorporates the allegations set forth in paragraphs 1 thru 101 inclusive as if fully re-alleged herein.

103.    As express warrantors and manufacturers and merchants, Defendant had certain obligations under the Cal. Com. Code § 2313 to conform the Covered Vehicles to the express warranties.

104.    When Plaintiff Doyle and the members of the California Subclass purchased and/or leased their Covered Vehicles (either as new vehicles or as a used vehicle with remaining warranty coverage), Defendant expressly warranted that the Basic Limited Warranty "covers the cost of all parts and labor needed to repair any" item "that is defective in material, workmanship, or factory preparation." The Basic Limited Warranty goes on to state that "You pay nothing for these repairs."

105.    The defects at issue in this litigation were present at the time or sale and lease to Plaintiff Doyle and members of the California Subclass.    Further, Defendant knew of the defective Regulators but failed to fix or disclose the defect prior to offering these Vehicles for sale or lease.

106.    Defendant breached its express warranties (and continues to breach these express warranties) because they did not (and do not) cover all of the expenses associated with replacing the defective Regulators in Plaintiff Doyle's and the California Subclass members' Covered Vehicles.    Defendant further breached these express warranties because the same or substantially similar defective Regulators were placed in the Covered Vehicles when factory-supplied defective Regulators were "repaired."

107.    Pursuant to the express warranties, Defendant was obligated to pay for or reimburse Plaintiff Doyle and the California Subclass members for costs incurred in replacing the defective Regulators.

108.    Pursuant to the express warranties, Defendant was also obligated to repair the defects.

109.    Defendant and its agent dealers have failed and refused to conform the Covered Vehicles to the express warranties and Defendant's conduct, as discussed throughout this Complaint, has voided any attempt on their part to disclaim liability for their actions.

110.    Plaintiff Doyle has performed each and every duty required of him under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

111.    Defendant received timely notice regarding the problems at issue in this litigation (indeed Defendant knew, or should have known, of the defects prior to offering the Covered Vehicles for sale or lease) and, notwithstanding such notice, Defendant has failed and refused to offer an effective remedy.

112.    In addition, Defendant has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defects at issue in this litigation.

**COMPLAINT**

113.    In their capacity as suppliers and/or warrantors, and by the conduct described herein, any attempt by Defendant to limit their express warranties in a manner that would exclude or limit coverage for the defective Regulators and related defects that were present as of the time of sale or lease, which Defendant knew, or should have known, about prior to offering the Covered Vehicles for sale or lease, which Defendant concealed and did not disclose, and which Defendant did not remedy prior to sale or lease (or afterward) is unconscionable and any such effort to disclaim or otherwise limit liability for the defects at issue is null and void.

114.    Accordingly, Plaintiff Doyle and the California Subclass members suffered damages caused by Defendant's breach of the express warranties and are entitled to recover damages, including but not limited to out of pocket expenses to replace the Regulators and diminution of value.

## SEVENTH CLAIM FOR RELIEF

### Breach of the Implied Warranty of Merchantability -- Cal. Com. Code § 2314

### (Asserted on behalf of the California Subclass)

115.    Plaintiff Doyle repeats and incorporates the allegations set forth in paragraphs 1 thru 114 inclusive as if fully re-alleged herein.

116.    Defendant is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

117.   A warranty that the Covered Vehicles were in merchantable condition was implied by law in the transactions at issue in this litigation pursuant to Cal. Com. Code § 2314.

118.   The Covered Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are to be used, including, but not limited to, providing a safe and reliable mode of transport and "off road" use.  Specifically, the Covered Vehicles are inherently defective in that there are defects in the Regulators that cause the front and rear windows to bind, stick, tip forward, chatter and fall to the bottom of the door. Often the windows suddenly and loudly fall or drop out of position and down into the inside of the door frames.  These failures occur when the windows are in a partially or totally closed position.  The windows also stick in all positions, including closed, partially closed or totally open.  In these instances, it is impossible to move the window to open or close it further.  These failures occur while the motor is off and while it is running.  The failures also occur while the Covered Vehicles are standing still and while the Covered Vehicles are being operated at all speeds.

119.   Defendant was previously provided notice of the defects in the Window Regulators by numerous customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

Indeed, as discussed above, Defendant knew, or at least should have known, of the defects prior to offering these Vehicles for sale or lease. Despite this knowledge, Defendant did not repair or disclose the defects prior to offering these Vehicles for sale or lease.

120.    Plaintiff Doyle and the members of the California Subclass have had sufficient dealings with either the Defendant or their agents (dealerships) to establish privity of contract.  Notwithstanding this, privity is not required in this case because Plaintiff Doyle and members of the California Subclass are intended third-party beneficiaries of contracts between Defendant and their dealers; specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Covered Vehicles and have no rights under the warranty agreements provided with the Covered Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiff Doyle's and the California Subclass members' Covered Vehicles are dangerous instrumentalities due to the defective Regulators.

121.    Plaintiff Doyle and the members of the California Subclass have suffered damages directly and proximately caused by Defendant's breach of this implied warranty of merchantability and are entitled to recover damages including, but not

limited to, out of pocket expenses to replace the Regulators and diminution of value.

## EIGHTH CLAIM FOR RELIEF

**Violation Of The Consumers Legal Remedies Act: Civil Code §1750,** *et seq.*

**(Asserted on behalf of the California Subclass)**

122.    Plaintiff Doyle repeats and incorporates the allegations set forth in paragraphs 1 thru 121 inclusive as if fully re-alleged herein.

123.    Defendant is a "person" under California Civil Code §1761(c).

124.    Plaintiff Doyle and the California Subclass members are "consumers" as defined by California Civil Code § 1761(d), who purchased or leased one or more Covered Vehicles.

125.    Plaintiff Doyle files concurrently herewith a declaration demonstrating that venue in this judicial district is proper, to the extent required by California Civil Code § 1780(d).

126.    Defendant participated in unfair or deceptive acts or practices that violated the Consumers Legal Remedies Act Cal. Civ. Code § 1750, *et seq.*, ("CLRA"), as described throughout this Complaint.

127.    By failing to disclose and actively concealing the known defective Regulators prior to and after sale or lease, by failing to fix the known defective Regulators prior to offering the Vehicles for sale and lease, and by merely replacing

defective Regulators with other defective Regulators, Defendant has engaged in deceptive business practices prohibited by the CLRA, including:

a. representing that the Covered Vehicles are of a particular standard, quality and grade, when they are not;

b. representing that the Covered Vehicles have characteristics, uses, benefits and qualities which they do not;

c. advertising the Covered Vehicles with the intent not to sell them as advertised;

d. representing that a transaction involving a Covered Vehicle confers or involves rights, remedies and obligations which it does not; and

e. representing that the subject of a transaction involving a Covered Vehicle was supplied in accordance with a previous representation, when it was not.

128.    As alleged throughout this Complaint, Defendant made numerous, material statements about the Covered Vehicles and the warranties associated therewith that were either false or misleading.    Each of these statements contributed to the deceptive context of Defendant's unlawful advertising and representations as a whole.

129.    Defendant knew that the Regulators were defective in, among other things, design, assembly, manufacturing, workmanship, engineering, and factory preparation, would repeatedly fail without warning, and were not suitable for their intended use.    Nevertheless, Defendant failed to warn Plaintiff Doyle and the California Subclass members about these inherent dangers despite having a duty to do so.

130.    Defendant owes Plaintiff Doyle and the California Subclass members a duty to disclose the defective nature of the Regulators because Defendant:

        a.     Possesses exclusive knowledge of the defect rendering the Regulators inherently more dangerous and unreliable than similar vehicles;

        b.     Intentionally concealed the defective Regulators; and/or

        c.     Made representations in their Basic Limited Warranty that they would actually repair the Regulators, not simply replace the original defective Regulators with other defective Regulators.

131.    Covered Vehicles pose an unreasonable risk of serious injury to Plaintiff Doyle, the California Subclass members, their passengers, and other motorists and pedestrians because they are susceptible to sudden and unexpected window failures at any time and at any speed.

132.    Whether or not a vehicle's windows function properly is a fact that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.    Also, whether or not Defendant would satisfy their express warranty obligations is a fact that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.    When Plaintiff Doyle and the California Subclass members bought Covered Vehicles for personal, family or household purposes, they reasonably expected the Covered Vehicles' windows would properly function and not repeatedly fail, and that Defendant would satisfy its express warranty obligations and not merely replace defective Regulators with defective Regulators.

133.    Defendant's unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Doyle and the California Subclass members, about the true safety and reliability of the Covered Vehicles.

134.    Plaintiff Doyle and the California Subclass members risk irreparable injury as a result of Defendant's acts and omissions in violation of the CLRA, and these violations present a continuing risk.    Accordingly, Plaintiff Doyle and the California Subclass members seek an order enjoining Defendant's unfair or deceptive acts or practices.

135.    Following compliance with the notice and demand requirements of Cal. Civil Code §1782(a), Plaintiff Doyle shall amend this complaint to seek recovery of

compensatory damages (including, but not limited to, diminution of value), restitution and punitive damages pursuant to Cal. Civil Code § 1780(a), as well as reasonable attorneys' fees and expenses pursuant to Cal. Civil Code § 1780(e)).

## NINTH CLAIM FOR RELIEF

### Violation Of California Bus. & Prof. Code §17200 *et seq.*

### (Asserted on behalf of the California Subclass)

136.    Plaintiff Doyle repeats and incorporates the allegations set forth in paragraphs 1 thru 135 inclusive as if fully re-alleged herein.

137.    The Unfair Competition Law, California Business and Professions Code §17200 ("UCL"), prohibits any "unlawful, unfair, or fraudulent business act or practices." Defendant has engaged in unlawful, unfair and fraudulent business acts or practices in violation of the UCL as described throughout this Complaint.

138.    Defendant has violated the unlawful prong of section 17200 by its violations of the CLRA, as set forth in the Eighth Claim for Relief.

139.    Defendant has violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the material express warranty were likely to deceive a reasonable consumer.

140.    Defendant has violated the unfair prong of section 17200 because the acts and practices set forth in this Complaint, including the manufacture and sale of vehicles with known defective Regulators, the failure to adequately repair this

defect despite having multiple opportunities to do so, and the failure to disclose or warn consumers about the known defects offend established public policy, and because the harm caused to consumers greatly outweighs any benefits associated with those practices. Defendant's conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff Doyle from making fully informed decisions about whether to purchase or lease a Covered Vehicle and/or the price to be paid to purchase or lease a Covered Vehicle.

141.   Plaintiff Doyle has suffered an injury in fact, including the loss of money or property, as a result of Defendant's unlawful, unfair and/or deceptive practices.  In purchasing or leasing his Covered Vehicle, Plaintiff Doyle relied on the misrepresentations and omissions of Defendant with respect to the express warranty and the quality of the Covered Vehicle.  If Plaintiff Doyle had known the true nature of his Covered Vehicle and the defective Regulators, including that Defendant merely replaced defective Regulators with defective Regulators, he would not have purchased his Covered Vehicle.

142.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated in the State of California.

143.    Plaintiff Doyle requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful and /or fraudulent practices.

144.    In addition, Defendant should be ordered to restore to Plaintiff Doyle and the California Subclass members any monies Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345.

## TENTH CLAIM FOR RELIEF

### Violation Of California Bus. & Prof. Code §17500 *et seq.*

### (Asserted on behalf of the California Subclass)

145.    Plaintiff Doyle repeats and incorporates the allegations set forth in paragraphs 1 thru 144 inclusive as if fully re-alleged herein.

146.    Under California Business and Professions Code § 17500 *et seq.*, the False Advertising Act, it is unlawful for any person, firm, corporation or association, or any employee thereof, with intent directly or indirectly to dispose of real or personal property to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or in any other manner or means whatever, including over the Internet, any

statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

147.   At all times herein, Defendant caused to be made or disseminated throughout California, through advertising, marketing and other publications, statements that were untrue or misleading and that were known, or that by the existence of reasonable care should have been known, to Defendant to be untrue and misleading to Plaintiff Doyle and the California Subclass members.

148.   Defendant has violated section 17500 because the misrepresentations, misdescriptions and/or omissions regarding the express warranty, off road worthiness, safety, and reliability of the Covered Vehicles, and that the Vehicles were free of known defects (defects known to Defendant) at the time of sale or lease -- as set forth in this Complaint were material and likely to deceive a reasonable consumer.

149.   Plaintiff Doyle and the members of the California Subclass have suffered an injury in fact, including the loss of money or property, as a result of Defendant's false advertising.  In purchasing or leasing Covered Vehicles, Plaintiff Doyle and the California Subclass members relied on Defendant's misrepresentations and/or omissions.  If Plaintiff Doyle and the California Subclass members had known the true facts regarding the Covered Vehicles, they would not have purchased or leased the Covered Vehicles and/or paid as much for them. Further, Plaintiff Doyle and the

California Subclass members have suffered injury in fact and have suffered an economic loss by, inter alia, (a) purchasing or leasing an inferior vehicle whose nature and characteristics render it of lesser value than represented; (b) incurring costs for diminished resale value of the vehicles purchased; (c) purchasing or leasing a vehicle that poses a danger to the health and safety of not only the purchaser but also occupants, other motorists and pedestrians; and (d) incurring increased costs to repeatedly replace the defective Regulators.

150.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated in California.

151.    Plaintiff Doyle requests that the Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing this conduct as described throughout this Complaint.

152.    In addition, Defendant should be ordered to restore to Plaintiff Doyle and the California Subclass members any monies Defendant acquired by false advertising, including restitution and/or restitutionary disgorgement.

## ELEVENTH CLAIM FOR RELIEF

### Breach of Contract/Common Law Warranty

### (Asserted on behalf of the California Subclass)

153.    Plaintiff Doyle repeats and incorporates the allegations set forth in paragraphs 1 thru 152 inclusive as if fully re-alleged herein.

154.    To the extent that Defendant's express warranty commitments are not deemed to be a warranty under the California Commercial Code, Plaintiff Doyle pleads in the alternative under common law warranty and contract law.  Defendant limited the remedies available to Plaintiff Doyle and the California Subclass members to just repair of any defective item.

155.    Defendant breached this warranty or contract obligation by failing to repair the Covered Vehicles and/or by replacing the defective Regulators with defective Regulators.

156.    As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiff Doyle and the California Subclass members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory, incidental, consequential and other damages allowed by law.

## TWELTH CLAIM FOR RELIEF

### Fraud by Concealment

### (Asserted on behalf of the California Subclass)

157.    Plaintiff Doyle repeats and incorporates the allegations set forth in paragraphs 1 thru 156 inclusive as if fully re-alleged herein.

COMPLAINT

158.    Defendant concealed and/or suppressed, and continues to conceal and suppress, material facts concerning the Covered Vehicles from Plaintiff Doyle and the California Subclass members, including the defective nature of the Regulators, and Defendant's replacement of defective Regulators with defective Regulators. Despite the fact that these defective Regulators pose substantial safety concerns, Defendant has failed to issue any advisories to Plaintiff Doyle and the California Subclass members regarding the defects.   These facts and other facts as alleged herein were material because reasonable people attach importance to the existence or nonexistence of defects and the ability to actually repair such defects when deciding which vehicle to purchase.

159.    Defendant had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendant who had superior knowledge and access to the facts, and Defendant knew these facts were not known or reasonably discoverable by Plaintiff Doyle and the California Subclass members.   These omitted facts were material because they directly impact the safety of the Covered Vehicles.   Whether a Vehicle's windows will cease to open and/or close is a material safety concern.   Whether defective Regulators are replaced with defective Regulators is a material safety concern.   Defendant possesses exclusive knowledge of these defects that render these Vehicles inherently more dangerous and unreliable than similar vehicles.

160.    Defendant actively concealed and/or suppressed (and continues to actively conceal and suppress) these material facts, in whole or in part, with the intent to induce Plaintiff Doyle and the California Subclass members to purchase the Covered Vehicles at a higher price, which did not match the Covered Vehicles' true value and/or to force Plaintiff Doyle and the California Subclass members to pay for multiple Regulators for which they should not have had to pay.

161.    Plaintiff Doyle and the California Subclass members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.   The actions of Plaintiff Doyle and the California Subclass members were justified.   Defendant was in exclusive control of the material facts, and such facts were not known to the public or the members of the California Subclass.

162.    As a result of the concealment and/or suppression of these material facts, Plaintiff Doyle and the California Subclass members sustained damages.   For those who elect to affirm the purchase of the Covered Vehicles, these damages, pursuant to Cal. Civ. Code §3343, include the difference between the actual value of that which Plaintiff and the California Subclass members paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.   For those who elect to

rescind the purchase, such persons are entitled to restitution and consequential damages pursuant to Cal. Civ. Code § 1692.

163.    Defendant's on-going and active concealment was done maliciously, oppressively, deliberately, with intent to defraud and in reckless disregard of Plaintiff Doyle's and the California Subclass members' rights and well-being and solely to enrich Defendant.    Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof at trial.

## THIRTEENTH CLAIM FOR RELIEF

### Violation of Tex. Bus. & Com. Code § 17.41 *et seq.*

### (Asserted on Behalf of Texas Subclass)

164.    Plaintiff Woodward repeats and incorporates the allegations set forth in paragraphs 1 thru 163 inclusive as if fully re-alleged herein.

165.    Defendant's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq.* ("TDTPA").

166.    At all relevant times, Plaintiff Woodward and all members of the Texas Subclass were "consumers" within the meaning of the TDTPA.

COMPLAINT

167.    Defendant's conduct, as set forth throughout this Complaint, occurred in the conduct of "trade or commerce" within the meaning of the TDTPA.

168.    The practices of Defendant, described above, violate the TDTPA for, inter alia, one or more of the following reasons:

    a.    Defendant represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

    b.    Defendant provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Covered Vehicles;

    c.    Defendant represented that goods or services were of a particular standard, quality, or grade, when they were of another;

    d.    Defendant engaged in unconscionable commercial practices in failing to reveal material facts and information about the Covered Vehicles, which did, or tended to, mislead Plaintiff Woodward and the Texas Subclass about facts that could not reasonably be known by the consumer;

**COMPLAINT**

e.  Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.  Defendant caused Plaintiff Woodward and the Texas Subclass to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

g.  Defendant failed to reveal material facts to Plaintiff Woodward and the Texas Subclass with the intent that Plaintiff Woodward and the Texas Subclass members rely upon the omission;

h.  Defendant made material representations and statements of fact to Plaintiff Woodward and the Texas Subclass that resulted in Plaintiff Woodward and the Texas Subclass reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

i.  Defendant intended that Plaintiff Woodward and the other members of the Texas Subclass would rely on their misrepresentations and omissions, so that Plaintiff Woodward and other Texas Subclass members would purchase the Covered Vehicles.

**COMPLAINT**

169.   Under all of the circumstances described in this Complaint, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

170.   Defendant also breached express and implied warranties to Plaintiff Woodward and the Subclass, as set forth herein, and is therefore liable to Plaintiff Woodward and the Texas Subclass for damages under the TDTPA.  Defendant's actions also constitute an unconscionable action or course of conduct under the TDTPA.

171.   Defendant's actions impact the public interest because Plaintiff Woodward and members of the Texas Subclass were injured in exactly the same way as thousands of others purchasing and/or leasing the Covered Vehicles as a result of and pursuant to Defendant's generalized course of deception as described throughout the Complaint.

172.   Had Plaintiff Woodward and other members of the Texas Subclass known of the defective Regulators in the Covered Vehicles, they would not have purchased the Vehicles or would have paid less for them.

173.   The foregoing acts, omissions, and practices proximately caused Plaintiff Woodward and other members of the Texas Subclass to suffer actual damages in the form of, inter alia, monies spent to replace the Regulators and/or diminution in

value of the Covered Vehicles, and they are entitled to recover such damages, together with appropriate damages, attorneys' fees and costs of suit.

## FOURTEENTH CLAIM FOR RELIEF

### Breach of Express Warranty – Tex. Bus. & Com. Code § 2.313

### (Asserted on Behalf of Texas Subclass)

174.   Plaintiff Woodward repeats and incorporates the allegations set forth in paragraphs 1 thru 173 inclusive as if fully re-alleged herein.

175.   As an express warrantor and manufacturer and merchant, Defendant had certain obligations under Texas Bus. & Com. Code § 2.313 to conform the Covered Vehicles to the express warranties.

176.   When Plaintiff Woodward and the members of the Texas Subclass purchased and/or leased their Covered Vehicles (either as new vehicles or as a used vehicle with remaining warranty coverage), Defendant expressly warranted that its Basic Limited Warranty "covers the cost of all parts and labor needed to repair any" item "that is defective in material, workmanship, or factory preparation." The Basic Limited Warranty goes on to state that "You pay nothing for these repairs."

177.   The defects at issue in this litigation were present at the time of sale and lease to Plaintiff Woodward and members of the Texas Subclass, and Defendant knew about the defective Regulators prior to offering the Vehicles for sale or lease.

**COMPLAINT**

178.   Defendant breached its express warranties (and continues to breach these express warranties) because it knew the Vehicles contained defective regulators at the time of sale or lease and did not repair or disclose the defects prior to offering these Vehicles for sale and it did not (and does not) fully cover the expenses associated with replacing the defective Regulators in Plaintiff Woodward's and the Texas Subclass members' Covered Vehicles. Defendant further breached these express warranties because similarly defective Regulators were placed in the Covered Vehicles when the factory-supplied defective Regulators were allegedly "fixed."

179.   Pursuant to the express warranties, Defendant was obligated to pay for or reimburse Plaintiff Woodward and the Texas Subclass members for all costs incurred in replacing the defective Regulators.

180.   Pursuant to the express warranties, Defendant was also obligated to repair the defects.  Defendant and its agent dealers have failed and refused to conform the Covered Vehicles to the express warranties and Defendant's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

181.   Plaintiff Woodward has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the

conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

182.   Defendant received timely notice regarding the problems at issue in this litigation (indeed Defendant knew of the defects prior to offering the Covered Vehicles for sale or lease) and, notwithstanding such notice, Defendant has failed and refused to offer an effective remedy.

183.   In addition, Defendant has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defective Regulators at issue in this litigation.

184.   In their capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to limit their express warranties in a manner that would exclude or limit coverage for the defective Regulators that were present as of the time of sale or lease, which Defendant knew (or should have known) about prior to offering the Covered Vehicles for sale or lease, which Defendant concealed and did not disclose, and which Defendant did not remedy prior to sale or lease (or afterward) is unconscionable and any such effort to disclaim or otherwise limit liability for the defects at issue is null and void.

185.   Further, the warranties Defendant provided to Plaintiff Woodward and Texas Subclass members with the sale or lease of the Covered Vehicles, that

Defendant will repair defective Regulators, was an affirmation of fact, which became part of the basis of the bargain and, therefore, constitute express warranties.

186.    In reliance upon said express warranties, Plaintiff Woodward and the Texas Subclass members purchased said the Covered Vehicles.

187.    Plaintiff Woodward and members of the Texas Subclass are in privity with Defendant.  Defendant markets its products directly to consumers and maintains a direct relationship with purchasers.   Chrysler-authorized dealers and service professionals are agents of Defendant and their participation in the sale, maintenance, and repair of Covered Vehicles at the direction and under the supervision of Defendant, does not interrupt the direct relationship between Defendant and Plaintiff Woodward and members of the Texas Subclass.  Plaintiff Woodward and members of the Texas Subclass purchased their Covered Vehicles directly from Defendant or Defendant's actual or apparent agents, including Chrysler-authorized dealers.

188.    Plaintiff Woodward and members of the Texas Subclass also are in privity with Defendant by virtue of the contractual relationship stemming from the manufacturer's warranties Defendant provided in conjunction with the sale of the Covered Vehicles, regardless of where, or from whom, the Covered Vehicles were acquired.

189.    Accordingly, Plaintiff Woodward and the Texas Subclass members suffered damages caused by Defendant's breach of the express warranties and are entitled to recover damages, including but not limited to out of pocket expenses to replace the Regulators and  diminution of value.

## FIFTEENTH CLAIM FOR RELIEF

**Breach of Implied Warranty of Merchantability – Tex. Bus. & Com. § 2.314**

**(Asserted on Behalf of Texas Subclass)**

190.    Plaintiff Woodward repeats and incorporates the allegations set forth in paragraphs 1 thru 189 inclusive as if fully re-alleged herein.

191.    Defendant is and was at all relevant times a merchant with respect to the Covered Vehicles.

192.    A warranty that the Covered Vehicles were in merchantable quality and condition is implied by law pursuant to Texas Bus. & Com. Code § 2.314.

193.    Defendant impliedly warranted that the Covered Vehicles were of good and merchantable condition and quality – fit and safe for their ordinary intended use, which would include, but not be limited to, reliable and safe transport and off-road use.

194.    The Covered Vehicles were defective at the time they left the possession of Defendant.    These defects include the defective Regulators and related defects described previously. Defendant knew of these defects at the time these transactions

**COMPLAINT**

occurred and did not repair or disclose the defects prior to sale or lease. Thus, the Covered Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

195.    By virtue of the conduct described herein and throughout this Complaint, Defendant breached the implied warranty of merchantability.

196.    Plaintiff Woodward and the Texas Subclass members have been damaged as a direct and proximate result of Defendant's breach of the implied warranty.

197.    Plaintiff Woodward has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

198.    Defendant received timely notice regarding the problems at issue in this litigation (indeed Defendant knew, or should have known, of the defects prior to offering the Covered Vehicles for sale or lease) and, notwithstanding such notice, Defendant had failed and refused to offer an effective remedy.

199.    In addition, Defendant has received, on information and belief, thousands of complaints and other notices from consumers advising of the defects associated with the Covered Vehicles.

200.    Plaintiff Woodward has had sufficient dealings with Defendant and its agents (dealerships) to establish privity of contract. Notwithstanding this, privity is

not required in this case because Plaintiff Woodward and the Texas Subclass members are intended third-party beneficiaries of contracts between Defendant and its dealers; specifically, they are intended beneficiaries of Defendant's implied warranties.   The dealers were not intended to be the ultimate consumers of the Covered Vehicles and have no rights under the warranty agreements provided with the Covered Vehicles. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

201.   As a direct and proximate result of Defendant's breach of warranties, Plaintiff Woodward and the Texas Subclass were caused to suffer economic damage, including loss attributable to the diminished value of their Covered Vehicles, as well as the monies spent and to be spent to repair and/or replace their Covered Vehicles.

## SIXTEENTH CLAIM FOR RELIEF

### The Declaratory Judgment Act -- 28 U.S.C. § 2201, *et seq.*

### (Asserted on behalf of the Nationwide Class)

202.   Plaintiffs repeat and incorporate the allegations set forth in paragraphs 1 thru 201 inclusive as if fully re-alleged herein.

203.   An actual controversy has arisen and now exists between Plaintiffs and the Class Members, on one hand, and Defendant, on the other hand, concerning their respective rights and duties in that Plaintiffs and the Class Members contend that

Defendant has engaged in and is continuing to engage in the unlawful practices and violations of law alleged herein with respect to the Covered Vehicles and the Regulators, while Defendant contends that their actions and conduct are lawful and proper.

204. A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiffs and the Class Members may ascertain their rights and duties with respect to the Covered Vehicles and the Regulators.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class Members, respectfully request judgment against Defendant as follows:

(a) certifying the Nationwide Class and California and Texas Subclasses;

(b) appointing Plaintiffs and their counsel to represent the Class and the California and Texas Subclasses;

(c) finding and declaring Defendant's acts and practices as described herein to be unlawful, unfair and fraudulent;

(d) ordering Defendant to provide notice to the Class Members of the defective Regulators;

(e) ordering injunctive relief, restitution, disgorgement, and/or other appropriate relief;

(f) awarding compensatory, punitive, exemplary, and other recoverable damages;

(g) awarding reasonable attorney's fees and expenses;

(h) awarding pre-judgment and post-judgment interest;

(i) declaring the rights of Plaintiffs and the Class Members as to the Covered Vehicles and the Regulators; and

(j) awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: April 15, 2013

FOLEY BEZEK BEHLE & CURTIS, LLP

Robert A. Curtis, Esq.
15 West Carrillo Street
Santa Barbara, California 93101
Tel: (805) 962-9495
Fax: (805) 962-0072
rcurtis@foleybezek.com

ARIAS OZZELLO & GIGNAC LLP

/s/ J. Paul Gignac
J. Paul Gignac, Esq.
115 S. La Cumbre Lane, Suite 300

**COMPLAINT**

Santa Barbara, California 93105
Tel: (805) 683-7400
Fax: (805) 683-7401
j.paul@aogllp.com


GOLDENBERG SCHNEIDER, LPA

/s/ Jeffrey S. Goldenberg
Jeffrey S. Goldenberg, Esq.
(pro hac to be filed)
Todd Naylor
(pro hac to be filed)
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202
Tel: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

Counsel for Plaintiffs and Class

COMPLAINT

# EXHIBIT 1



**SERVICE BULLETIN**

| | |
|---|---|
| NUMBER: | 23-008-09 |
| GROUP: | Body |
| DATE: | April 15, 2009 |

This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of Chrysler LLC.

**THIS BULLETIN SUPERSEDES TECHNICAL SERVICE BULLETIN 23-014-08, DATED APRIL 9, 2008, WHICH SHOULD BE REMOVED FROM YOUR FILES. THIS IS A COMPLETE REVISION AND NO ASTERISKS HAVE BEEN USED TO HIGHLIGHT REVISIONS.**

**SUBJECT:**
Front or Rear Window, Bind, Stick, Tip Forward or Chatter

**OVERVIEW:**
This bulletin involves replacing the front door regulator, run and glass or rear door regulator and glass with revised components and installing a sticker on the door shut face to identify the changes for future reference.

**MODELS:**

| | | | |
|---|---|---|---|
| 2006 – 2007 | (KJ) | | Liberty |
| 2006 – 2007 | (KJ) | | Cherokee (International Markets) |

**SYMPTOM/CONDITION:**
Some customers may experience front or rear door window binding, sticking, tipping forward, chattering or door glass fallen to bottom of door.

**DIAGNOSIS:**
Inspect the door regulator for damage. If it is found that the regulator is damaged, perform the Repair Procedure to the appropriate door.

**NOTE: Before proceeding, inspect the affected door to determine if any previous work has been completed on that door. If the Door has a Label (68058661AA) near the latch area, this Service Bulletin has been performed and it will not be necessary to replace all the components as described below. Service only the component that may be affecting operation. If there is no door label in place on the affected door, replace ALL the components off the parts list for that particular door and complete the repair procedure listed below.**

**PARTS REQUIRED:**

| Qty. | Part No. | Description |
|---|---|---|
| AR (1) | 68059645AA | Left Front Door Window Regulator |
| AR (1) | 68059549AA | Left Front Door Glass |

**SERVICE**

*Stick with the Specialists®*

EXHIBIT

/

23-008-09                          -2-

| Qty. | Part No. | Description |
|------|----------|-------------|
| AR (1) | 55380959AC | Left Front Glass Run Channel Seal |
| AR (1) | 68059644AA | Right Front Door Window Regulator |
| AR (1) | 68059648AA | Right Front Door Glass |
| AR (1) | 55380958AC | Right Front Glass Run Channel Seal |
| AR (1) | 68059646AA | Right Rear Door Window Regulator |
| AR (1) | 68059652AA (GEG) OR 68059656AA (GEJ) | Right Rear Door Glass GEG=Deep Tint Sunscreen GEJ= Tinted Standard |
| AR (1) | 68059647AA | Left Rear Door Window Regulator |
| AR (1) | 68059653AA (GEG) OR 68059657AA (GEJ) | Left Rear Door Glass GEG=Deep Tint Sunscreen GEJ= Tinted Standard |
| AR (4) | 68058861AA | Door Label |

**FRONT DOOR REPAIR PROCEDURE:**

NOTE: This repair involves replacing the Front Window Regulator, Window Glass and Glass Run Channel.

1. Following the procedures in DealerCONNECT > TechCONNECT under: Service Info > 23 - Body > Door - Front > replace the Front Window Regulator, Glass and Run Channel with the parts listed above.
2. Clean the area on the door shut face (above the latch) with an appropriate cleaner. Install Door label pn 68058861AA just above the latch assembly.

NOTE: This label is used to identify that this door has been modified and contains revised components internally.

**REAR DOOR REPAIR PROCEDURE:**

NOTE: This repair involves replacing the Rear Window Regulator and Window Glass.

1. Following the procedures in DealerCONNECT > TechCONNECT under: Service Info > 23 - Body > Door - Rear > replace the Window Regulator and Glass with the parts listed above.
2. Clean the area on the door shut face (above the latch) with an appropriate cleaner. Install Door label pn 68058861AA just above the latch assembly.

NOTE: This label is used to identify that this door has been modified and contains revised components internally.

**POLICY:**
Reimbursable within the provisions of the warranty.

-3-                                                    23-008-09

*TIME ALLOWANCE:*

| Labor Operation No: | Description | Amount |
|---|---|---|
| 23-34-10-A1 | Window regulator, Window Glass and Glass Run Channel - Replace One Front Door (Right or Left) (B) | 0.8 Hrs. |
| 23-34-10-A2 | Window regulator and Window Glass - Replace One Rear Door (Right or Left) (B) | 0.6 Hrs. |
| 23-34-10-A3 | Replace One Front Door and One Rear Door (Right or Left) (B) | 1.2 Hrs. |
| 23-34-10-A4 | Replace all Doors (B) | 2.4 Hrs. |

*FAILURE CODE:*

| ZZ | Service Action |
|---|---|

STICKER For doors

This door requires different
components. Reference the
Mopar Catalogue Service
Bulletin for information.

68053561AA

# EXHIBIT 2



**NUMBER:** 23-026-10

**GROUP:** Body

**DATE:** December 09, 2010

This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of Chrysler Group LLC.

**SUBJECT:**
Front Or Rear Window Bind, Stick, Tip's or Is Inoperative (7 Year-Unlimited Mileage Extended Warranty)

**OVERVIEW:**
This bulletin involves inspecting the window regulator to determine why the window is not functioning properly. A service kit is now available if the lift plate is the cause.

**MODELS:**

| 2006-2007 | KJ | Liberty |
|---|---|---|
| 2006-2007 | KJ | Cherokee (International) |

**NOTE: This Extended Warranty Bulletin applies to vehicles built on or after March 15, 2006 (MDH 0315XX)**

**SYMPTOM/CONDITION:**
Some customers may experience a front or rear door window that exhibits a binding, sticking, tipping forward, chattering or a window that is inoperative.

**DIAGNOSIS:**
If the customer experiences the symptom/condition, proceed to the repair procedure.

**PARTS REQUIRED:**

| Qty. | Part No. | Description |
|---|---|---|
| (AR) 1 | CDPZX271AB | Left Front Lift plate kit |
| (AR) 1 | CDDZX27BAB | Left Front Lift plate kit,for Modified door with Pin on glass style attachment only |
| (AR) 1 | CDPZX272AB | Right Front Lift Plate Kit |
| (AR) 1 | CDCZX27AAB | Right Front Lift plate kit, for Modified door with Pin on glass style attachment only |
| (AR) 1 | CDPZX273AB | Left Rear Lift Plate Kit |
| (AR) 1 | CDFZX27DAB | Left Rear Lift plate kit, for Modified door with Pin on glass style attachment only |
| (AR) 1 | CDPZX274AB | Right Rear Lift Plate Kit |

EXHIBIT

2

SERVICE

**Stick with the Specialists**™

23-026-10                                    -2-

| Qty. | Part No. | Description |
|---|---|---|
| (AR) 1 | CDCZX27CAB | Right Rear Lift plate kit, **for Modified door with Pin on glass style attachment only** |
| (AR) 1 | CDCZX27PAB | Left Front Glass Run Channel Seal |
| (AR) 1 | CDCZX27RAB | Left Rear Glass Run Channel Seal - Deep Tint, Sales code GEG |
| (AR) 1 | CDAZX27TAB | Left Rear Glass Run Channel Seal- Sales code GEJ |
| (AR) 1 | CDAZX27NAB | Right Front Glass Run Channel Seal |
| (AR) 1 | CDAZX27QAB | Right Rear Glass Run Channel Seal - Deep Tint, Sales code GEG |
| (AR) 1 | CDAZX27SAB | Right Rear Glass Run Channel Seal- Sales code GEJ |

**NOTE: Most issues are related to lift plate breakage. These vehicles can be repaired by installing the lift plate kit.**

**NOTE: Some 2006 MY or 2007 MY Jeep Liberties may have an alternate window regulator installed with a different glass attachment. They may be marked with a sticker on the inner door to identify this change. These regulators require the "pin on glass" attachment style service kit (2002-2005 MY type).**

***REPAIR PROCEDURE:***
1. 1. Following the procedures in DealerCONNECT > TechCONNECT under: Service Info > 23 - Body > Door > Panel, Door Trim, remove the door panel to inspect the cause of the inoperative window.
2. Is the window concern related to the Window motor, the cable tube, attachment bracket or is the regulator rail damaged?
   a. No >>> Proceed to Step #3 to repair the lift plate attachment.
   b. Yes >>>STOP, this bulletin does not apply. The window regulator will need to be replaced. Following the procedures in DealerCONNECT > TechCONNECT under: Service Info > 23 - Body > Door > Regulator, Window, remove/install.
3. Following the procedures in DealerCONNECT > TechCONNECT under: Service Info > 23 - Body > Door > Regulator, Window, remove the window regulator from the affected door(s).
4. With the regulator on the bench, inspect the window regulator plastic cable tube. It cannot be broken for the installation of the lift plate attachment repair. If it is found to be broken, proceed to Step #2 to replace the regulator.
5. Use the 8 inch adjustable wrench to bend down lower Rail Bracket Tab 90° (Fig. 1).

-3-                                                        23-026-10



*Fig. 1 Bend Rail Tab Down 90 Deg.*

6.  Remove and save the small black plastic bumper located in the end of the rail (Fig. 2).



*Fig. 2 Remove Plastic Bumper*

7.  Remove the three #20 Torx screws securing the motor and bracket to the regulator drum. Keep the motor and bracket together for reassembly (Fig. 3).

23-026-10                          -4-



*Fig. 3 Remove Motor and Bracket*

8.   Remove the original lift plate and cable from the regulator and discard (Fig. 4).



*Fig. 4 Remove Old Liftplate*

**NOTE: If the cable is stuck in the drum housing. Push the cable forward to dislodge any debris or plastic chips that may be on the end of the cable in the drum pocket. Unscrew the cable counter clock wise if necessary to free up the chip or debris.**

9.   Clean the old grease, chips and debris in the Motor Drum Pocket and in the Rail cable groove with a shop rag (Fig. 5).

-5-                                                    23-026-10



**Fig. 5 Clean the Motor Drum Pocket**

10. Verify that the motor functions at the vehicle door connector.
11. Apply the supplied Grease in the following manner. (Fig. 6) (Fig. 7)



**Fig. 6 Grease the Rail**

23-026-10                                                -6-



**Fig. 7 Grease the Lift Plate**

    a. ¼ packet into the Motor Drum Pocket.
    b. ¼ packet along the Rail contact locations.
    c. ½ packet onto a paper towel and pull the cable through the grease.
12. Install the new lift plate cable assembly into the rail about 1/3 the way up the rail.
13. Install the motor and mounting bracket back onto the window regulator. Align the drum housing pilots with the motor bracket and motor (Fig. 3).
14. Hand torque the screws to 2.5 Nm (22 in lbs).
15. Install the small black plastic bumper in the end of the rail.
16. Carefully bend the tab back up in its original location with the adjustable wrench. A hammer can be used to carefully tap the Bracket Tab into its final closed position. (Fig. 8).



**Fig. 8 Close the Rail Tab**

17. Reinstall the rebuilt window regulator back into the door. Torque the retaining bolts to 9 NM (80 in lbs).

23-026-10

**NOTE: Confirm that the glass is fully snapped into the lift plate.**

18. Verify the operation of the window before installing the door panel.
19. Do any of the repaired windows exhibit a chatter condition during its up or down travel after making the Lift plate repair?
   a. Yes >>> proceed to Step #20
   b. No >>> Complete the reassembly of the inner door panel and related components. No further repair needed. Repair complete
20. If the chatter is obvious when water is sprayed onto the window channel run, the window channel needs to be replaced.
21. Following the procedures in DealerCONNECT > TechCONNECT under: Service Info > 23 - Body > Door-Front/Door-Rear > Channel, Door Glass, to replace the Glass Run Channel Seal.
22. Verify the operation of the window.
23. Complete the reassembly of the inner door panel and related components.

**POLICY:**
Reimbursable within the provisions of the warranty.

**NOTE: Vehicles included in this Service Bulletin have a 7 Year- Unlimited Mileage warranty. See Warranty Bulletin D-10-36 for details associated with the extended warranty.**

**TIME ALLOWANCE:**

| Labor Operation No: | Description | Amount |
|---|---|---|
| 23-34-19-90 | Lift plate Kit - Replace, Front Door (Right) | 0.8 Hrs. |
| 23-34-19-92 | Lift plate Kit - Replace, Front Door (Left) | 0.8 Hrs. |
| 23-34-19-91 | Lift plate Kit - Replace, Rear Door (Right) | 0.7 Hrs. |
| 23-34-19-93 | Lift plate Kit - Replace, Rear Door (Left) | 0.7 Hrs. |
| 23-31-26-9E | Glass Run Channel - Replace Right Front Door | 0.3 Hrs. |
| 23-31-26-9G | Glass Run Channel - Replace Right Rear Door | 0.3 Hrs. |
| 23-31-26-9F | Glass Run Channel - Replace Left Front Door | 0.3 Hrs. |
| 23-31-26-9H | Glass Run Channel - Replace Left Rear Door | 0.3 Hrs. |

**FAILURE CODE:**

| ZZ | Service Action |
|---|---|

# EXHIBIT 3



**SERVICE BULLETIN**

| | |
|---|---|
| **NUMBER:** | 23-002-11 |
| **GROUP:** | Body |
| **DATE:** | January 11, 2011 |

This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of Chrysler Group LLC.

## SUBJECT:
Front Or Rear Window Bind, Stick, Tip's or Is Inoperative

## OVERVIEW:
This bulletin involves inspecting the window regulator to determine why the window is not functioning properly. A service kit is now available if the lift plate is the cause.

## MODELS:

| | | |
|---|---|---|
| 2002-2006 | KJ | Liberty |
| 2002-2006 | KJ | Cherokee (International) |

**NOTE: This Bulletin applies to vehicles built up to March 15, 2006 (MDH 0315XX) OR if a 2006 or 2007 vehicle has had an alternate window regulator installed with a different glass attachment (Pin on Glass). They may be marked with a sticker on the inner door to identify this change. These alternate regulators require the "pin on glass" attachment style service kit also.**

## SYMPTOM/CONDITION:
Some customers may experience a front or rear door window that exhibits a binding, sticking, tipping forward, chattering or a window that is inoperative.

## DIAGNOSIS:
If the customer experiences the symptom/condition, proceed to the repair procedure.

## PARTS REQUIRED:

| Qty. | Part No. | Description |
|---|---|---|
| (AR) 1 | 68088149AA | Left Front Lift plate kit |
| (AR) 1 | 68088148AA | Right Front Lift Plate Kit |
| (AR) 1 | 68088151AA | Left Rear Lift Plate Kit |
| (AR) 1 | 68088150AA | Right Rear Lift Plate Kit |

**NOTE: Very few vehicles will require the regulator to be replaced. Most issues are related to lift plate breakage. These vehicles can be repaired by installing the lift plate kit.**

EXHIBIT

3



**SERVICE**

**Stick with the Specialists™**

23-002-11                              -2-

**NOTE: Some 2006 MY or 2007 MY Jeep Liberties may have an alternate window regulator installed with a different glass attachment. They may be marked with a sticker on the inner door to identify this change. These regulators require the "pin on glass" attachment style service kit (2002-2005 MY type).**

*REPAIR PROCEDURE:*

1. 1. Following the procedures in DealerCONNECT > TechCONNECT under: Service Info > 23 - Body > Door > Panel, Door Trim, remove the door panel to inspect the cause of the inoperative window.

2. Is the window concern related to the Window motor, the cable tube, attachment bracket or is the regulator rail damaged?
   a. No >>> Proceed to Step #3 to repair the lift plate attachment.
   b. Yes >>> STOP, this bulletin does not apply. The window regulator will need to be replaced by following the procedures in DealerCONNECT > TechCONNECT under: Service Info > 23 - Body > Door > Regulator, Window, remove/install.

3. Following the procedures in DealerCONNECT > TechCONNECT under: Service Info > 23 - Body > Door > Regulator, Window, remove the window regulator from the affected door(s).

4. With the regulator on the bench, inspect the window regulator plastic cable tube. It cannot be broken for the installation of the lift plate attachment repair. If it is found to be broken, proceed to Step #2 to replace the regulator.

5. Use the 8 inch adjustable wrench to bend down lower Rail Bracket Tab 90° (Fig. 1).



*Fig. 1 Bend Rail Tab Down 90 Deg.*

6. Remove and save the small black plastic bumper located in the end of the rail (Fig. 2).

23-002-11



Gjh/ 3 Sfn pwf Qbat ujd Cvn qfs

8/   Sfn pwf u f u sf f $31 Upsy tds x t t fdvsjoh u f n pups boe csbdl f up u f sf hvbups
esvn /Lff q u f n pups boe csbdl f up hf u f s gpss f bt t f n cm)Gjh/ 4*/



Gjh/ 4 Sfn pwf Npups boe Csbdl f u

9/   Sfn pwf u f psjhjobm jg ujr u bt boe dbcrf gspn u f sf hvbups boe ejt dbse )Gjh/ 5*/

34.113.22 .5.



Gjh/5 Sfn pwf Ppn Mgqqrbuf

OPUF; jguf dbcrñ jt tuwdl jo uf esvn i pvtjoh/Qvti uf dbcrñ gpsx bse up ejtnpehf boz efcsjt ps qrñtujd dijqt uf tun bz cf po uf f oef pg uf dbcrñ jo uf esvn qpdl fu/Votdsfx uf dbcrñ dpvousdrñpdl xjtf jgofdfttbsz up gsff vq uf dijjq psefcsjt/

:/ Drñbo uf pre hsf bfbsf-dijjt boe efcsjt jo uf Npps Esvn Qpdl f uboe jo uf Sbjnrñbcrñ hsppwf xjui b tipp sbh )Gjh/6*/



Gjh/6 Drñbo uf Npps Esvn Qpdl f u

21/ Wfsjgz uuf npupsgvodujpot bu uf vfi jdrñ eppsdpoof dups/
22/ Bqqnz uf tvqqrñjfe Hsfbtf jo uf gonpx jon boofsf/ )Gjh/7* )Gjh/8*

.6.                                                                34.113.22



Gjh/ 7 Hsf bt f u i f Sbjm



Gjh/ 8 Hsf bt f u i f Mjgu Qmbuf

b/ æ qbdl f ujpo u i f Npups Esvn Qpdl f u/
c/ æ qbdl f ubumpoh u i f Sbjm mdpoubdu dumpdbujpot /
d/ ø qbdl f upoup b qbqf s upx f mboe u i f dbcm i u i spvhh u i f hsf bt f /
23/ Jbt ubmmni f of x njgujqmbuf dbcm bt t f m cmzjoup u i f sbjmbcpvu204 u i f x bz vq u i f sbjm
24/ Jbt ubmmni f m pups boe m pvoujoh csbdl f ubcl f l poq u i f x joepx sf hvmbups/ Bjmho u i f esvn
       i pvt joh qjmpu x jui u i f m pups csbdl f ubboe m pups /)Gjh/ 4*/
25/ I boe ups vf u i f t dsf x t u p 3/6 On )33 jo mct */
26/ Jbt ubmmni f t m bmmmpdl q mbt ujd dvm qf sjpo u i f f oe pguui f sbjm
27/ Dbsf gvmmmz cf oe u i f ubc cbdl vq jo ju s pshjojobmmpdbujpo x ju i u i f bel vt u bdmf n x sf odi / B
       i bm n f sdbo cf vt f u p dbsf gvmmz ubq u i f Csbdl f uUbc joup ju s gobmndpt ud je e e e qpt jujpo/ )Gjh/
       9*/