**ARIAS OZZELLO & GIGNAC LLP**
J. Paul Gignac, Cal. State Bar No. 125676
j.paul@aogllp.com
115 S. La Cumbre Lane, Suite 300
Santa Barbara, California 93105
Telephone: (805) 683-7400
Facsimile: (805) 683-7401

**FOLEY BEZEK BEHLE & CURTIS, LLP**
Robert A. Curtis, Cal. State Bar No. 203870
rcurtis@foleybezek.com
15 West Carrillo Street
Santa Barbara, California 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722

**GOLDENBERG SCHNEIDER, L.P.A.**
Jeffrey S. Goldenberg (Admitted *pro hac vice*)
jgoldenberg@gs-legal.com
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202-3604
Telephone: (513) 345-8297
Facsimile: (513) 345-8294

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| STEVE DOYLE, *et al.*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>CHRYSLER GROUP LLC,<br><br>　　　　Defendant. | Case No.  SA-CV-13-620-JVS-ANx<br><br>**CLASS ACTION**<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: August 25, 2014<br>Hearing Time:  1:30 p.m.<br>Courtroom: 10C<br><br>The Honorable James V. Selna |

# **TABLE OF CONTENTS**

page

I.  INTRODUCTION..................................................................1

II.  FACTUAL BACKGROUND.....................................................2

    A. The Replacement Regulators Are Defective.............................2

    B. The Endless Cycle Of Failed Replacement Regulators Is Common..........4

    C. Chrysler Knew Of The Defect As Of June 10, 2009,
       Yet Did Not Alert Class Members.....................................7

    D. The "Improved" Lift Plates Introduced In Late 2010 Are Equally
       Defective.............................................................8

    E. The Defective Replacement Regulators Are A Safety Hazard............9

III.  THE CLASSES...............................................................10

IV.  ARGUMENT..................................................................10

    A. The Classes Are Ascertainable......................................11

    B. The Classes Satisfy Rule 23(a).....................................13

       1. Each Class is so Numerous that Joinder is Impracticable..........13

       2. There are Questions of Law and Fact Common to the
          Members of Each of the Classes...............................15

       3. Plaintiffs' Claims are Typical of the Claims of Class Members.......16

       4. Plaintiffs and Their Counsel will Fairly and Adequately
          Represent the Interests of the Members of the Classes ...........18

    C. The Classes Should Be Certified Pursuant To Rule 23(b)(3)............19

       1. Common Questions of Law and Fact Predominate................19

       2. A Class Action is the Superior Method for Adjudication............22

V.  CONCLUSION................................................................25

- ii -

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*Amchem Prod., Inc. v. Windsor,*
　　521 U.S. 591 (1997)......................................................................19, 20

*Armstrong v. Davis,*
　　275 F.3d 849 (9th Cir. 2001).........................................................10

*Astiana v. Kashi Co.,*
　　291 F.R.D. 493 (S.D. Cal. 2013)..............................................12, 17

*Ballard v. Equifax Check Servs., Inc.,*
　　186 F.R.D. 589 (E.D. Cal. 1999)....................................................23

*Banks v. Nissan N.A., Inc.,*
　　2013 WL 6700299 (N.D. Cal. Dec. 19, 2013)..........................2, 21

*Blackie v. Barrack,*
　　524 F.2d 891 (9th Cir. 1975)...........................................................22

*Castillo v. General Motors Corp.,*
　　2008 WL 8585691 (E.D. Cal. Sept. 8, 2008)...................14, 15, 17

*Chamberlan v. Ford,*
　　223 F.R.D. 524 (N.D. Cal. 2004).............................2, 15, 18, 21

*Costello v. Chertoff,*
　　258 F.R.D. 600 (C.D. Cal. 2009)....................................................13

*Ellis v. Costco,*
　　657 F.3d 970 (9th Cir. 2008).....................................................17, 18

*Forcellati v. Hyland's Inc.,*
　　2014 WL 1410264 (C.D. Cal. April 9, 2014).................11, 12, 15

*Gable v. Land Rover N. Am., Inc.,*
　　2011 U.S. Dist. LEXIS 90774 (C.D. Cal. July 2011).........................11

*Greene v. H & R Block, Inc.,*
　　355 Md. 488 (1999).........................................................................21

*Guido v. L'Oreal, USA, Inc.,*
　　2013 WL 3353857 (C.D. Cal. July 1, 2013)..............................11, 12

*Hanlon v. Chrysler Corp.,*
　　150 F.3d 1011 (9th Cir. 1998)................................15, 16, 18, 20, 22, 23

*Harris v. Palm Springs Alpine Estates, Inc.,*
　　329 F.2d 909 (9th Cir. 1964)...........................................................13

*Ikonen v. Hartz Mountain Corp.,*
　　122 F.R.D. 258 (S.D. Cal. 1988).....................................................13

- iii -

*In re Napster, Inc. Copyright Litig.*,
    2005 WL 1287611 (N.D. Cal. June 1, 2005)......................................24

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*,
    2012 WL 7802852 (C.D. Cal. Dec. 28, 2012)............15, 17, 20, 21, 23, 24

*Keegan v. American Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012)...............................................2,13, 14

*Kesler v. Ikea U.S. Inc.*,
    2008 WL 413268 (C.D. Cal. Feb. 4, 2008).......................................12

*Local Joint Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001).......................................................20

*Parkinson v. Hyundai Motor America*,
    258 F.R.D. 580 (C.D. Cal. 2008)...................................................11

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012)...................................................12

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
    2008 WL 4906433 (C.D. Cal. Nov. 13, 2008).........................13, 17, 23

*Sager v. Hous. Comm'n of Anne Arundel County*,
    855 F. Supp.2d 524 (D. Md. 2012)..................................................21

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).........................................................18

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011).......................................................20

*Tait v. BSH Home Appliances, Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012)...............................15, 19, 20, 23

*Tchoboian v. Parking Concepts*,
    2009 WL 2169883 (C.D. Cal. July 16, 2009)...................12, 14, 22

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996).........................................................22

*Walker v. Life Ins. Co. of the Sw.*,
    2012 WL 7170602 (C.D. Cal. Nov. 9, 2012)...........................10, 16

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)...........................................................15, 16

*Wolin v. Jaguar Land Rover, N.A., LLC*,
    617 F.3d 1168 (9th Cir. 2010).............................2, 15, 21, 22, 24

- iv -

*Xavier v. Phillip Morris,*
    2011 WL 1464942 (N.D. Cal. April 18, 2011)...................................11

*Zinser v. Accufix Research Institute, Inc.,*
    253 F.3d 1180 (9th Cir. 2001)..................................................20

**STATUTES**

California Business & Professions Code § 17200, *et seq*.........................10, 16

California Civil Code § 1750, *et seq*..........................................10

Federal Rules of Civil Procedure Rule 23..............2, 11, 13, 15, 16, 18, 19, 22, 23

Maryland Code, Commercial Law Article, § 13-101, *et seq*.....................10, 16

**OTHER AUTHORITIES**

Newberg on Class Actions
    (3d ed. 1992)..................................................................18

- v -

## I. INTRODUCTION

When Chrysler Group, LLC ("Chrysler") came into existence on June 10, 2009 following the bankruptcy of its predecessor ("Old Carco"), it faced an immediate problem.  Tens of thousands of owners of model year 2002–2007 Jeep Liberty vehicles (the "Vehicles") were complaining that the Vehicles' side windows were falling into the door and were not functioning.  The fact that so many windows were failing in this specific fashion was no surprise to Chrysler, because it was aware that the window regulators in the Vehicles were so poorly designed that their warranty repair rates exceeded 940 per 1,000 Vehicles for 2006-2007 model years and approached 250 to 500 per 1,000 Vehicles for 2002-2005 model years in warmer states.  But this case is not about Old Carco's poor design choices.  This case is about Chrysler's post-bankruptcy conduct: namely, selling what it knew to be defective window regulators ("Replacement Regulators")[1] without disclosing the known defect to consumers.

From June 2009 through at least December 2010, Chrysler used Old Carco's defective model year 2005 window regulators as Replacement Regulators for all 2002-2007 Vehicles.   In other words, Chrysler knowingly sold and installed defective parts, creating an endless cycle of Replacement Regulator failures and "repairs."  While Chrysler finally introduced an "improved" design in December 2010, its own tests demonstrated that this "improved" version failed in the same way as it predecessors. Undaunted, and following an eleventh hour emergency manufacturing process change, Chrysler released the "improved" part to its dealerships.   Not surprisingly, even these "improved" Replacement Regulators continue to fail.

---

[1] "Replacement Regulator" means a window regulator or a regulator lift plate kit placed into a 2002-2007 model year Vehicle to replace a failed or broken regulator or lift plate.

1    Plaintiffs Stephen Doyle, Michael Wolfington and Robin Allen ("Plaintiffs"),
2  on behalf of classes of California and Maryland residents, assert that Chrysler
3  violated California and Maryland law by wrongfully replacing failed window
4  regulators with equally defective Replacement Regulators while: (1) knowing that
5  the Replacement Regulators are defective and thus prone to failure; (2) failing to
6  disclose to Vehicle owners that the Replacement Regulators are defective and prone
7  to failure; and (3) charging Vehicle owners for installing the Replacement
8  Regulators.

9    This action is a prototypical class action that satisfies each of the statutory
10  requirements for class certification under Rule 23 of the *Federal Rules of Civil*
11  *Procedure*. The operative Second Amended Complaint ("SAC") alleges consumer
12  fraud and vehicle defect claims that courts in this district and Circuit have
13  consistently concluded should be adjudicated on a class wide basis. *See, e.g., Wolin*
14  *v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168 (9th Cir. 2010) (reversing district
15  court's denial of class certification in case alleging alignment defect in model year
16  2004 through 2006 Land Rover LR3s); *Banks v. Nissan N.A., Inc.*, No. C 11-2022
17  PJH, 2013 WL 6700299, at *1 (N.D. Cal. Dec. 19, 2013) (certifying auto owner
18  class alleging UCL and CLRA violations for defective brake sensors); *Keegan v.*
19  *American Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (certifying
20  classes of auto owners alleging UCL and CLRA violations for defective
21  suspensions); *Chamberlan v. Ford*, 223 F.R.D. 524 (N.D. Cal. 2004) (certifying
22  classes of auto owners alleging UCL and CLRA violations for defective intake
23  manifolds). Accordingly, for the reasons argued herein, the Court should grant
24  Plaintiffs' motion for class certification.

25  **II. FACTUAL BACKGROUND**

26    **A. The Replacement Regulators Are Defective.**

27    All 2002 through 2007 Jeep Liberty Vehicles utilize a single window
28  regulator design: a push/pull cable mechanism. This push/pull mechanism consists

- 2 -

1  of four major components: (1) a lifting plate that interfaces with the window glass;

2  (2) a track which guides the lifting plate in its travel; (3) a spiral cable (single wire)

3  that alternately pushes and pulls the lifting plate and window glass; and (4) a

4  reversible electric motor to provide the cable force required to displace the

5  window.[2]

6       While all of the Vehicles use the same push/ pull design, there is a minor

7  difference between the Vehicles produced prior to, and after, March 15, 2006.  All

8  Vehicles produced prior to March 15, 2006 utilized a pin style plastic lift plate to

9  connect the regulator to the window.[3]  All Vehicles produced on and after March

10 15, 2006 utilized a plastic snap-in lift plate to connect the regulator to the window.[4]

11 However, this distinction is irrelevant because no matter when the Vehicles were

12 manufactured, all use Replacement Regulators that suffer from the same defect.

13      The defect exists because the ███████████████████████████████████████

14 ████████████████████████████████████████████████████████████████████

15 (the "Regulator Defect").[5]  The mechanical failure occurs because the plastic used

16 in the lift plates (called Acetal or POM)[6] is subject to permanent, cumulative

17 physical deformation over time as a result of exposure to heat and load.[7]  Chrysler's

18 own documents admit this fact: ██████████████████████████████████."[8]

19

20 [2] *See, generally,* Declaration of Mischa Barteau ("Barteau Decl."), Ex. 1,
   Deposition of Jon Price ("Price Depo."), at 21:1-11; 43:6-14; and 43:23-44:4.
21
   [3] Barteau Decl., Ex. 2, Deposition of Keith Radyko ("Radyko Depo.") at 33:25-34:5
22 and 36:22-37:3.
   [4] *Id.* at 33:25-34:5 and 36:22-37:3.
23 [5] Declaration of Stephen E. Batzer, Ph.D., P.E. ("Batzer Decl."), at p. 21.
   [6] Barteau Decl., Ex. 1, Price Depo., at 34:8-15. POM is an acronym for
24 polyoxymethylene. *See* Batzer Decl., at p. 10.
25 [7] Barteau Decl., Ex. 3, Deposition of Mike Laba ("Laba Depo."), at 86:16-25. The
   lift plates in 02-05 model year Vehicles are made of the same material as the lift
26 plates in 06-07 model year Vehicles, and all of these lift plates are subject to heat
27 creep.
28 [8] Barteau Decl., Ex. L. [CGLLC038546] and Ex. K [CGLLC038641] (██████

1    Jon Price, Chrysler's window lift system engineer who tested the plastic lift

2    plates at issue, testified that creep is the permanent deformation of the plastic part

3    whereby the part physically changes shape,[9] and that the plastic lift plates in the

4    Replacement Regulators are subject to creep.[10]   Mr. Price also indicated that this

5    permanent deformation can be gradual over time as a result of the temperature to

6    which the part is repeatedly exposed.[11]   As Mr. Price explained, creep results in the

7    plastic lift plate physically deforming, becoming thinner in certain places.[12]  Over

8    time, the thinning plastic loses its strength and the lift plate breaks (usually at the

9    helix – the point at which the cable connects to the lift plate).[13]   Mike Laba, the

10   Chrysler engineer who oversaw Chrysler's investigation of the defect, agrees and

11   recognizes that the lift plates in the 2002-2005 Vehicles and the 2006-2007

12   Vehicles are made of the same material and are subject to the same heat creep.[14]

### B. The Endless Cycle Of Failed Replacement Regulators Is Common.

15   Plaintiffs Wolfington, Doyle and Allen collectively experienced 20 regulator

16   failures, including 12 Replacement Regulator failures.[15]  Replacement Regulators

17   fail because Chrysler sold and installed defective 2005 model year window

18   regulators as service parts until at least December 2010.  According to Chrysler, "█

19   ████████████████████████████████████████████████████████████

20   ███████████████████████████████████████████████████"[16]

21

22   ███████████  ████████  ████████████████████████████████████)

---

[9] Barteau Decl., Ex. 1, Price Depo., at 33:5-17 and 35:9-13.
[10] *Id.* at 35:14-22.
[11] *Id.* at 34:16-19.
[12] *Id.* at 33:22-34:10.
[13] *Id.* at 50:6-18.
[14] Barteau Decl., Ex. 3, Laba Depo., at 86:21-25; *see also* Batzer Decl., at p. 21.
[15] *See* Declarations of Michael Wolfington ("Wolfington Decl."), Stephen Doyle ("Doyle Decl.") and Robin Allen ("Allen Decl.").
[16] Barteau Decl., Ex. J [CGLLC000033], Ex. C [CGLLC038561] (████████

- 4 -

In reality, the failure rate for the 2005 model year regulators is much higher because failures that occur more than 36 months after a Vehicle goes into service are not reflected in this warranty repair data.[17] In his 19 years of experience as a window lift systems engineer, Mr. Price has never heard of a warranty failure rate as high as the failure rate for the Jeep Liberty window regulators.[18] And, because the Replacement Regulators have the same defect as the model year 2005 OEM regulators, there is a "█████████████████████████"[19] because of the creep issue. This is evident by reviewing the Customer Assistance Request ("CAIR") Database and the Dealership Write-Up Database produced by Chrysler.

Attached as exhibits 1 thru 4 to the Declaration of Robert Sherwood ("Sherwood Decl.") are ████████████████████████████████████████████████████████████████████████████. For example:

- ███████████████████████████████████████████
  ███████████.[20]
- ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████

---

███████████████████████████████████████████
███████████████ ), Ex. I [CGLLC038549] (
███████████████ ), Ex. D [CGLLC037326] ("
███████████ "), and Ex. 3, Laba Depo., at 104:7-11 (Lift plates in 02-05 model year Vehicles are subject to heat creep and a warranty failure rate of 250 or higher in southern states.).

[17] Barteau Decl., Ex. 3, Laba Depo., at 33:4-10.
[18] Barteau Decl., Ex. 1, Price Depo., at 27:8-15.
[19] Barteau Decl., Ex. I [CGLLC038549] ("██████████████████████████████████.").
[20] Sherwood Decl., Ex. 1, Row 8,747 (excerpt from CGLLC045993).



[REDACTED].[21]

[REDACTED].[22]

Chrysler's review of Vehicle regulator repair history confirms repeat failures are common. [REDACTED]

[REDACTED].[23] [REDACTED]

[REDACTED].[24]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED].[25]   Mr. Price admits that such a high failure rate relative to the industry standard is an issue of concern and that consumers would not expect to have so many regulator failures.[26]  Mr. Price's candid testimony is no doubt a reflection of his knowledge that the typical life expectancy for window regulators is essentially the life of the vehicle (10 years).[27] [REDACTED]

[REDACTED]

---

[21] *Id.* at Row 3,178.
[22] *Id.* at Row 1,301.
[23] Barteau Decl., Ex. B [CGLLC038725].
[24] *Id.*
[25] Barteau Decl., Ex. M [CGLLC038593]. [REDACTED]

[REDACTED]

[REDACTED].
[26] Barteau Decl., Ex. 1, Price Depo., at 38:9-17.
[27] *Id.* at 161:5-15.  *See also* Batzer Decl., at p. 20.

1  ███████████████████████ ████████.[28]

2  ████████████████████████████████████████

3  ████████████████████████████████████████

4  ████████████████████████████████████████

5  ████████████████████████████.[29] ███████

6  ████████████████████████████████████████

7  ██████████████████.[30]

**C. Chrysler Knew Of The Defect As Of June 10, 2009, Yet Did Not Alert Class Members.**

When Chrysler came into existence on June 10, 2009, it knew about the defect at issue in this litigation.  Chrysler's knowledge is based upon and flows from the institutional knowledge it acquired from Old Carco.  ██████████████

████████████████████████████████████████

██████████████████████████████████.[31] ███████

████████████████████████████████████████

████████████████████████████████████████

████████████████.[32]

Despite this knowledge, Chrysler failed to notify Vehicle owners about the defect.  ████████████████████████████████████████

████████████████████████████████████████

_____

[28] Barteau Decl., Ex. E [CGLLC038659] and Barteau Decl., Ex. 3, Laba Depo., at 206:16-207:2. (████████████████████████████.)

[29] Sherwood Decl., at ¶¶ 5, 7 and 9.

[30] *See id.,* ████████████████████████████

[31] Barteau Decl., Ex. F [CGLLC038555] and Ex. N [CGLLC038512] (Laba Depo., Ex. 3, which is a document created by Chrysler engineer Duane Alt with an August 23, 2007 project start date. ████████████████████████.).

[32] Sherwood Decl., ¶¶ 8 and 10.

- 7 -

██████████████████████████████████████████████[33]   But that extended warranty did not cover 2002-2005 Vehicles, and will soon expire.

### D. The "Improved" Lift Plates Introduced In Late 2010 Are Equally Defective.

Chrysler attempted to correct the defect in late 2010/early 2011 by developing a new, allegedly more robust replacement lift plate. ████████████ ████████████████████████████████████████.[34]   Indeed, for one particular test, only one Vehicle was tested (four windows total) to "make sure that the glass doesn't move down, doesn't start creeping down."[35] And, despite the fact that the test results indicated failures,[36] the test was not repeated by Chrysler.[37] Remarkably, Chrysler considered the test to be a "█████"[38] Further, during the vibration testing of the "improved" part, the test facility did not even follow Chrysler's internal testing standards.[39] ████████████████████████████ ███████████████████[40]

Chrysler then began manufacturing the "improved" lift plate kits for distribution to its dealerships.  Not surprisingly, Chrysler soon thereafter identified a failure mode with the "improved" lift plates very similar to the failure mode for prior version of the lift plates – specifically, the connection between the cable and the lift plate would break.[41]  Chrysler implemented an eleventh hour emergency "fix" by injecting a space filling hardener into the helix,[42] ████████████████████

---

[33] Barteau Decl., Ex. 4 [CGLLC000046].
[34] Barteau Decl., Ex. 5 [CGLLC036024-036037].
[35] Barteau Decl., Ex. 1, Price Depo., at 87:3-6.
[36] *Id.* at 89:11-90:8.
[37] *Id.* at 92:2-6.
[38] *Id.* at 93:1-4. *See also*, Barteau Decl., Ex. O [CGLLC036024-036037].
[39] Barteau Decl., Ex. 1, Price Depo., at 91:15-92:1.
[40] Barteau Decl., Ex. P [CGLLC037241].
[41] Barteau Decl., Ex. 1, Price Depo., at 104:24-106:10; and125:7-127:18.
[42] *Id.* at 107:19-25.

- 8 -

1 ██████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████.[43]

### E. The Defective Replacement Regulators Are A Safety Hazard.

When a Replacement Regulator fails, the plastic gives out, the metal spiral cable separates from the window bracket, and the window falls. Depending on the angle of the fall, the affected window can crash to the bottom of the door, sometimes with sufficient force to shatter the glass. These failures occur without warning, when the windows are open or closed, when the motor is off or running, and when the Vehicles are still or travelling at speed. ███████████████

████████████████████████████████████████████████████████████████

███████████  ████████████████████████████████████  ███████

████████████████████████████████████████  ███████

████████  ██████████████████████████████████████████████

████████████████████████████.[48]  According to Plaintiffs' expert,

Stephen Batzer, ████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████.[49] Therefore, because of the defect, the Replacement Regulators are by their nature unsafe. They frequently and repeatedly fail, rendering the Vehicles' windows inoperable and often stuck in the fully open position, endangering the Vehicle occupants and compromising the occupant protection system.

---

[43] *See* Sherwood Decl., Ex. 5.
[44] *See* Declaration of Mohammed Hussain ("Hussain Decl."), Exs. 1 and 2 (██████████████████████████████████████████████████).
[45] *Id.* at No. 6949 [CGLLC038859].
[46] *Id.* at No. 58684.
[47] *Id.* at No. 7109.
[48] *Id.* at No. 25954.
[49] Batzer Decl., at p. 19.

- 9 -

## III.   THE CLASSES

Plaintiffs seek certification of two classes in this action.  The first class is a California resident class ("the California Class") for which certification is sought as to the first claim for relief (violation of the Consumers Legal Remedies Act, *California Civil Code* § 1750, *et seq.* ("CLRA")) and the second claim for relief (violation of *California Business & Professions Code* § 17200, *et seq.* ("UCL")) alleged in the SAC.  Plaintiffs propose to define the California Class as follows: "All persons and entities in the State of California who own(ed) or lease(d) a model year 2002 through 2007 Jeep Liberty Vehicle and who purchased a Replacement Regulator from, or otherwise had a Replacement Regulator installed by, Chrysler or its network of authorized dealers at any time on or after June 10, 2009."

The second class is a Maryland resident class ("the Maryland Class") for which certification is sought as to the fourth claim for relief (violation of Maryland Code, Commercial Law Article, § 13-101, *et seq.*) alleged in the SAC.  Plaintiffs propose to define the Maryland Class as follows: "All persons and entities in the State of Maryland who own(ed) or lease(d) a model year 2002 through 2007 Jeep Liberty Vehicle and who purchased a Replacement Regulator from, or otherwise had a Replacement Regulator installed by, Chrysler or its network of authorized dealers at any time on or after June 10, 2009."

Messrs. Doyle and Wolfington seek to represent the California Class; Ms. Allen seeks to represent the Maryland Class.

## IV.   ARGUMENT

Rule 23 confers upon the district court broad discretion to determine whether a class should be certified. *Walker v. Life Ins. Co. of the Sw.*, No. CV 10-9198 JVS, 2012 WL 7170602, at *7 (C.D. Cal. Nov. 9, 2012) (citing *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001)). The district court need only form a "reasonable judgment" on each certification requirement "'[b]ecause the early resolution of the class certification question requires some degree of speculation.'" *Id.* (quoting

- 10 -

1   *Gable v. Land Rover N. Am., Inc.*, 2011 U.S. Dist. LEXIS 90774, *9 (C.D. Cal. July

2   2011)). The court must take the substantive allegations of the complaint as true,

3   "'thus necessarily making the class order speculative in the sense that the plaintiff

4   may be altogether unable to prove his allegations.'" *Id.* (quoting *Gable*, 2011 U.S.

5   Dist. LEXIS 90774, at *9).

6       A motion for class certification under Rule 23 involves a two-part analysis.

7   First, Plaintiffs must demonstrate that the proposed Classes satisfy the requirements

8   of Rule 23(a). Second, Plaintiffs must meet the requirement for at least one of the

9   three subsections in Rule 23(b). Here, the Classes meet the requirements for Rule

10   23(b)(3), which provides that a class may be maintained where common questions

11   of law and fact predominate over questions affecting individual members and

12   where a class action is superior to other means to adjudicate the controversy.

13       There are also implied prerequisites as the class must be sufficiently definite

14   and ascertainable. "Ascertainability is needed for properly enforcing the preclusive

15   effect of final judgment.  The class definition must be clear in its applicability so

16   that it will be clear later on whose rights are merged into the judgment...." *Xavier

17   v. Philip Morris*, No. C 10-02067, 2011 WL 1464942, at *12 (N.D. Cal. April 18,

18   2011).

19   **A. The Classes Are Ascertainable.**

20       A class is ascertainable as long as its members can be defined through

21   objective criteria. *Forcellati v. Hyland's Inc.*, No. CV 12-1983-GHK, 2014 WL

22   1410264, at *5 (C.D. Cal. April 9, 2014) (citing *Guido v. L'Oreal, USA, Inc.*, Nos.

23   CV 11-1067, CV 11-5465, 2013 WL 3353857, at *18 (C.D. Cal. July 1, 2013)).  A

24   class is sufficiently ascertainable if "the proposed class definition allows

25   prospective plaintiffs to determine whether they are class members with a potential

26   right to recover." *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 593–94

27   (C.D. Cal. 2008).

28

In this case, Plaintiffs have precisely defined their Classes based on objective criteria: (1) did you own or lease a model year 2002 through 2007 Jeep Liberty Vehicle?; and (2) did you purchase a Replacement Regulator from, or otherwise have a Replacement Window Regulator installed by, Chrysler or its network of authorized dealers at any time on or after June 10, 2009?  Affirmative answers to these two questions establish one's membership in one of the Classes.  This is sufficient.  *See, e.g., L'Oreal*, 2013 WL 3353857, at *18 (holding that class was sufficiently ascertainable where "the requirement for membership in the class [was] whether a consumer purchased a product after a particular date").

There is no requirement that 'the identity of the class members ... be known at the time of certification.'" *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (quoting *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012)).  "If class actions could be defeated because membership was difficult to ascertain at the class certification stage, 'there would be no such thing as a consumer class action.'" *Id.* (quoting *Ries*, 287 F.R.D. at 536.)  Rather, "it must be possible for the *members to identify themselves as a member of the class*." *Tchoboian v. Parking Concepts*, No. SACV 09-422 JVS, 2009 WL 2169883, at *5 (C.D. Cal. July 16, 2009) (emphasis in original; internal quotes omitted).

In this case, class members can be identified through Chrysler's business records, the business records of Chrysler's network of authorized dealers, and state bureau of motor vehicle records.  Any remaining class members will be able to easily identify themselves based on objective criteria.  *See Tchoboian,* 2009 WL 2159883, at *5 (class covering all consumers who received a printed receipt containing more than 5 digits of credit card ascertainable because consumers can identify themselves); *Kesler v. Ikea U.S. Inc.*, No. SACV 07-568 JVS, 2008 WL 413268, at *3 (C.D. Cal Feb. 4, 2008) (similar); *Forcellati*, 2014 WL 1410264, at *5 (rejecting argument that class certification was improper where majority of class

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

members would have to self-identify, noting that "facilitating small claims is the policy at the very core of the class action mechanism.") (internal quotes omitted).[50]

The fact that membership in each of the Classes is easily determined on the basis of these objective criteria makes each of the Classes ascertainable.

**B. The Classes Satisfy Rule 23(a).**

**1. Each Class is so Numerous that Joinder is Impracticable.**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "'Impracticability' does not mean 'impossibility,' [rather it means], ... only difficulty or inconvenience in joining all members of the class." *Keegan*, 284 F.R.D. at 522 (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964)). No magic number exists with regard to the number of class members that is required as a matter of law to satisfy numerosity. "'As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.'" *Keegan*, 284 F.R.D. at 522 (quoting *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988)).

"Plaintiffs are not required to state the exact number and identity of every class member because to do so would frustrate the purpose of class actions when recoveries may be numerous but small." *Costello v. Chertoff*, 258 F.R.D. 600, 607 (C.D. Cal. 2009) (internal quotes omitted). Where, as here, the exact size of the Classes is unknown but general knowledge and common sense indicate that they are large, the numerosity requirement is satisfied. *Id. See also Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, No. SACV 07-1306 JVS, 2008 WL 4906433, at *5 (C.D. Cal. Nov. 13, 2008) (similar); *Castillo v. General Motors*

---

[50] Plaintiffs anticipate using R.L. Polk & Company's historical and current vehicle registration data (www.polk.com/solutions) to supplement Chrysler's business records and those of its authorized dealers when providing notice to the Classes.

- 13 -

1   *Corp.*, No. Civ. 07-2142 WBS, 2008 WL 8585691, at *3 (E.D. Cal. Sept. 8, 2008)

2   (courts may use common sense assumptions to support numerosity).

3         In this case, numerosity is satisfied. ███████████████████████████

4   ███████████████████████████████████████████████████████████████████████

5   ██████████████████[51]█████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████[52]

7   ███████████████████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████████████████

11  ████████████[53]████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████[54]████████████

14  ███████████████████████████████████████████████████████[55]

15  ████████████████████████████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████████████████

17  ███████████████████████████████████████[56] Since the Replacement

18  Regulators are similarly defective (*i.e.* subject to creep as previously described), it

19  is reasonable to infer from this data that numerosity is satisfied. *See Tchoboian*,

20  2009 WL 2169883, at *4 (finding plaintiff's allegation of at least 2,000 class

21  members sufficient for numerosity); *Keegan*, 284 F.R.D. at 522 (finding proposed

22  classes of owners of certain 2006-2008 Honda Civic vehicles sufficiently

23  numerous).

---

24

25  [51] Barteau Decl., Ex. H [CGLLC038658].
    [52] Barteau Decl., Ex. G [CGLLC006037].

26  [53] See footnote 16, *supra.*
    [54] *Id.*

27  [55] Batzer Decl., at p. 14.

28  [56] *See* Sherwood Decl., at ¶6.

### 2. There are Questions of Law and Fact Common to the Members of Each of the Classes.

Rule 23(a)(2) requires questions of law or fact common to the class. This requirement is permissively construed. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, No. 8:10ML2151 JVS, 2012 WL 7802852, at *2 (C.D. Cal. Dec. 28, 2012) (hereinafter, "*In re Toyota*") (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). *See also Castillo*, 2008 WL 8585691, at *3 ("the Ninth Circuit construes commonality liberally"). "'The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies ....'" *In re Toyota*, 2012 WL 7802852, at *2 (quoting *Hanlon*, 150 F.3d at 1019). Nevertheless, a common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Courts recognize that "[c]laims arising under consumer protection statutes are well-suited for class certification." *Tait v. BSH Home Appliances, Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012). *See also Forcellati*, 2014 WL 1410264, at *9 ("[f]or purposes of class certification, the UCL … and CLRA are materially indistinguishable" and subject to "an objective, classwide inquiry"). Product defect cases, including automotive defect cases, are also well-suited for class certification. *See, e.g., Wolin*, 617 F.3d at 1172 (finding commonality "easily satisfy[ied]" where "the claims of all class members involve the same alleged defect … found in vehicles of the same make and model"); *In re Toyota*, 2012 WL 7802852, at *2 (similar); *Chamberlan*, 223 F.R.D. at 526 (finding commonality satisfied because all claims "stem from the same source, namely that Ford knew that there was a risk

- 15 -

1    that the plastic intake manifolds would crack prematurely, but concealed that

2    information from ordinary consumers"), *aff'd*, 402 F.3d 952 (9th Cir. 2005).

3        In this case, the overriding common questions of fact are: (1) whether the

4    Replacement Regulators are defective; (2) whether Chrysler failed to disclose the

5    defect; (3) whether Chrysler had a duty to disclose the defect; (4) whether the

6    defect poses an unreasonable safety risk; (5) whether Chrysler knew or should have

7    known of the defect; and (6) whether Chrysler concealed the defect.

8        The questions of law that are common to the members of each Class are

9    framed by the claims for relief alleged in the SAC and include, *inter alia*: (1)

10   whether, as to the members of the California Class, Chrysler's failure to disclose

11   the defect violates the Consumers Legal Remedies Act; (2) whether, as to the

12   members of the California Class, Chrysler's failure to disclose the defect violates

13   *California Business & Professions Code* § 17200; and (3) whether, as to the

14   members of the Maryland Class, Chrysler's failure to disclose the defect violates

15   Maryland Code, Commercial Law Article, § 13-101, *et seq.*

16       These common questions of law and fact are susceptible to common proof –

17   *e.g.,* testimony from Plaintiffs' expert and Chrysler's internal documents – and the

18   'truth or falsity' of these questions 'will resolve an issue that is central to [the

19   claims'] validity." *Dukes*, 131 S. Ct. at 2551.  Commonality requires nothing more.

20             **3. Plaintiffs' Claims are Typical of the Claims of Class Members.**

21       Rule 23(a)(3) requires that "the claims or defenses of the representative

22   parties are typical of the claims or defenses of the class."  Under the "'permissive

23   standards'" of this Rule, "'representative claims are 'typical' if they are reasonably

24   co-extensive with those of absent class members; they need not be substantially

25   identical.'"  *Walker*, 2012 WL 7170602, at *9 (quoting *Hanlon*, 150 F.3d at 1020).

26   The typicality requirement "is not particularly strict and may be satisfied even

27   where there are some factual dissimilarities between the claim of the class

28

- 16 -

representative and the claims of the other class members." *Rivera*, 2008 WL 4906433, at *7 (internal quotes omitted).

The danger against which typicality guards is whether "absent class members will suffer if their representative is preoccupied with defenses unique to it." *Ellis v. Costco*, 657 F.3d 970, 984 (9th Cir. 2008). To meet the typicality requirement, Plaintiffs must show that: (1) "other members have the same or similar injury"; (2) "the action is based on conduct which is not unique to the named plaintiffs"; and (3) "other class members have been injured by the same course of conduct." *Id.*

"In determining whether typicality is met, the focus should be on the defendants' conduct and the plaintiffs' legal theory, not the injury caused to the plaintiff." *Astiana*, 291 F.R.D. at 502. As a result, typicality (like commonality) is rarely an obstacle in cases like this one where Plaintiffs allege common defects, omission-based claims, and violations of consumer protection statutes. *In re Toyota*, 2012 WL 7802852, at *2-3 (class representative's claims typical because all class members' claims arise from common automobile defect and representations); *Castillo*, 2008 WL 8585691, at *4 (typicality satisfied because the "initial circumstances" underlying plaintiffs' claims are "substantially identical" in so far as "all purchased Saturn vehicles with [the same allegedly defective] transmissions").

In this case, Plaintiffs' claims – and those of every other member of each of the Classes – arise from the same uniform, undisclosed practices of Chrysler. (Doyle Decl., ¶¶ 8-12; Wolfington Decl., ¶¶ 8-12; and Allen Decl., ¶¶ 8-11.) In seeking to remedy Chrysler's wrongdoing, Plaintiffs are asserting identical legal claims against Chrysler on behalf of themselves and the respective members of each Class. As a result, Plaintiffs' claims are "reasonably coextensive with those of absent class members" and, thus, typicality is satisfied.

- 17 -

**4. Plaintiffs and Their Counsel will Fairly and Adequately Represent the Interests of the Members of the Classes.**

The adequacy of representation requirement set forth in Rule 23(a)(4) involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020; *accord Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985. If there are any doubts as to the adequacy or potential conflicts, they should be resolved in favor of upholding the class, subject to reconsideration. *See* 2 Newberg, *Newberg on Class Actions* § 7.24 at 7-80 to 7-81 (3d ed. 1992).

Both prongs of the test for adequacy of representation are met here. First, Plaintiffs' claims do not conflict in any way with the interests of any of the other members of the Classes. (Doyle Decl., ¶ 15; Wolfington Decl., ¶ 15; and Allen Decl., ¶ 16.) To the contrary, and as evidenced by the claims alleged in the SAC, Plaintiffs' claims are entirely consistent with the claims of the other members of each of the Classes. *See Chamberlan*, 223 F.R.D. at 526 (adequacy of representation satisfied where "Plaintiffs share the same interest as the absent class members in that they have all been harmed by Ford's concealment of the defective nature of the plastic intake manifolds.").

Moreover, as demonstrated by their declarations, Plaintiffs are members of the Classes (Doyle Decl., ¶¶ 5-6; Wolfington Decl., ¶¶ 5-6; and Allen Decl., ¶¶ 5-6), understand their special role as class representatives and the duties that they owe to the members of each Class (Doyle Decl., ¶¶ 13-14; Wolfington Decl., ¶¶ 13-14; and Allen Decl., ¶¶ 14-15), and have been actively monitoring the litigation since its inception (Doyle Decl., ¶ 14; Wolfington Decl., ¶ 14; and Allen Decl., ¶ 15).

- 18 -

1    With respect to Plaintiffs' counsel, as evidenced by the Declaration of J. Paul
2    Gignac ("Gignac Decl."), the Declaration of Robert A. Curtis ("Curtis Decl.") and
3    the Declaration of Jeffrey S. Goldenberg ("Goldenberg Decl."), Plaintiffs' counsel
4    are well-qualified and sufficiently experienced to ensure the vigorous prosecution
5    of this litigation on behalf of the Classes.  *See Tait*, 289 F.R.D. at 477 ("To be
6    adequate, plaintiffs' counsel must be qualified, experienced, and generally able to
7    conduct the proposed litigation.").  Plaintiffs' counsel have extensive experience in
8    successfully  prosecuting  class  actions,  including  those  against  automobile
9    manufacturers; they are ready, willing and able to commit the resources – both
10   human and financial – required to litigate this case vigorously on behalf of the
11   Classes; they already have expended significant time, expense, and effort in
12   researching and investigating the legal and factual issues in the case; and they will
13   continue to do so. (Gignac Decl., ¶¶ 5, 6 and 8 and Exh. A; Curtis Decl., ¶¶ 5 and 7;
14   and Goldenberg Decl., ¶¶ 7, 8 and 10.)

15   **C. The Classes Should Be Certified Pursuant To Rule 23(b)(3).**

16   For certification pursuant to Rule 23(b)(3), Plaintiffs must demonstrate that
17   "questions of law or fact common to the members of the class predominate over
18   any questions affecting only individual members and that a class action is the
19   superior method for adjudication of the controversy."  Rule 23(b)(3) sets forth the
20   following matters as pertinent to such a determination: (1) the interest of the
21   individual class members in individually controlling the prosecution; (2) the extent
22   and  nature  of  any  previously  commenced  class  litigation  concerning  the
23   controversy; (3) the desirability of concentrating litigation in a single forum; and
24   (4) any difficulties likely to be encountered in management of a class action.

25   **1.  Common Questions of Law and Fact Predominate.**

26   The predominance inquiry tests whether proposed classes are sufficiently
27   cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v.*
28   *Windsor*, 521 U.S. 591, 594 (1997).  It focuses on the relationship between the

- 19 -

1  common and individual issues.  *In re Toyota*, 2012 WL 7802852, at *3 (citing

2  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*

3  *Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)). In other words, "[w]hen common

4  questions present a significant aspect of the case and they can be resolved for all

5  members of the class in a single adjudication, there is clear justification for

6  handling the dispute on a representative rather than on an individual basis." *Hanlon*,

7  150 F.3d at 1022. "Implicit in the satisfaction of the predominance test is the notion

8  that the adjudication of common issues will help achieve judicial economy." *Zinser*

9  *v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (internal

10  quotation marks and citation omitted).

11      The U.S. Supreme Court has recognized that the predominance test is often

12  "readily met" in consumer fraud cases.  *Amchem Prods.*, 521 U.S. at 626.

13  California's UCL and CLRA "rely on the same objective test, that is whether

14  'members of the public are likely to be deceived.'" *Tait*, 289 F.R.D. at 480 (citing

15  *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (holding that

16  "[c]ausation, on a classwide basis, may be established by materiality," meaning that

17  "[i]f the trial court finds that material misrepresentations have been made to the

18  entire class, an inference of reliance arises as to the class")).  "This objective test

19  renders claims under the UCL ... and CLRA ideal for class certification." *Id.*

20  (internal quotes omitted).  This is especially true in cases like this where the alleged

21  consumer fraud is omission based.  *Id.* at 482 (fact that not all class members were

22  exposed to the same representations "has no relevance to the present case, where

23  Plaintiff's theory is that Defendant's *omissions* violated the UCL ... and CLRA")

24  (emphasis in original).

25      Maryland's MPCA is governed by a similar, objective standard that is well-

26  suited for class certification.  *See Tait*, 289 F.R.D. at 484 (certifying class of

27  Maryland purchasers of defective washers because the MPCA imposes an objective

28  test whereby a plaintiff's reliance on a defendant's omission can be presumed by the

- 20 -

materiality of the omitted fact). *See also Sager v. Hous. Comm'n of Anne Arundel County*, 855 F.Supp.2d 524 (D. Md. 2012) ("In Maryland, whether a statement is 'misleading' is judged from the point of view of a reasonable, but unsophisticated consumer."); *Green v. H & R Block, Inc.*, 355 Md. 488, 524 (1999) ("An omission is material if a significant number of unsophisticated consumers would find that information important in determining a course of action.").

Moreover, as this Court has previously recognized, automotive defect cases are well suited for class-wide adjudication because common issues regarding the existence of the defect and the manufacturer representations and omissions are core to the claims of all class members and are amenable to class-wide proof. *See In re Toyota*, 2012 WL 7802852, at *4 ("[T]he common issue that predominates is whether the Subject Vehicles have a common defect or defects. The same evidence is relevant to all class members claims."). *See also Chamberlan*, 223 F.R.D. at 526-27 (finding common questions to predominate, including "whether the design of the plastic intake manifold was defective, whether Ford was aware of the alleged design defects, whether Ford had a duty to disclose its knowledge, whether it failed to do so, whether the facts that Ford allegedly failed to disclose were material, and whether the alleged failure to disclose violated the CLRA").

This is true even where the alleged defect has not manifested in an identical fashion for each class member. *See Banks*, 2013 WL 6700299, at *6 ("[I]t is true that some vehicles' defects may have manifested in different ways, [but] the issues of (1) whether Nissan was aware of the alleged defect, (2) whether Nissan had a duty to disclose its knowledge, and (3) whether Nissan violated consumer protection laws when it failed to do so, are common to the class and predominate over any individual issues."); *Wolin*, 617 F.3d at 1173 ("Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so...."). Indeed, "proof of

- 21 -

1   the manifestation of a defect is not a prerequisite to class certification." *Wolin*, 617

2   F.3d at 1173 (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).

3          Here, Plaintiffs already have demonstrated that there are numerous,

4   important questions of law and fact common to the members of the Classes. *See*

5   §IV. B. 2, *supra*. These questions clearly predominate over any conceivable

6   individual issues, because Chrysler's failure to disclose the defect is uniform, and

7   therefore necessarily common, to each class member.

8          The critical facts as they relate to Chrysler's failure to disclose the defect do

9   not vary from one class member to another because Chrysler failed to disclose this

10  material information to all Vehicle owners.  Moreover, while choice-of-law issues

11  can defeat predominance, there are no choice-of-law issues in this case.  Uniform

12  California state law applies to the California class members' claims, while uniform

13  Maryland state law applies to the Maryland class members' claims.

14         Because the claims of all of the class members arise out of the same failure to

15  disclose, are premised on the same legal theories (the claims for relief alleged in the

16  SAC), and involve the application of uniform state law, the predominance of

17  common questions of law and fact is irrefutable.  As such, this case satisfies the

18  predominance requirement under Rule 23(b)(3).

19         **2. A Class Action is the Superior Method for Adjudication.**

20         Relevant to the issue of superiority, Rule 23(b)(3) requires that "the court

21  find[ ] ... that a class action is superior to other available methods for fairly and

22  efficiently adjudicating the controversy." *Id.* "'A class action is the superior method

23  for managing litigation if no realistic alternative exists.'" *Tchoboian*, 2009 WL

24  2169883, at *7 (quoting *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234–35

25  (9th Cir. 1996)). Thus, the superiority inquiry requires a comparative evaluation of

26  alternative mechanisms of dispute resolution. *Id.* (citing *Hanlon*, 150 F.3d at 1023).

27         In judging alternative mechanisms of dispute resolution, the court should

28  consider the following non-exclusive list of factors:

"(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3)(A)-(D).

In this case, all of these factors weigh in favor of class certification. First, there is no indication that class members would have a strong interest in individual litigation. This is an archetypal case for class adjudication, involving tens of thousands of class members with relatively small amounts in controversy. *See Hanlon*, 150 F.3d at 1023 (certifying class of minivan owners seeking repair costs for defective liftgates). The typical claim of each class member is far too small for individual class members to economically pursue a separate action. *See Rivera*, 2008 WL 4906433, at *14 (superiority satisfied where product sells for only $50). Each individual's claim, standing alone, is a "negative value" claim – that is, a claim whose value would be dwarfed by the cost of litigating the claim. *See In re Toyota*, 2012 WL 7802852, at *4 ("Given the extreme complexity of proof as to the alleged defect, and given the relatively low value of recovery per Subject Vehicle in this action, the first and third factors favor class adjudication.").

Therefore, in the absence of class certification, it is virtually certain that none of the other class members' individual consumer protection claims will go forward and that none of the myriad of customer complaints regarding Chrysler's defective Replacement Regulators will be addressed – much less resolved. *See Tait*, 289 F.R.D. at 486 ("'Class action certifications to enforce compliance with consumer protection laws are desirable and should be encouraged.'") (quoting *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999)). Considering the expenses that would be involved in procuring individual evidence and expert testimony on behalf of each class member, the pursuit of individual claims in this

- 23 -

1   case is simply not economical.  A class action is the only feasible means by which

2   individual consumers with negative value claims can obtain a cost-effective

3   remedy.

4         With regard to the second factor, only a handful of Vehicle owners

5   nationwide have commenced litigation regarding the defect. (Goldenberg Decl., ¶

6   12.)  As to the third factor, common factual and legal issues regarding the Regulator

7   Defect and Chrysler's conduct make it desirable to concentrate all cases in a single

8   forum.  Class wide resolution of the issues in this case will reduce litigation costs

9   and promote efficiency for the Court as well as the litigants.  The evidence relating

10  to Chrysler's failure to disclose the defect will not vary from one class member to

11  another.  If litigated in a single forum, there will be no danger of inconsistent

12  verdicts, and the trier of fact will draw a single conclusion from the same facts in

13  the same manner from one class member to the next.  Absent a class action, the trier

14  of fact – be it judge or jury – will hear the same facts regarding Chrysler's

15  wrongdoing over and over again.

16        Lastly, there are no significant manageability issues.   This Court has

17  previously described "manageability" as just another way of asking "whether class

18  adjudication is superior to the alternative, which in this case would be individual

19  suits by the class members against [the vehicle manufacturer.]"  *In re Toyota*, 2012

20  WL 7802852, at *5.  In that case, this Court found wisdom in the words of *In re*

21  *Napster, Inc. Copyright Litig.*, C MDL-00-1369 MHP, 2005 WL 1287611, at *9

22  (N.D. Cal. June 1, 2005), wherein the court concluded that the logistical difficulties

23  in adjudicating class claims that numbered in the tens of thousands must necessarily

24  be compared to, and paled in comparison to, the logistical difficulties in litigating

25  tens of thousands of individual actions.  *In re Toyota*, 2012 WL 7802852, at *5.

26  The same reasoning applies here.  *See also Wolin*, 617 F.3d at 1176 (affirming

27  certification of class of vehicle owners alleging alignment geometry defect because

28  the "amount of damages by each class member is not large" and "[f]orcing

- 24 -

individual owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication").

In summary, the class action device is superior because there simply are no practical or economic alternative procedures available to the parties that might be used to adjudicate the claims for relief asserted in this action in a more fair and/or more efficient manner. (Gignac Decl., ¶ 7; Curtis Decl., ¶ 6; and Goldenberg Decl., ¶ 9.)

**V. CONCLUSION**

For all of the foregoing reasons, and on the basis of the authorities cited herein, the declarations submitted herewith and the evidence provided therewith, Plaintiffs respectfully request that the Court grant their motion for class certification and enter an Order in the form proposed and submitted.

Dated: May 9, 2014

ARIAS OZZELLO & GIGNAC LLP
FOLEY BEZEK BEHLE & CURTIS, LLP
GOLDENBERG SCHNEIDER, LPA


By: _____
J. Paul Gignac

Attorneys for Plaintiffs

- 25 -