SEDGWICK LLP
Amand Mines (State Bar No. 155195)
amand.mines@sedgwicklaw.com
801 Figueroa Street, 19th Floor
Los Angeles, California 90017-5556
Telephone: (213) 426-6900
Facsimile: (213) 426-6921

THOMPSON COBURN LLP
Kathy A. Wisniewski (admitted *pro hac vice*)
kwisniewski@thompsoncoburn.com
John W. Rogers (admitted *pro hac vice*)
jrogers@thompsoncoburn.com
Stephen A. D'Aunoy (admitted *pro hac vice*)
sdaunoy@thompsoncoburn.com
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000

*Attorneys for Defendant Chrysler Group LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STEVE DOYLE, *et al.* | Case No. SA-CV-13-620-JVS-ANx |
| Plaintiffs, | **CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| CHRYSLER GROUP LLC, | |
| Defendant. | [CLASS ACTION] |
| | DATE: August 25, 2014<br>TIME: 1:30 p.m.<br>JUDGE: James V. Selna<br>COURTROOM: 10C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 25, 2014 at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom 10C of the above-captioned court, located at 411 West Fourth Street, Room 1053, Santa Ana, CA 92701-4516, Defendant Chrysler Group LLC will and hereby does move this Court for an order issuing sanctions for spoliation of evidence as to Plaintiff Robin Allen.

This motion is made on the grounds that, having full knowledge she intended to bring a lawsuit against Chrysler Group based on allegations that she had purchased replacement window regulator components for her Jeep Liberty vehicle that were defective, and having contacted counsel to file such a lawsuit, Allen disposed of her vehicle and the allegedly defective components within it without giving notice to Chrysler Group and before it had an opportunity to conduct a product inspection. Relief is sought pursuant to this Court's inherent power to sanction a party for failure to fulfill a duty to preserve evidence.

This Motion is based on this Notice of Motion, Chrysler Group's Memorandum of Points and Authorities, the Declaration of Keith Radyco, the Declaration of Kathy A. Wisniewski and the attached exhibits, and on such other and further matters as may be presented to the Court at or prior to the hearing.

This motion is made following a conference with counsel pursuant to L.R. 7-3, which took place on April 22, 2014.

Dated: July 10, 2014  **SEDGWICK LLP**

By: *s/ Amand Mines*
    Amand Mines
    *Attorneys for Defendant*
    *Chrysler Group LLC*

**TABLE OF CONTENTS**

|   |   |   | Page |
|---|---|---|------|
| I. | INTRODUCTION | | 1 |
| II. | FACTS RELEVANT TO MOTION | | 2 |
|   | A. | The Spoliation. | 2 |
|   | B. | The Need For A Vehicle Inspection. | 3 |
| III. | ARGUMENT | | 4 |
|   | A. | The Governing Law On Spoliation Of Evidence | 4 |
|   | B. | The Elements Of Spoliation Are Satisfied. | 5 |
|   | C. | An Adverse Inference And A Finding Of No Class Representation Are Appropriate Sanctions. | 9 |
| IV. | CONCLUSION | | 13 |

i

CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF AUTHORITIES

**CASES**

*Akaosugi v. Benihana National Corp.*, 282 F.R.D. 241 (N.D.Cal. 2012) ............... 13

*Arrowood Indemnity Co. v. Bel Air Mart*, 2014 WL 841314
  (E.D.Cal. 2014) ................................................................................................ 4, 5

*Azad v. Goodyear Tire & Rubber Co.*, 2013 WL 593913 (D.Nev. 2013) ............ 7-8

*Cyntegra, Inc. v. IDEXX Laboratories, Inc.*, 322 Fed.Appx. 569,
  2009 WL 1041105 (9th Cir. 2009) ..................................................................... 12

*Erlandson v. Ford Motor Co.*, 2009 WL 3672898 (D.Or. 2009) ............................ 7

*Falcon v. Philips Electronics North American Corp.*, 304 Fed.Appx. 896,
  2008 WL 4820527 (2d Cir. 2008) ...................................................................... 13

*Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005) ...................... 7, 8

*Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993) .................................................. 4

*In re Larry's Apartment, L.L.C.*, 249 F.3d 832 (9th Cir. 2001) ............................. 4

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009) .......................... 4

*Knight v. Deere & Co.*, 2010 WL 1948311 (E.D.Cal. 2010) .................................. 4

*Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Cir. 2006) ..................................... 6

*Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012) ........ 11, 12

*Montoya v. Orange County Sheriff's Dept.*, 2013 WL 6705992
  (C.D.Cal. 2013) .......................................................................................... passim

*Net-Com Services, Inc. v. Eupen Cable USA, Inc.*, 2013 WL 4007785
  (C.D.Cal. 2013) .............................................................................................. 4, 5, 9

*Painter v. Atwood*, 2014 WL 1089694 (D.Nev. 2014) ........................................... 4

*Quaglietta v. Nissan Motor Co., Ltd.*, 2000 WL 1306791 (D.N.J. 2000) ............... 7

*Sanchez v. Rodriguez*, 2014 WL 1056327 (C.D.Cal. 2014) ................................... 6

*Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) .................... 7, 8-9

*Unigard Security Insurance Co. v. Lakewood Engineering &
  Manufacturing Corp.*, 982 F.2d 363 (9th Cir. 1992) ....................................... 4, 6

## I. INTRODUCTION

This is a putative nationwide class action in which Plaintiffs seek money damages from Defendant Chrysler Group LLC. Plaintiffs allege that they purchased replacement window regulator components for their Jeep vehicles which were manufactured and sold by Chrysler Group, and that those replacement window regulators have a defect which results in repeat failures.

After Plaintiff Robin Allen contacted her attorneys of record for the purposes of filing a lawsuit on her behalf related to replacement window regulator components, she disposed of her Jeep vehicle, and, along with it, the purportedly defective window regulators which underlie her claim. The disposal of Allen's vehicle and its components occurred without any notice to Chrysler Group, and before it had a chance to conduct a vehicle inspection. The opportunity to conduct a vehicle inspection is critical both to Chrysler Group's defense of class certification and its defense on the merits. Indeed, an inspection may have revealed that the dealership where Allen purchased her replacement components had actually installed a part that was not made or distributed by Chrysler Group. It may also have revealed, among other things that: the alleged failure of a window component was the result of some manufacturing discrepancy, the accident damage Allen's vehicle sustained, or something unrelated to the "lift plate" defect upon which she bases her claim; and the trade-in value she received for her vehicle was unaffected by any purportedly non-functioning window component.

Because Allen's own unilateral voluntary actions have deprived Chrysler Group of an opportunity to fully defend itself, a dismissal sanction is likely warranted. However, Chrysler Group seeks sanctions only in the form of an adverse inference instruction at trial, and a finding that Allen is not a proper class representative.

## II. FACTS RELEVANT TO MOTION

### A. The Spoliation.

Allen first contemplated bringing a lawsuit related to the window regulators in her Jeep vehicle in late 2012 or early 2013, and she made contact with her counsel of record in that period of time. Exh. A to Wisniewski Decl. at pp. *Id.*, pp. 40-42, 92-98, 171, 176-77. As of the time that Allen first contemplated bringing a lawsuit (late 2012 - early 2013) she had already purchased the rear passenger-side window regulator component that is the subject of her claim, and she claims that this component had stopped functioning by that time. *See* Exh. B to Wisniewski Decl., No. 8. The rear passenger-side regulator component that Allen purchased was installed on the same side of her vehicle that had been damaged twice in accidents. *See* Exh. A to Wisniewski Decl., pp. 148-49.

On October 11, 2013, Allen disposed of her Jeep vehicle, without notice to Chrysler Group. *See* Exh. B to Wisniewski Decl., No. 1; Radyco Decl., ¶ 4. The purportedly broken rear passenger-side replacement window component which is the subject of Allen's claim was still in her vehicle when she traded it, and she did nothing to preserve that component or document its condition. Exh. A to Wisniewski Decl., pp. 130, 135-36, 144-45, 154-55. Twelve days after disposing of her vehicle and its allegedly defective window component (on October 23, 2013), Allen was joined as a named Plaintiff in this case in the Second Amended Complaint. *See* Docket #43. Allen alleges that her Jeep's "value was negatively impacted by the Replacement Regulators" and that the place where she traded her vehicle gave her $800 less than "its published Kelley Blue Book value" because of its broken window components. *Id.* at ¶ 28. Throughout this litigation Allen has repeatedly asserted that she intends to seek damages in the amount of $800 for this lost trade-in value. Exh. A to Wisniewski Decl., pp. 27, 106-07.

2

CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**B.     The Need For A Vehicle Inspection.**

An inspection of Allen's vehicle may have revealed evidence vital to the claims made, and the defenses that Chrysler Group intends to raise, both with respect to liability and class certification issues. *See* Declaration of Keith Radyco. An inspection was the only way to determine, among other things: what replacement window regulator assemblies were installed in Allen's vehicle; whether the replacement parts were actually sold by Chrysler Group; whether there was a failure of a window component; whether the "lift plate" (the alleged defect) was the cause of any failure that did occur; and whether a vehicle accident(s) contributed to any window component failure. *Id.* at ¶¶ 5-11. An inspection would be the only way to make these determinations because: Chrysler Group dealerships sold a variety of different replacement parts for Jeep vehicles (*id.* at ¶ 7); various third-party entities sell replacement window regulators for Allen's model of Jeep vehicle (*id.* at ¶ 8); Chrysler Group dealerships are free to use those third-party parts for non-warranty repairs (*id.* at ¶ 9); Chrysler Group has no records from which a definitive determination can be made as to which parts were used as replacement parts (*id.* at ¶¶ 9-10); window regulators are wear items and thus can simply wear out even in the absence of a defect (*id.* at ¶ 6 ); power windows in Jeep Liberty vehicles are comprised of many different components each of which can potentially "go bad" (*id.* at ¶¶ 12-14, 17); and a number of different things can cause an electric window to fail such as owner-installed modifications, improper installation of replacement window components, build variations in a vehicle's door sheet metal, window guides, or window glass, the presence of foreign objects, and vehicle accidents, collisions or misuse/abuse (*id.* at ¶¶ 15-21).

Furthermore, it is obvious that an inspection of Allen's vehicle would have been the only way to determine what its true trade-in value was, and whether, in

reality, any purportedly non-functioning window component affected the value she ultimately received in trade.

### III. ARGUMENT

**A. The Governing Law On Spoliation Of Evidence.**

As this District has noted, "[l]itigants have an obligation to preserve evidence from the moment that litigation is reasonably anticipated." *Montoya v. Orange County Sheriff's Dept.*, 2013 WL 6705992, *7 (C.D.Cal. 2013); *see also Arrowood Indemnity Co. v. Bel Air Mart*, 2014 WL 841314, *7 (E.D.Cal. 2014) (noting that the duty to preserve evidence attaches when a party "has some notice that the evidence was potentially relevant to the litigation").[1] When a party has failed to fulfill their duty of preservation, this Court has the inherent power to sanction that party for spoliation of evidence. *See, e.g., Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363, 368 (9th Cir. 1992); *Net-Com Services, Inc. v. Eupen Cable USA, Inc.*, 2013 WL 4007785, *3 (C.D.Cal. 2013).

"Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted); *see also Montoya*, 2013 WL 6705992 at *4 (same). A party seeking sanctions for spoliation of evidence must demonstrate that: (1) the alleged spoliator had control of the evidence and an obligation to preserve it; (2) the

---

[1] Ninth Circuit law is clear that, in a diversity case, federal law applies to a motion for spoliation of evidence. *See, e.g., Glover v. BIC Corp.*, 6 F.3d 1318, 1329-30 (9th Cir. 1993) (indicating propriety of federal court's ruling on imposition of sanctions for spoliation of evidence should be evaluated under its "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence"); *Painter v. Atwood*, 2014 WL 1089694, *7 fn.8 (D.Nev. 2014) (noting that under Ninth Circuit law "a federal court applies federal law when addressing issue of spoliation of evidence"); *Knight v. Deere & Co.*, 2010 WL 1948311, *3 (E.D.Cal. 2010) (finding, in diversity case, that "[w]hen a federal court exercises its inherent power to sanction a party for failure to preserve evidence, federal law controls the inquiry" (citations omitted)); *see also In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837-39 (9th Cir. 2001) (holding that "federal sanction law," not state sanction law, applies in a federal court).

4

CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

loss/destruction of the evidence was done with a "culpable state of mind"; and (3) the lost evidence was "relevant" to the claims or defenses at issue. *See, e.g., Montoya*, 2013 WL 6705992 at *7. Generally, once a court determines that spoliation has occurred, it considers three factors in determining which sanction is appropriate: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Net-Com Services*, 2013 WL 4007785 at *3.

**B.     The Elements Of Spoliation Are Satisfied.**

  ***1.     Allen Had Control Of, And An Obligation To Preserve, The Evidence.***

There can be no earnest dispute about the fact that Allen had control of her vehicle and the allegedly defective component parts that underlie the claims she is making in this case, and that she had an obligation to preserve that evidence. At all relevant times, including at the time when she made her decision to sue Chrysler Group and her decision to sell/trade her vehicle, Allen was the owner and sole possessor of her vehicle and of the allegedly defective component parts installed in it. *See* § II.A, *supra*. There is nothing to suggest that Allen had anything other than possession of, and complete control over, this vital evidence. Furthermore, Allen has outright admitted that at the time she disposed of the most vital evidence in this case (the allegedly defective products she purchased), she had already decided to sue Chrysler Group and had contacted counsel for the purposes of doing so. *See* § II.A, *supra*. Because she admits that she already had formed an actual intent to file litigation, it is beyond dispute that Allen's "obligation to preserve evidence" existed at the time that she disposed of the evidence at issue. *See, e.g., Montoya*, 2013 WL 6705992 at *7; *Arrowood*, 2014 WL 841314 at *7.

### 2. Allen Had A "Culpable State Of Mind".

The "culpable state of mind" standard is met where it is clear that the loss of the evidence resulted from the spoliator's purposeful intent to dispose of it, regardless of her motive in doing so and even if the evidence was lost due only to negligence. *See, e.g., Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (holding that destruction of files for sole purpose of protecting personal privacy, and not for purposes of depriving opponent of evidence, constituted "bad faith" spoliation where party knew that they were "potentially relevant" to litigation); *Unigard Security*, 982 F.2d 363 at 368-69 (finding standard for spoliation sanctions was met where party intentionally disposed of evidence even though such disposal occurred when party believed it had no legal claim); *Montoya*, 2013 WL 6705992 at *9 ("[T]he culpable state of mind includes negligence"). In other words, it is irrelevant whether a party spoliates evidence with the intent to avoid its use in litigation; all that matters is that she had the intent to dispose of it. *Sanchez v. Rodriguez*, 2014 WL 1056327, *2 (C.D.Cal. 2014) ("'[W]illfulness, bad faith, or fault' does not require wrongful intent; rather, disobedient conduct not shown to be outside the party's control is by itself sufficient to establish willfulness, bad faith, or fault").

Allen admits that she disposed of her Jeep vehicle by trade-in at a time after she had contacted counsel for the purposes of suing Chrysler Group over its power windows and the allegedly failed replacement window components installed therein. *See* § II.A, *supra*. This admitted-to voluntary act demonstrates that she had the requisite "culpable state of mind."

### 3. The Vehicle & Its Components Were "Relevant".

Allen's vehicle, and its replacement window components, are the exact subject matter she had a present intent to sue on when she chose to engage in spoliation. No party – plaintiff or defendant – could honestly believe that the very product that lies at the heart of a lawsuit which is based on an alleged "defect" in that product is not

relevant evidence that should, and must, be preserved. And, no one could earnestly believe that depriving a party of the opportunity to do a first-hand inspection of such critical evidence would cause no harm. This is particularly true where, as here, a party intends to sue for damages allegedly arising out of a vehicle's lost trade-in value. The relevance of the spoliated evidence could not be more clear.

Indeed, in the motor vehicle context, courts, including those within the Ninth Circuit, routinely find that the product alleged to be defective is the most critical evidence in the case. *See, e.g., Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005); *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001); *Azad v. Goodyear Tire & Rubber Co.*, 2013 WL 593913 (D.Nev. 2013); *Erlandson v. Ford Motor Co.*, 2009 WL 3672898 (D.Or. 2009); *Quaglietta v. Nissan Motor Co., Ltd.*, 2000 WL 1306791 (D.N.J. 2000).

For example, in *Erlandson* the court granted a terminating sanction for spoliation of evidence when the plaintiffs traded in their allegedly defective Ford Windstar without notifying the defendant vehicle manufacturer. 2009 WL 3672898 at **1-7. The plaintiffs in *Erlandson* made a demand on the defendant asserting that their Windstar had a transmission defect, but subsequently, before filing an actual lawsuit, traded it in on a new vehicle purchase. *Id.* at *2. The court found that because the plaintiffs were basing their claims "on an alleged defect" they "knew or should have known the Windstar would be material evidence in any action." *Id.* at *4. In finding sanctions were warranted, the court rejected the plaintiffs' argument that the Windstar was "not relevant evidence" because their claims were based on a "defect" that was present in all Ford Windstar vehicles as indicated by a Technical Service Bulletin issued by the defendant. *Id.* at *4.

Likewise, the district court in *Azad* found that a plaintiff's failure to preserve the allegedly defective tires on his vehicle warranted the most drastic sanction of dismissal. 2013 WL 593913 at **4-5. In *Azad*, the plaintiff filed suit against a tire

manufacturer alleging that a defect in the tires on his vehicle resulted in a blow-out thereby causing a vehicle accident. *Id.* at *1. Within days of the accident, the plaintiff signed title of the vehicle over to a towing company which scrapped the vehicle, and its allegedly defective tires along with it. *Id.* In finding sanctions to be appropriate, the court noted that the plaintiff "voluntarily sold the vehicle and tires to a third party, thereby ignoring his duty to preserve that evidence." *Id.* at *4.

There was a similar outcome in *Flury*, where the plaintiff alleged that there was a defect in the airbag system in his vehicle which resulted in its failure to deploy in an accident. 427 F.3d at 942. Prior to filing suit, the plaintiff allowed his insurer to take possession of the vehicle and sell it for salvage. *Id.* The court found that such spoliation warranted a sanction of dismissal, indicating that "[t]he vehicle was, in effect, the most crucial and reliable evidence available to the parties …." *Id.* at 943. After first noting that the defendant had actually requested an inspection of the vehicle prior to the lawsuit being filed, the court stated: "Even absent defendant's unambiguous request for its location, plaintiff should have known that the vehicle, which was the very subject of his lawsuit, needed to be preserved and examined as evidence central to his case." *Id.* at 945.

The court's findings in *Silvestri* follow suit. In that case, the plaintiff was injured when he crashed a vehicle that he had borrowed. 271 F.3d at 586. The plaintiff filed a lawsuit claiming there was a defect in the vehicle which resulted in the airbag not deploying. *Id.* The plaintiff hired experts and had them inspect the vehicle, but gave no notice to the defendant vehicle manufacturer about the accident and his intent to file a lawsuit. *Id.* The vehicle was repaired prior to the time that the lawsuit was filed, and the defendant claimed it was prejudiced due to its inability to inspect the vehicle in its "accident" condition. *Id.* at 587-88. The court found that dismissal was an appropriate sanction because the plaintiff's failure to preserve the allegedly defective vehicle underlying his claims denied the defendant vehicle

8

CHRYSLER GROUP LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

manufacturer "access to the only evidence from which it could develop its defenses adequately." *Id.* at 594.

As these cases make clear, in a case based on an alleged product defect, including those involving alleged defects in motor vehicles and their component parts, the most highly relevant evidence is the allegedly defective product itself. And, here, it is abundantly clear that Allen's vehicle and its allegedly defective replacement components are relevant to the claims and defenses at issue. Determinations on the critical issues of what product Allen actually purchased, whether that product failed, what caused a failure, as well as other tangential issues, can be determined only by having Allen's vehicle and window components available and providing an opportunity for an inspection. *See* Radyco Decl. Thus, when she disposed of her vehicle and its window components, Allen spoliated highly "relevant" evidence.[2]

### C. An Adverse Inference And A Finding Of No Class Representation Are Appropriate Sanctions.

As demonstrated, spoliation has occurred. This Court has broad discretion in fashioning an appropriate sanction for this spoliation, ranging from financial sanctions to an outright adverse judgment against the spoliating party. *See, e.g., Montoya*, 2013 WL 6705992 at *4 (citations omitted). In determining the type and severity of the sanction to be imposed, this Court should consider: Allen's degree of fault; the prejudice that has resulted to Chrysler Group; and what is the minimal sanction necessary to ensure that Chrysler Group does not suffer substantial unfairness. *See Net-Com Services*, 2013 WL 4007785 at *3.

---

[2] Notably, this District has found that "spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Montoya*, 2013 WL 6705992 at *11 (citation omitted).

9

### 1. The Degree Of Fault

The fault here could not be more clear. Allen made a conscious and voluntary decision to dispose of her vehicle and the allegedly defective window components contained therein at a time when she knew she would be filing a lawsuit. *See* § II.A, *supra*. And, she did so at a time when her vehicle was fully capable of continuing to provide the transportation that it had been providing to her for years; indeed, Allen believed that her vehicle was in such great shape that she was entitled to its full Kelley Blue Book trade value. *Id.* And, significantly, Allen chose to dispose of this highly valuable evidence without providing any notice to Chrysler Group that she intended to do so. The degree of fault is acute.

### 2. The Prejudice.

This District has found that once spoliation is proven, "the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation." *Montoya*, 2013 WL 6705992 at *11 (citation omitted). Regardless, the evidence submitted by Chrysler Group demonstrates significant prejudice resulted from the spoliation.

It is beyond dispute that electric window components are wear items,[3] and the intervals at which replacements will be needed can be affected by a multitude of factors. *See* Radyco Decl. These factors include, among many other things: owner-installed modifications; improper installation of replacement window components; build variations in a vehicle's door sheet metal, window guides, or window glass; the presence of foreign objects; and vehicle accidents, collisions or misuse/abuse. *Id.* at ¶¶ 15-21. Chrysler Group is prejudiced by Allen's spoliation of evidence because it now has been deprived of any opportunity to inspect her vehicle and thereby determine a host of fundamental issues.

---

[3] Plaintiffs' own expert admitted at deposition that electric window components are wear items.

1    For example, Allen's spoliation of evidence has deprived Chrysler Group of
2 any opportunity to determine first-hand: whether she even purchased a product
3 which Chrysler Group actually sold/distributed; whether there was actually a failure
4 of the window component at issue; if there was a failure, what its cause was (*e.g.*, the
5 "lift plate" component at issue, hidden damage from one of Allen's vehicle accidents,
6 etc.); and whether the trade value of Allen's vehicle was actually impacted by some
7 non-functioning window component (and, if so, which one). A vehicle inspection
8 would be the best, if not the only, means for Chrysler Group to contradict the self-
9 serving proclamations Allen intends to use to prove her claim.

10    By spoliating her vehicle and its allegedly defective components, and
11 depriving Chrysler Group of any meaningful inspection, Allen's actions not only
12 impact Chrysler Group's ability to defend against the ultimate liability question in
13 this case, but its ability to oppose class certification as well. A vehicle inspection
14 may have shown that Allen was subject to unique defenses (*e.g.*, accident damage,
15 misuse/abuse of a vehicle), and/or that repairs were needed because of something
16 other than a defect. *See* Radyco Decl. An inspection could also have shown that her
17 vehicle was subject to different uses, conditions, or treatment than what would be
18 considered the norm. *Id.* A vehicle inspection may also have shown that the
19 accidents Allen experienced may have led to the failure of the window regulator
20 components in her Jeep vehicle. *Id.* That such evidence could impact liability, as
21 well as the typicality and predominance requisites of class certification, cannot
22 earnestly be disputed. *See, e.g., Marcus v. BMW of North America, LLC*, 687 F.3d
23 583, 603-04 (3d Cir. 2012) (in case alleging defect in tires resulting in flats, court
24 held that district court erred with respect to finding of predominance because
25 plaintiffs' argument that damages could be measured by cost of replacement tires
26 ignored fact that tires can "go flat" for reasons completely unrelated to a defect, and

thus factual causation issues were "pivotal").[4] Through her spoliation, Allen has deprived Chrysler Group of the opportunity to develop critical, first-hand evidence. The prejudice is clear.

### 3. The Requested Sanctions

Chrysler Group requests sanctions in the form of an adverse inference instruction, and a finding that Allen is not a proper class representative. An adverse inference instruction has been found to be appropriate where the lost or destroyed evidence is determined to be relevant and the party seeking the instruction has been prejudiced thereby. *See, e.g., Cyntegra, Inc. v. IDEXX Laboratories, Inc.*, 322 Fed.Appx. 569, 572, 2009 WL 1041105, *1 (9th Cir. 2009). As demonstrated, here the evidence clearly establishes that the vehicle and allegedly defective components which Allen disposed of were highly relevant pieces of evidence (perhaps the most critical in this case), and Chrysler Group has been prejudiced by their destruction. *See* § III.B, *supra*.

Chrysler Group further requests sanctions in the form of a finding that Allen is not a proper class representative. As demonstrated, the spoliation of evidence in this case has prejudiced Chrysler Group with respect to challenging class certification. Chrysler Group has been deprived of any opportunity to show by direct evidence that the facts underlying Allen's claim are not typical of others in the class and raise questions and issues affecting the predominance inquiry. The only way to cure this

---

[4]*Marcus* illustrates the vital importance a product inspection can play at the class certification stage. In detailing why causation issues defeated predominance, the *Marcus* court pointed to findings made by each party's competing expert. 687 F.3d at 605-06. The court noted that both those experts admitted that two of the tire replacements the named plaintiff paid for were caused by events that would have required the replacement of even a non-defective tire. *Id.* The court concluded that this was proof the alleged tire defects "did not cause the damage he suffered" and demonstrated that predominance was lacking because "an individualized inquiry into why any particular consumer's [tires] went flat and had to be replaced" would be required. *Id.* Here if Chrysler Group had been allowed an inspection of Allen's vehicle it may have been able to demonstrate that the window repairs/replacements done to it were caused by events that would necessitate the same repairs in *any* vehicle, and not by a defect.

prejudice is to find that Allen cannot represent the class. Such a sanction is far less severe than an outright dismissal of her claims as she will remain free to seek a remedy for herself. Furthermore, case law supports a finding of lack of adequacy to represent the class based on Allen's spoliation of evidence. The act of spoliation subjects Allen to unique defenses, thereby rendering her an inadequate class representative. *See, e.g., Falcon v. Philips Electronics North American Corp.*, 304 Fed.Appx. 896, 897, 2008 WL 4820527, *1 (2d Cir. 2008) (affirming denial of class certification based on finding that plaintiff was not adequate representative because disposal of allegedly defective television put plaintiff in position of, among other things, having to "defend[] against a charge of spoliation of evidence"); *Akaosugi v. Benihana National Corp.*, 282 F.R.D. 241, 257 (N.D.Cal. 2012) (finding plaintiff inadequate representative of class despite having staved off sanctions for spoliation because acts giving rise to spoliation motion were "unique" to plaintiff and could effect ability to protect class).

## IV.   CONCLUSION

For the reasons set forth herein, Chrysler Group respectfully requests that this Court grant its motion seeking sanctions for spoliation of evidence, order that an adverse inference instruction be given at the trial on the merits, and find that, because she engaged in spoliation, Allen is not a proper class representative.

Dated: July 10, 2014                **SEDGWICK LLP**

By: <u>s/ Amand Mines</u>
Amand Mines
*Attorneys for Defendant*
*Chrysler Group LLC*