FOLEY BEZEK BEHLE & CURTIS, LLP
Robert A. Curtis, Cal. State Bar No. 203870
rcurtis@foleybezek.com
15 West Carrillo Street
Santa Barbara, California  93101
Telephone:  (805) 962-9495
Facsimile:  (805) 962-0722

ARIAS OZZELLO & GIGNAC LLP
J. Paul Gignac, Cal. State Bar No. 125676
j.paul@aogllp.com
115 S. La Cumbre Lane, Suite 300
Santa Barbara, California 93105
Telephone: (805) 683-7400
Facsimile: (805) 683-7401

GOLDENBERG SCHNEIDER, L.P.A.
Jeffrey S. Goldenberg (Admitted *pro hac vice*)
jgoldenberg@gs-legal.com
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202-3604
Telephone: (513) 345-8297
Facsimile: (513) 345-8294

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| STEVE DOYLE, *et al.*<br><br>        Plaintiffs,<br><br>v.<br><br>CHRYSLER GROUP LLC,<br><br>        Defendant. | Case No.  SACV13-620 JVS(ANX)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO CHRYSLER GROUP LLC'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>Date:  August 25, 2014<br><br>Time: 1:30 p.m.<br><br>Courtroom: 10C<br><br>Honorable James V. Selna |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………… ii

I.    INTRODUCTION…………………………………………..... 1

II.   FACTUAL BACKGROUND……………………………………2

   A. Plaintiff Allen's Experiences With Regulator Failures…………… 3

   B. Plaintiff Allen's Investigation and Subsequent Vehicle Trade In…. 4

III.  ARGUMENT………………………………………………..6

   A. The Governing Law on Spoliation of Evidence………………… 6

   B. Chrysler Has Failed To Establish Spoliation……………………… 8

     1. Plaintiff Allen had no duty to preserve her vehicle because litigation was not "probable"………………………………… 8

     2. Chrysler has failed to establish that Plaintiff Allen had a culpable state of mind………………………………………….. 11

     3. Chrysler is not substantially prejudiced by the unavailability of the vehicle………………………………………………... 14

   C. Adverse Inference Instruction and Adverse Class Certification Ruling Are Inappropriate Sanctions……………………............ 19

IV.  CONCLUSION……………………………………………..23

# TABLE OF AUTHORITIES

## Cases

*Aguirre v. Home Depot U.S.A., Inc.,* 1:10-CV-00311-LJO,
    2012 WL 3639074 at *2 (E.D. Cal. Aug. 23, 2012)...………………………22

*Akaosugi v. Benihana Nat. Corp.,* 282 F.R.D. 241,257 (N.D. Cal. 2012)………...21

*Akiona v. United States,* 938 F.2d 158, 161 (9th Cir. 1991)………………………14

*Apple v. Samsung Electronics, Co., Ltd.,* 881 F.Supp.2d 1132, 1135
    (N.D. Cal. 2012)………………………………………………...7,12,17,18,20,21

*Ashton v. Knight Transp., Inc.,* 772 F.Supp.2d 772, 799-800
    (N.D. Texas 2011) …………………………………………………..7,12

*Azad v. Goodyear Tire & Rubber,* No. 2:11-cv-00290,
    2013 WL 593913, at *1-3 (D. Nev. Feb. 14, 2013)……………………………14

*Beil v. Lakewood Eng'g and Mfg. Co.,* 15 F.3d 546, 553 (6th Cir. 1994)…………16

*Bel Air Mart v. Arnold Cleaners, Inc.,* No. 2:10-cv-02392,
    2014 WL 763185, at 5-6 (C.D. Cal. Feb. 21, 2014)……………………………20

*Bowman v. American Med. Sys., Inc.,* No. CIV. A. 96-7871,
    1998 WL 721079, at *4 (E.D. Pa. Oct. 9, 1998) ………………………………13

*Cartagena v. Suzuki Motor Co., Ltd.,* 7 F.Supp.2d 109, 113 (D.P.R. 1998)………19

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S. Ct. 2123,
    115 L.Ed.2d 27 (1991)……………………………………………………..6

*Collazo-Santiago v. Toyota Motor Corp.,* 149 F.3d 23, 29 (1st Cir. 1998)……...15,18

*Consol. Aluminum Corp. v. Alcoa, Inc.,* 244 F.R.D. 335,
    340 (M.D. La. 2006)…………………………………………………...20

*Davis v. Ford Motor Co.,* 375 F.Supp.2d 518, 521, 523 (S.D. Miss. 2005)…….8,20

*Drooger v. Carlisle Tire & Wheel Co.,* No. 1:05-cv-73,
    2006 WL 1008719, at *5 (W.D. Mich. Apr. 18, 2006)……………………11

*Durham v. County of Maui,* No. 08-00342, 2010 WL 520699,
    at *4-5 (D. Haw. Feb. 10, 2010)……………………………………..11,14,20

*Erlandson v. Ford Motor Co.,* No. 08-cv-1137, 2009 WL 3672898,
    at *1-4 (D. Or. Oct. 30, 2009) ……………………………….………13

*Falcon v. Philips Electronics N. Am. Corp.,* 304 F. App'x 896,
    897 (2d Cir. 2008)………………………………………………………21

*Fitting v. Dell, Inc.,* No. CVA06-23-S-LMB, 2008 WL 2152233,
    at *5-6 (D. Idaho May 21, 2008)……………………………….........11

*Flury v. Daimler Chrysler Corp.,* 427 F.3d 939, 941-43 (11th Cir. 2005)………..13

*FTC v. Lights of America,* No. SACV 10-1333 JVS (MLG),
    2012 WL 695008, at *2-3 (C.D. Cal. Jan. 20, 2012)…………………1,7,8,9

*Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001)……………6

*Goodman v. Praxair Servs., Inc.,* 632 F.Supp.2d 494, 523 (D. Md. 2009)……….21

*Goodwin v. Nissan North America, Inc.,* No. 3:11-cv-00306,
    2012 WL 2237110, at *5 (W.D. Tenn. June 15, 2012)……………………16

*Green v. Ford Motor Co.,* No. 1:08-cv-0163,
    2008 WL 5070489, at *4 (S.D. Ind. Nov. 25, 2008)………………………15

*Huberman v. Tag-It Pac. Inc.,* 314 F. App'x 59, 62 (9th Cir. 2009)…………...22

*In re Napster, Inc. Copyright Litigation,* 462 F.Supp.2d 1060,
    1066, 1068 (N.D. Cal. 2006)…………………………………………8,12

*In Re Rail Freight Fuel Surcharge Antitrust Litig.,* 287 F.R.D. 1, 33
    (D.D.C. 2012)…………………………………………………………23

*In Re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869,*
    725 F.3d 244 (D.C. Cir. 2013)…………………………………………..23

- iii -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.,*
    2:08-MD-1919 MJP, 2010 WL 4272567, at *9
    (W.D. Wash. Oct. 12, 2010)……………………………………………………22

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC,* 13-CV-01806-JCS,
    2014 WL 1338480, at *7 (N.D. Cal. Apr. 1, 2014)………………………..22

*Keithley v. Homestore.com, Inc.,* No. C-03-04447,
    2008 WL 4830752, at *10 (N.D. Cal. Nov. 6, 2008)……………………..20

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Excelsior Trading
    Corp.,* No. 07-CV-3224, 2008 WL 1771917, at *3
    (E.D. N.Y. Apr. 15, 2008)……………………………………………………12

*Leon v. IDX Sys. Corp.,* 464 F.3d 951, 959 (9th Cir. 2006)…………………15,17

*Lewis v. First Am. Title Ins. Co.,* 265 F.R.D. 536, 557 (D. Idaho 2010)…...........22

*Lewis v. Ryan,* 261 F.R.D. 513, 521 (S.D. Cal. 2009)………………………..7

*Medina v. Rose Art Indus., Inc.,* No. Civ.A. 02-CV-1864,
    2003 WL 1877563, at *2 (E.D. Pa. Feb. 28, 2003)………………………..13

*Meijer, Inc. v. Warner Chilcott Holdings Co. III,* 246 F.R.D. 293,
    302 (D. D.C. 2007)……………………………………………………22

*Montoya v. Orange Cty. Sheriff's Dept.,* No. SACV 11-1922,
    2013 WL 6705992, at *8 (C.D. Cal. Dec. 18, 2013)…………………9,12,13

*North v. Ford Motor Co.,* 505 F.Supp.2d 1113, 1117 (D. Utah 2007)……………17

*Pacificorp v. Gas Transmission Northwest Corp.,* No. 3:10-cv-00099,
    2014 WL 186903, at *4-5 (D. Or. Jan. 14, 2014)…………………………14

*Pacificorp v. Northwest Pipeline GP.,* 879 F.Supp.2d 1171,
    1188, 1190-91 (D. Or. 2012)……..………………………………………8,18

*Parkinson v. Hyundai Motor America,* 258 F.R.D. 580, 591 (C.D. Cal. 2008)…..23

1
2
*PersonalWeb Tech, LLC v. Google Inc.,* No. C13-01317,
  2014 WL 580290, at *3 (N.D. Cal. Feb. 13, 2014)………………………..10

3
4
*Pirrello v. Gateway Marina,* No. CV 2008-1798, 2011 WL 4592689,
  at *5 (E.D. N.Y. Sept. 30, 2011)……………………………………………..10

5
6
*Progressive Cas. Ins. Co. v. Winnebago Indus., Inc.,* No. 08-343,
  2010 WL 6371906, at *6 (W.D. Pa. Nov. 18, 2010)……………...............21

7
8
*Quaglietta v. Nissan Motor Co., Ltd.,* No. Civ. A. 97-5965,
  2000 WL 1306791, at *3 (D. N.J. Aug. 16, 2000)………………………..16

9
10
*Realnetworks, Inc. v. DVD Copy Control Assoc., Inc.,* 264 F.R.D. 517,
  527 (N.D. Cal. 2009)………………………………………………………….8

11
*Reinsdorf v. Sketchers U.S.A., Inc.,* 296 F.R.D. 604, 625 (C.D. Cal. 2013)..6,7,12,15

12
13
*Rimkus Consulting Group, Inc. v. Cammarata,* 688 F.Supp.2d 598,
  616, 619 (S.D. Tex. 2010)…………………………………………………15,20

14
15
*Sampson v. City of Cambridge, Md.,* 251 F.R.D. 172, 179 (D. Md. 2008)……….20

16
*Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79-80 (3d Cir. 1994)……….15

17
*Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 586-92 (4th Cir. 2001)……….8,13,16

18
19
*Simon v. Mercedes Benz N.A.,* CIV.A. 95-2705,
  1996 WL 103796, at *5 (E.D. Pa. 1996)……………………………………18

20
21
*Slep-Tone Entertainment Corp. v. Granito,* No. CV 12-298,
  2014 WL 65297, at *4 (D. Ariz. Jan. 8, 2014)………………………………8

22
23
*Surowiec v. Capital Title Agency, Inc.,* 790 F.Supp.2d 997,
  1006 (D. Ariz. 2011)………………………………………………………..13

24
25
*Talavera v. Ford Motor Co.,* 932 F.Supp.2d 252, 256 (D. P.R. 2013)……..15,16,17

26
27
*Thompson v. U.S. Dep't of Housing & Urban Dev.,* 219 F.R.D. 93,
  100-01 (D. Md. 2003)………………………………………………………20

28

*Tripp v. Ford Motor Co.*, No. CIV. A. 95-2661, 1996 WL 377122,
at *3-4 (E.D. Pa. July 3, 1996)……………………………………………...16

*Urrutia v. Ekdahl,* No. CV 03-1990, 2005 WL 5976564, at *3
(D. Ariz. July 15, 2006)………………………………………...........21

*U.S. Legal Support, Inc. v. Hofioni,* 2:13-cv-1770 LKK AC,
2014 WL 172336, at 4 (E.D. Cal. Jan. 15, 2014)…………………………17

*Victor Stanley v. Creative Pipe, Inc.,* 269 F.R.D. 497, 531 (D. Md. 2010)……...15

*Vieste, LLC v. Hill Redwood Dev.,* C-09-04024 JSW DMR,
2011 WL 2198257, at *2 (N.D. Cal. June 6, 2011)………………………..22

*West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)………..7

*Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y. 2003)………6,20

- vi -

1    **I.      INTRODUCTION**

2            Chrysler has moved for sanctions against Plaintiff Robin Allen for trading in

3    her vehicle towards the purchase of a more fuel efficient model prior to filing suit.

4    Chrysler seeks an adverse inference jury instruction, and a finding that Ms. Allen is

5    not a proper class representative.  Because Chrysler's motion is founded upon two

6    fundamental errors, it should be denied.

7            The first error is factual.  According to Chrysler's memorandum, "Allen has

8    outright admitted that at the time she disposed of the most vital evidence in this case

9    … she ***had already decided to sue*** Chrysler Group and contacted counsel for

10   purposes of doing so."  Def.'s Mem. [Doc. 114] at 5 (emphasis added).  This is

11   simply untrue.  Contrary to Chrysler's bald assertion, Ms. Allen had not yet decided

12   to sue Chrysler when she traded in the vehicle towards a more fuel efficient model.

13   In fact, Ms. Allen had not yet even spoken with an attorney regarding whether she

14   potentially had a viable claim against Chrysler at that time.  The only evidence cited

15   by Chrysler in support of its assertion is deposition testimony stating that Ms. Allen

16   had previously "thought about" bringing a lawsuit, searched online for information

17   about a possible recall for the defective regulators, came across the website of a law

18   firm investigating the matter, and filled out an online form requesting further

19   information.  However, undisputed evidence shows that by the time Ms. Allen

20   actually spoke to and consulted with an attorney about her legal options, she had

21   already traded in the vehicle for a more fuel efficient vehicle.

22           Chrysler's second error is legal.  In the Ninth Circuit, the duty to preserve

23   evidence only "attaches when future litigation is ***'probable,'*** which means 'more

24   than a possibility.'"  *FTC v. Lights of America*, No. SACV 10-1333 JVS (MLG),

25   2012 WL 695008, at *3 (C.D. Cal. Jan 20, 2012) (emphasis added).  Merely because

26   Ms. Allen had suspected that Chrysler had sold her defective products and

27   investigated the matter on the internet does not make litigation "probable."  *See id.*

28

1   (FTC's issuance of civil demand and commencement of full-phase investigation
2   does not trigger duty to preserve because many investigations conclude without
3   litigation).  Nor was a duty to preserve triggered by Ms. Allen's submission of
4   contact information to a law firm investigating Chrysler's regulator failures.
5   Substantially more is needed to establish that litigation is "probable."

6          Here, the evidence shows that at the time Ms. Allen traded in her vehicle, she
7   had not yet (1) consulted with an attorney, (2) obtained a professional opinion
8   regarding whether she had a viable claim against Chrysler, (3) or located an attorney
9   willing to accept the case on a contingency basis or made other arrangements to
10  finance a lawsuit against Chrysler.  Litigation was simply not "probable" at that
11  juncture.  Accordingly, Chrysler's motion for sanctions should be denied.

12  **II.     FACTUAL BACKGROUND**

13         At issue in this case is the Regulator Defect,[1] which is defined by the
14  pleadings as Chrysler's use of a plastic window bracket that is insufficiently strong
15  for the application and therefore prone to mechanical failure.   Although the
16  Regulator Defect is present in both OEM regulators and Replacement Regulators,[2]
17  Plaintiff Allen only asserts claims from Replacement Regulators sold or installed
18  after June 10, 2009 through the relevant class period.[3]   Plaintiff Allen seeks to
19  represent a class of Maryland owners of 2002-2007 Jeep Liberty models who
20  purchased defective Replacement Regulators from Defendant's network of
21  authorized dealers, or otherwise had defective Replacement Regulators installed on
22  their Vehicles by Defendant's network of authorized dealers.

23

24  [1] Unless noted otherwise, all defined terms shall have the same meaning as in
25  the Memorandum in Support of Plaintiff's Motion for Class Certification [Doc.
    82] ("Class Memo").  *See id.* at 2-9 (describing Regulator Defect).
26  [2] *See* Declaration of Stephen E. Batzer, Ph.D., P.E. [Doc. 84] at 21 ("Batzer
27  Decl.")).
    [3] On June 10, 2009, Chrysler purchased substantially all of the assets of Chrysler
28  LLC, which had previously filed for Chapter 11 bankruptcy.

A.     **Plaintiff Allen's Experiences With Regulator Failures**

In the six years that Ms. Allen owned her 2006 Jeep Liberty Sport Utility 4D 4WD, Robin Allen experience multiple regulator failures. *See* Declaration of Robin Allen ("Allen Decl.") at ¶7.  More regulator failures likely would have occurred but for the fact that her father screwed the windows permanently shut after the last two Replacement Regulators failed in 2011 and 2012. *See* Exh. A to Sherwood Decl. ("Allen Dep.") at pp. 134-36, 140-144.  Ms. Allen testified that she could not afford to continue to spend hundreds of dollars on additional Replacement Regulators.  *Id*. at pp. 130, 134.

The first time Ms. Allen experienced a regulator failure was in October 2008, when the rear driver side window OEM regulator[4] failed and a Replacement Regulator was installed on October 18, 2008 under warranty by Heritage Cadillac, an authorized Chrysler dealer.  *Id*. at pp. 24-26, 115-17, 118-21.  When asked at deposition what was wrong with the window, Ms. Allen testified that the "little plastic piece broke." *Id*. at p. 119.

The next regulator failure took place in August 2009, when the rear passenger side window OEM regulator failed. *Id*. at pp. 26-28, 123-27.  When Ms. Allen took the vehicle back to Heritage for repairs and paid $422.02 to install a Replacement Regulator on her vehicle, it was her expectation that it would "fix" her window so "this wouldn't be an issue again." *Id*. at 26-30.  Ms. Allen returned to Heritage for a third time less than a month later, on September 12, 2009, when the newly installed Replacement Regulator for the rear passenger window began "having difficulties" and started "making a noise."  *Id*. at pp. 129-32.  To the best of Ms. Allen's knowledge, Heritage was able to remedy the problem by removing an

---

[4] Because Plaintiff Allen purchased her vehicle used, she does not know whether there had been any previous repairs on the window.  Ms. Allen has no reason to believe that the regulator had been previously replaced.  Accordingly, this memorandum assumes that the regulator was an OEM regulator.

1   unknown object that fell in the door.  *Id.* at pp. 129-132.   The Replacement

2   Regulator did not need to be replaced. *Id.* at pp. 129-32.

3          The third time a window failed occurred in late 2011, when the rear driver

4   side Replacement Regulator (originally installed on October 18, 2008) failed and the

5   window fell into the door.  *Id.* at pp. 132-35.  Because Ms. Allen could not afford to

6   spend hundreds of dollars for another Replacement Regulator, she took her vehicle

7   to her father, who took off the door panel, found that the plastic clip had broken, and

8   screwed a piece of wood into the door to permanently fix the window in its up

9   position.  *Id.* at pp. 134-35.  Ms. Allen testified that she did not keep the broken

10  plastic clip, but rather threw it away.  *Id.* at pp. 140-41.

11         Lastly, in late 2012, the Replacement Regulator for the rear passenger side

12  window (originally installed on August 19, 2009) failed.  *Id.* at pp. 142-44. Ms.

13  Allen, again, took the vehicle to her father, who determined "it was the exact same

14  thing," and screwed wood into the door to keep the window permanently in the up

15  position.  *Id.* at p. 142.  Ms. Allen testified that like the previous one, the little

16  broken plastic piece was not saved, but rather thrown out.  *Id.* at p. 144.

17  **B.     Plaintiff Allen's Investigation and Subsequent Vehicle Trade In**

18         Ms. Allen testified at deposition that after she experienced multiple regulator

19  failures, she conducted searches on the internet "to see if there was any information

20  possibly about a recall." Allen Dep. at p. 41.  *See also* Allen Decl. at ¶7.  During one

21  such search, Ms. Allen came across a website stating "something about if you are

22  experiencing window failure in a Jeep Liberty, then look at this website...." Allen

23  Dep. at p. 42.  The website contained a contact form and Ms. Allen submitted her

24  contact information.  Allen Dep. at p. 42; Allen Decl. at ¶9.  Ms. Allen did not

25  remember precisely when she submitted her information, but estimated that this took

26  place "sometime between late 2012 and 2013."  Allen Dep. at pp. 42, 94-95; Allen

27  Decl. at ¶8.  Ms. Allen testified that sometime thereafter – Ms. Allen could not recall

28

precisely when, but testified it was at least a month later, and possibly as much as six months later – an attorney named "Mr. Shah"[5] responded to her inquiry.  Allen Dep. at pp. 42, 94-97; Allen Decl. at ¶¶13-14.

At deposition, Ms. Allen was shown the internet address for a page from the undersigned's law firm website, "www.gs-legal.com/viewinv/Jeep-Liberty-Window-Regulator-Investigation," and was asked if that was the website she visited.  Allen Dep. at p. 40-41.   Ms. Allen responded, "I believe so."  *Id.* at p. 41.  However, the website Ms. Allen actually visited was an investigatory web post hosted by the law firm, Shepherd, Finkelman, Miller & Shah ("SFM&S").  *See* Allen Decl. at ¶¶10-12; Shah Decl. at ¶5-6.   James C. Shah, a partner with SFM&S, subsequently responded to Ms. Allen's inquiry.  *See* Shah Decl. at ¶7; Allen Decl. at ¶14.

According to Mr. Shah, Ms. Allen submitted her contact information to SFM&S on or about July 18, 2013.  *See* Shah Decl. at ¶6.  *See also* Allen Decl. at ¶¶13.  However, SFM&S did not respond to Ms. Allen's inquiry until September 24, 2013, when Mr. Shah sent Ms. Allen a short introductory email.  *See* Shah Decl. at ¶7; Allen Decl. at ¶14.  Neither Mr. Shah nor any other attorney from SFM&S ever met with Ms. Allen, spoke with her over the phone, or otherwise provided Ms. Allen a professional legal opinion regarding the existence or viability of any potential claims she may have against Chrysler. *See* Shah Decl. at ¶¶7, 9; Allen Decl. at ¶¶14-15, 18-19.

On October 11, 2013, before the undersigned (or any other attorney affiliated with this case) spoke to her, Ms. Allen traded in her vehicle towards a new Subaru.  *See* Allen Decl. at ¶¶15-19; Allen Dep. at p. 154; Shah Decl. at ¶¶6-9; Declaration of Jeffrey S. Goldenberg ("Goldenberg Decl.") at ¶¶8-12.  At deposition, Ms. Allen

---

[5] Due to a typographical error, Ms. Allen's deposition transcript incorrectly identifies the attorney who first contacted Ms. Allen as "Mr. Shaub."  Actually, it was James C. Shah, Partner with the law firm Shepherd, Finkelman, Miller & Shah, LLP. See Declaration of James C. Shah ("Shah Decl.") at ¶¶6-7.

explained that her new job required her to drive a lot and so she decided to get a vehicle with better gas mileage (as well as functioning windows). *See* Allen Dep. at p. 154; Allen Decl. at ¶15. As the transaction paperwork was being drawn up, the dealership inspected Ms. Allen's vehicle, discovered that its rear windows were broken, and informed Ms. Allen that the dealership would not offer the full value for the vehicle as a result of the broken windows. Allen Dep. at pp. 155-59, 174-75, 180-83. Because Plaintiff knew what model vehicle she wanted to buy, the dealership was the only Subaru dealer nearby, and Valley Motors had the vehicle in stock, Ms. Allen accepted the offer and sold her vehicle for hundreds less than it was worth. *Id*. at pp. 180-83.

## III. ARGUMENT

### A. <u>The Governing Law on Spoliation of Evidence.</u>

Spoliation is "'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or reasonably foreseeable litigation.'" *Reinsdorf v. Sketchers U.S.A., Inc*., 296 F.R.D. 604, 625 (C.D. Cal. 2013) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). The authority to impose sanctions for spoliation arises from a court's inherent power to control the judicial process. *Id*. However, "[t]he exercise of a court's inherent powers must be applied with 'restraint and discretion,' and only to the degree necessary to redress the abuse." *Id*. (quoting *Chambers v. NASCO, Inc*., 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). The determination of an appropriate sanction for spoliation is confined to the discretion of the trial judge, and is assessed on a case-by-case basis. *Id*. (citing *Fujitsu Ltd. v. Fed. Express Corp*., 247 F.3d 423, 436 (2d Cir. 2001)). The party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim. *Id.* at 626.

"A trial court's discretion regarding the form of a spoliation sanction is broad, and can range from minor sanctions, such as the awarding of attorneys' fees,

- 6 -

to more serious sanctions, such as dismissal of claims or instructing the jury that it may draw an adverse inference." *Apple v. Samsung Electronics, Co., Ltd.*, 881 F.Supp.2d 1132, 1135 (N.D. Cal. 2012).   Notably, "[t]he bare fact that evidence has been altered of destroyed 'does not necessarily mean that the party has engaged in sanction worthy spoliation.'"   *Reinsdorf*, 296 F.R.D. at 626 (quoting *Ashton v. Knight Transp., Inc.*, 772 F.Supp.2d 772, 799-800 (N.D. Tex. 2011)).

Any sanction imposed "should be designed to (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).   To decide which specific spoliation sanction to impose, courts generally consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 888 F.Supp.2d 976, 992 (N.D. Cal. 2012) (internal quotes omitted).

Here, Chrysler seeks an adverse inference,[6] which is a sanction carried out as an instruction to the trier of fact that evidence made unavailable by a party was unfavorable to that party. *Lights of America, Inc.*, 2012 WL 695008, at * 2.   "In order for the Court to impose an adverse inference [the moving party] must establish that: '(1) the party having control over the evidence had an obligation to preserve it; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense.'" *Id.* (quoting *Lewis v. Ryan*, 261 F.R.D. 513, 521 (S.D. Cal. 2009)).

---

[6] Chrysler also seeks a finding that Ms. Allen is not an adequate class representative.  As discussed below, Chrysler provides no authority that such a ruling is an appropriate sanction for spoliation.

**B.   <u>Chrysler Has Failed To Establish Spoliation.</u>**

**1.   Plaintiff Allen had no duty to preserve her vehicle because litigation was not "probable."**

The duty to preserve evidence only arises when a party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.  *Lights of America, Inc.*, 2012 WL 695008, at *2.  However, a mere "general concern over litigation does not trigger a duty to preserve evidence." *Realnetworks, Inc. v. DVD Copy Control Assoc., Inc.*, 264 F.R.D. 517, 527 (N.D. Cal. 2009).   Instead, the duty to preserve evidence only attaches when the "party should know that the evidence may be relevant to litigation that is 'anticipated,' or 'reasonably foreseeable.'" *Pacificorp v. Northwest Pipeline GP*, 879 F.Supp. 2d 1171, 1188 (D. Or. 2012) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590-91 (4th Cir. 2001)).[7]   Stated another way, a party has no obligation to preserve evidence "until a ***potential claim [i]s identified*** or ***future litigation [i]s probable***." *Realnetworks, Inc.,* 264 F.R.D. at 527 (emphasis added). *See also Lights of America*, 2012 WL 695008, at *3 (same); *Slep-Tone Entertainment Corp. v. Granito*, No. CV 12-298, 2014 WL 65297, at *4 (D. Ariz. Jan 8, 2014) ("In the Ninth Circuit, litigation must be 'probable,' before the duty to preserve applies.").   This is necessarily a "'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" *Id.* (quoting *Pacificorp*, 879 F.Supp.2d  at 1188).

---

[7] The requirement is party-specific.  *See In re Napster, Inc.*, 462 F.Supp.2d 1060, 1068 (N.D. 2006) ("Although Hummer took actions … as early as May 2000 that indicated knowledge of the relevance of the documents to litigation, this does not necessarily suggest that Hummer should have anticipated litigation *against Hummer*.") (emphasis in original); *Davis v. Ford Motor Co.*, 375 F.Supp.2d 518, 521 (S.D. Miss. 2005) (no duty to preserve triggered by defendant's knowledge of other plaintiffs' lawsuits regarding defective vehicle).

- 8 -

1    Here, Chrysler has failed to establish that Ms. Allen – a layperson lacking the

2    legal skills necessary to identify a potential claim as well as the engineering skills

3    needed to identify the Regulator Defect, *see* Allen Decl. at ¶5 – was on notice that

4    litigation was *probable* when she traded her vehicle in towards a more fuel-efficient

5    vehicle.   The mere fact that Ms. Allen suspected that Chrysler had sold her

6    defective parts and searched for information about a potential recall is insufficient

7    to trigger a duty to preserve evidence.   For instance, in *Lights of America, Inc*., this

8    Court found that the Federal Trade Commission ("FTC") had not committed

9    spoliation by failing to implement a litigation hold after it opened a full-phase

10   investigation into the defendants' business practices and issued a Civil Investigative

11   Demand ("CID").   *Lights of America, Inc.*, 2012 WL 695008, at *2-3.   "Because

12   many FTC investigations involv[ing] the use of a CID conclude without litigation,"

13   this Court reasoned, "the issuance of a CID does not make litigation 'probable.'"

14   *Id*. at *3.   Because litigation was not probable, the FTC had no legal duty to

15   preserve evidence.   *Id*.   The same result is required here, where the target of the

16   spoliation claim is a single mother with no legal training.   *See also Montoya v.*

17   *Orange Cty. Sheriff's Dept.*, No SACV 11-1922, 2013 WL 6705992, at *8 (C.D.

18   Cal. Dec. 18, 2013) (duty to preserve not triggered by employer's investigation of

19   employee, employer's placement of employee on administrative leave, or

20   employer's receipt of letter from employee's lawyer, but rather by employee's

21   subsequent filing of worker's compensation claim alleging harassment).

22   In its moving papers, Chrysler baldly states that Ms. Allen "already had

23   formed an actual intent to file litigation" when she traded in her vehicle.   Def.'s

24   Mem. [Doc. 114] at 5.   Tellingly, however, Chrysler cites nothing in the record to

25   support the proposition.[8]   The only reference to the record relating in any way to the

26   _____

27   [8] Instead of citing to specific pages from Ms. Allen's testimony, Chrysler merely
     cites generally to the facts section of its brief.   *Id*. ("*See* § II.A, *supra*.").
28   However, nothing in the facts section of Chrysler's brief refers to evidence

- 9 -

timing of Ms. Allen's decision to file suit cites to the following exchange during Ms. Allen's deposition:

> Q: When did you first think about bringing a lawsuit over the windows in your Jeep Liberty?
>
> A: As I mentioned earlier, I was doing some research online to see if there was maybe a recall for the windows and came across the website.
>
> Q: And that was in late 2012?  I'm sorry, you have to say yes.
>
> A: It was sometime between late 2012 and 2013.  Sometime in that time frame.

Allen Dep. at pp. 94-95.

Obviously, the mere fact that Ms. Allen "thought about" bringing a lawsuit does not make one "probable."  *See, e.g., PersonalWeb Tech., LLC v. Google Inc.*, No. C13-01317, 2014 WL 580290, at *3 (N.D. Cal. Feb. 13, 2014) (finding no duty to preserve prior to plaintiff's purchase of patents, even though plaintiff "probably acquired the patents with an eye toward litigation," because the acquisition of the patents was a "condition precedent" to suit).  When Plaintiff Allen traded in her vehicle, she had not yet (1) decided to file suit against Chrysler, (2) spoke to a lawyer regarding her legal rights; (3) obtained the professional opinion of an attorney regarding whether she had a viable claim against Chrysler; or (4) located and hired an attorney to represent her on a contingency basis, or made any other arrangements to finance a lawsuit.  Allen Decl. at ¶¶14-19.  Because each of these steps is a "condition precedent" to suit, litigation was not "probable" when Ms. Allen traded in her vehicle.

A "potential spoliator need do only what is reasonable under the circumstances."  *Pirrello v. Gateway Marina*, No. CV 2008-1798, 2011 WL

_____

relating to when Ms. Allen "formed an actual intent to file litigation."  *Id*. at 2.

4592689, at *5 (E.D. N.Y. Sept. 30, 2011) ("It is generally not unreasonable for the owner of a boat damaged by fire to retain it for a period and then dispose of it."). Here, there was nothing unreasonable about Ms. Allen's decision to trade in her vehicle towards a more fuel efficient vehicle, especially considering she had not yet consulted with an attorney about her legal rights. *See Durham v. County of Maui*, No. 08-00342, 2010 WL 520699, at *4-5 (D. Haw. Feb 10, 2010) (finding plaintiffs did not have notice that they may have had legal claims in which the subject vehicle was relevant until they first met with counsel, which was after it had already been destroyed); *Drooger v. Carlisle Tire & Wheel Co.*, No. 1:05-CV-73, 2006 WL 1008719, at *5 (W.D. Mich. Apr. 18, 2006) (refusing to dismiss product defect class action against tire manufacturer based on vehicle owner's failure to keep tire shreds, noting that the named plaintiff "had no reason to expect that the failed tire would become evidence or otherwise suspect he would need to keep the useless shards of rubber"); *Fitting v. Dell, Inc.*, No. CVA06-23-S-LMB, 2008 WL 2152233, at *5-6 (D. Idaho May 21, 2008) (denying sanctions based on plaintiff's failure to preserve laptop battery alleged to have caused fire because plaintiff did not decide to sue until later).

In short, there is simply no basis to conclude that litigation was "probable" when Ms. Allen traded in her vehicle for a more fuel efficient model. Accordingly, Ms. Allen was under no duty to preserve her vehicle and Chrysler's motion for sanctions must be denied.

## 2. Chrysler has failed to establish that Plaintiff Allen had a culpable state of mind.

Furthermore, even if Chrysler could establish that Plaintiff Allen had a duty to preserve her vehicle, its spoliation claim would still fail because Chrysler cannot establish that Ms. Allen had a culpable state of mind.

- 11 -

"'Courts have not been uniform in defining the level of culpability – be it negligence, gross negligence, willfulness, or bad faith – that is required before sanctions are appropriate for evidence destruction.'" *Reinsdorf*, 296 F.R.D. at 627 (quoting *Ashton v. Knight Transp., Inc*., 772 F.Supp.2d 772, 800 (N.D. Tex. 2011)). In the Ninth Circuit, "a party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions." *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006).[9]  However, "a party's motive or degree of fault in destroying evidence is relevant to what sanction, *if any*, is imposed*." Id.* (emphasis added).

"The Ninth Circuit has not clearly articulated the degree of culpability necessary to warrant an adverse inference instruction.  However, courts in this Circuit have found that an adverse inference instruction may be warranted where the destruction was either *willful or grossly negligent*." *Reinsdorf*, 296 F.R.D. at 627 (citing cases).  *See also Apple Inc.*, 888 F.Supp.2d at 993 (even where three-part spoliation test is satisfied, a court may deny request for adverse inference where degree of fault and level of prejudice were insufficient to justify the imposition of the sanction).

An important fact that distinguishes this case from those in which courts have found spoliation to be sanction-worthy is that Plaintiff Allen is a layperson who lacked legal representation at the time of the alleged spoliation. *Compare Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Excelsior Trading Corp*., No. 07-CV-3224, 2008 WL 1771917, at *3 (E.D. N.Y. Apr. 15, 2008) ("[A]t the time the TRO was served, defendants had not yet retained an attorney or appeared before the undersigned.  Accordingly, I find that the August 2007 [incident] does not

---

[9]  Mere negligence may be sufficient to justify sanctions under certain circumstances. *See, e.g., Montoya*, 2013 WL 6705992, at *9.  However, "when the spoliating party was merely negligent, the innocent party must prove both relevance and prejudice in order to justify the imposition of a severe sanction." *Reinsdorf*, 296 F.R.D. at 628.

1  constitute spoliation of evidence."); *Medina v. Rose Art Indus., Inc*., No. Civ.A. 02-
2  CV-1864, 2003 WL 1877563, at *2 (E.D. Pa. Feb 28, 2003) (distinguishing
3  authorities cited by defendant in support of sanctions, noting that in those cases
4  "spoliation … occurred after the plaintiff retained counsel") *and Bowman v.*
5  *American Med. Sys., Inc.*, No. CIV. A. 96-7871, 1998 WL 721079, at *4 (E.D. Pa.
6  Oct. 9, 1998) ("[Plaintiff] must bear some degree of fault in the loss of the
7  Prosthesis.  Like plaintiffs in *Rosselli* and *Austin*, Bowman had legal counsel before
8  spoliation of evidence occurred.").

9      While it is undoubtedly true that legal representation is not always a
10  prerequisite for spoliation – especially in cases involving sophisticated parties –
11  courts in this Circuit recognize that "[t]he preservation obligation **runs first to**
12  **counsel**, who has a duty to advise his client of the type of information potentially
13  relevant to the lawsuit and of the necessity of preventing its destruction." *Surowiec*
14  *v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1006 (D. Ariz. 2011) (emphasis
15  added).  *See also Montoya*, 2013 WL 6705992, at *10 (similar).

16      Notably, almost all of the vehicle spoliation cases cited by Chrysler in
17  support of sanctions involved situations where the vehicle was destroyed *after* the
18  plaintiff had obtained legal counsel, or involved *pro se* plaintiffs who explicitly
19  threatened legal action against the defendant prior to disposing of the vehicle.  *See*
20  *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 941-43 (11th Cir. 2005) (finding
21  spoliation where plaintiff's counsel issued demand letter to defendant vehicle
22  manufacturer, failed to identify the location of the vehicle upon defendant's request,
23  and then permitted his insurer to salvage the vehicle); *Silvestri v. General Motors*
24  *Corp.*, 271 F.3d 583, 586-92 (4th Cir. 2001) (finding spoliation where plaintiff
25  retained attorney, ignored his expert's advice to allow the defendant vehicle
26  manufacturer to inspect the vehicle, and then allowed an insurer to sell the vehicle);
27  *Erlandson v. Ford Motor Co.*, No. 08-CV-1137, 2009 WL 3672898, at *1-4 (D. Or.
28

- 13 -

Oct. 30, 2009) (*pro se* plaintiff committed spoliation by selling vehicle a year after sending defendant manufacturer a demand letter for $15,000 in exchange for waiver of claims).[10]  These authorities are neither persuasive, nor analogous to the present case.  *See Pacificorp v. Gas Transmission Northwest Corp.*, No. 3:10-cv-00099, 2014 WL 186903, at *4-5 (D. Or. Jan. 14, 2014) (rejecting defendant's spoliation arguments based on *Erlandson* and *Azad*, noting that they "are not controlling" and "factually distinguishable"); *Durham*, 2010 WL 520699, at *5 n.3 (distinguishing *Silvestri* because there the vehicle was destroyed even though plaintiff, his attorney, and his retained experts all had access to the vehicle and plaintiff recognized that he would bring suit against General Motors).

Here, it would be wholly unreasonable to expect a consumer like Ms. Allen to know that she had a duty to keep her vehicle, even though she had not yet identified a legal claim or even consulted with an attorney.  None of the rationales behind adverse inference sanctions identified by the Ninth Circuit justify such a result.[11]

### 3. Chrysler is not substantially prejudiced by the unavailability of the vehicle.

"Courts generally agree that 'relevance' for spoliation purposes 'is a two-

---

[10] *Cf. Azad v. Goodyear Tire & Rubber*, No. 2:11-cv-00290, 2013 WL 593913, at *1-3 (D. Nev. Feb. 14, 2013) (granting summary judgment against *pro se* plaintiff for failing to identify *any* evidence of defect, and noting in dicta that dismissal was also justified on spoliation grounds based on plaintiff's "willful" and "deliberate" pre-suit sale of the vehicle).

[11] The Ninth Circuit has explained that the adverse inference sanction is based on two rationales: (1) "the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document **is more likely to have been threatened by the document** than the party in the same position who does not destroy the document" and (2) the "**prophylactic and punitive effect**" of allowing the trier of fact to draw the adverse inference, which deters evidence destruction. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (emphasis added).

- 14 -

pronged finding of relevance and prejudice' because 'for the court to issue sanctions, the absence of the evidence must be prejudicial to the party alleging spoliation of evidence." *Reinsdorf*, 296 F.R.D. at 627 (quoting *Victor Stanley v. Creative Pipe, Inc.*, 269 F.R.D. 497, 531 (D. Md. 2010)).  *See also Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 616 (S.D. Tex. 2010) ("Courts recognize that a showing that the lost information is relevant and prejudicial is an important check on spoliation allegations and sanctions motions.") (citing cases).  The prejudice inquiry "looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 959 (9th Cir. 2006).

Despite Chrysler's protestations to the contrary, its inability to conduct a first-hand inspection of Plaintiff's vehicle does not significantly hinder its ability to mount a defense in this case.   Plaintiff Allen alleges not that her particular Replacement Regulators were defective, but rather that all of the Replacement Regulators manufactured and sold by Chrysler were defective.   In such circumstances, courts recognize that the parties' inability to inspect a particular vehicle is not substantially prejudicial insofar as the parties may rely on analysis of an exemplar product.  *See, e.g., Talavera v. Ford Motor Co.*, 932 F.Supp.2d 252, 256 (D. P.R. 2013) ("When a plaintiff's claim is based on a design defect … the design defect, by definition, would be found in the entire run of the vehicle model in question.  In claims based on a design defect, therefore, spoliation of the vehicle is not as prejudicial as in manufacturing defect cases."); *Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 29 (1st Cir. 1998) (similar);  *Schmid v. Miwaukee Elec. Tool Corp.*, 13 F.3d 76, 79-80 (3d Cir. 1994) (similar);  *Green v. Ford Motor Co.*, No. 1:08-cv-0163, 2008 WL 5070489, at *4 (S.D. Ind. Nov. 25, 2008) (denying spoliation sanctions because party was not prejudiced where "[a]n examination of the specific Explorer in question is essentially irrelevant to the issue of whether it,

- 15 -

1    and the thousands of others like it, were designed improperly").[12]

2         Moreover, even those courts that have found sanctions to be appropriate in

3    vehicle spoliation cases have done so primarily "for the purpose of ***leveling the***

4    ***evidentiary playing field…" Silvestri***, 271 F.3d at 590.  *See also Talavera*, 932

5    F.Supp.2d at 258 ("In cases of spoliation such as this one, the most common

6    sanction is exclusion of testimony of parties who had a chance to view the vehicle

7    before spoliation.").  This is not a situation where Ms. Allen intends to unfairly rely

8    upon evidence gathered prior to the vehicle's sale.  *See, e.g., Goodwin v. Nissan*

9    *North America, Inc*., No. 3:11-cv-00306, 2012 WL 2237110, at *5 (W.D. Tenn. June

10   15, 2012) (excluding testimony from Plaintiff's expert regarding inspection of

11   vehicle – but  no other subjects – as sanction for plaintiff's disposal of vehicle *after*

12   *filing suit,* to ensure parties may proceed on "equal footing"); *Quaglietta v. Nissan*

13   *Motor Co., Ltd*., No. Civ. A. 97-5965, 2000 WL 1306791, at *3 (D. N.J. Aug. 16,

14   2000) (excluding plaintiff's photographs and related evidence regarding condition of

15   truck as sanction for disposing of vehicle *after filing suit*).[13]

16        Here, sanctions are not necessary because both parties are already on equal

17   footing insofar as neither party seeks to introduce evidence based on the pre-sale

18   _____

19   [12] *Compare Beil v. Lakewood Eng'g and Mfg. Co*., 15 F.3d 546 553 (6th Cir.
     1994) (reversing dismissal of product liability action based on plaintiff's pre-suit

20   disposal of heater, noting "Cases are often tried even though a crucial piece of
     evidence is unavailable….In a product liability case based on a design defect,

21   the plaintiff could demonstrate through expert testimony … that the product's
     design was defective; and therefore, each product, including the unavailable

22   product was defective"); *with Tripp v. Ford Motor Co*., No. CIV. A. 95-2661,
     1996 WL 377122, at *3-4 (E.D. Pa. July 3, 1996) (awarding mild adverse

23   inference instruction as the result of second piece of evidence disappearing after

24   plaintiff's expert examined it, despite noting that "Ford will not be significantly

25   prejudiced" by loss of the vehicle).

26   [13] *Cf. Silvestri*, 271 F.3d at 595 (affirming dismissal of plaintiff's action as
     sanction for disposing of vehicle after plaintiff's expert inspected it, noting that

27   "if the court denied [plaintiff's] experts from testifying, as would be an

28   alternative, then [plaintiff] would have no case at all").

- 16 -

1    inspection of the vehicle. *See North v. Ford Motor Co.*, 505 F.Supp.2d 1113, 1117

2    (D. Utah 2007) (declining to award sanctions against plaintiff for authorizing insurer

3    to salvage vehicle alleged to have design defect, noting that parties are "fairly

4    equally prejudice by the lack of the vehicle"); *Talavera*, 932 F.Supp.2d at 258-59

5    (refusing to impose sanctions against plaintiffs based pretrial disposal of vehicle

6    because parties' respective experts had access to same exemplar vehicle, noting that

7    "[w]hen the chance of prejudice to the defense is small and the plaintiffs appear to

8    have acted less than maliciously, … courts typically do not impose sanctions").

9         Chrysler offers various reasons why it believes it was prejudiced by its

10    inability to inspect Ms. Allen's vehicle first hand.  Tellingly, however, few of them

11    relate to the *merits* of Ms. Allen's Regulator Defect claim.  *See Leon v. IDX Sys.*

12    *Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (inquiry "looks to whether the [spoiling

13    party's] actions impaired [the non-spoiling party's] ***ability to go to trial*** or threatened

14    to interfere with the rightful decision of the case") (emphasis added); *Apple, Inc.,*

15    888 F.Supp.2d at 994 (finding it "difficult to conclude that Apple's 'ability to go to

16    trial' was significantly hampered" in case in light of voluminous discovery in case).

17    Instead, Chrysler contends that its inability to examine Ms. Allen's vehicle impacts

18    "its ability to oppose class certification." Def.'s Br. [Doc. 114] at 11 (arguing that

19    inspection "***may***" have uncovered unique defenses, causation issues, or evidence that

20    Ms. Allen's vehicle was atypical).  As a threshold matter, Chrysler has not cited any

21    authority to support its position that a party suffers prejudice for purposes of

22    spoliation analysis when the unavailable evidence might have assisted it oppose

23    class certification, rather than the merits.

24         Additionally, Chrysler's arguments about potential peculiarities that an

25    inspection of Ms. Allen's vehicle *might* have uncovered are speculative.  "Mere

26    speculation is an insufficient basis for a finding of spoliation."  *U.S. Legal Support,*

27    *Inc. v. Hofioni*, 2:13-CV-1770 LKK AC, 2014 WL 172336, at 4 (E.D. Cal. Jan. 15,

28

PLAINTIFFS' OPPOSITION TO CHRYSLER GROUP LLC'S
MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

1  2014) (without evidence regarding contents of lost data, "the court cannot conclude
2  or even reasonably infer that spoliation, let alone spoliation of *relevant* evidence, has
3  in fact occurred") (emphasis in original).  *See also Lights of Am. Inc*., 2012 WL
4  695008, at *4 ("Mere speculation that documents must have been destroyed in the
5  absence of a litigation hold is insufficient to show spoliation.").

6  Notably, Ms. Allen testified that the broken parts her father found while
7  screwing each of the rear windows permanently shut were discarded.  *See* Allen
8  Dep. at pp. 141, 144.  Accordingly, a physical inspection of the vehicle would have
9  likely offered Chrysler limited probative value regarding the Regulator Defect at
10 issue in this case.

11 And in any event, much of the information Chrysler could have obtained via
12 inspection is available from other sources, such as vehicle records and testimony of
13 dealer technicians.  *See Pacificorp,* 879 F.Supp.2d  at 1190-91 ("[T]he existence of
14 secondary evidence can reduce prejudice caused by the inadvertent loss of primary
15 evidence."); *Collazo-Santiago,* 149 F.3d at 29 (district court did not abuse its
16 discretion by refusing to award sanctions for spoliation of vehicle because "evidence
17 as to many of these issues could also have been attained through other means, such
18 as through the testimony of the plaintiff…, through photographs of the car after the
19 accident, and through accident reconstruction"); *Apple, Inc*., 888 F.Supp.2d at 944
20 (showing of prejudice weak where "Apple should have been able to glean much
21 material evidence from the documents actually produced, the extensive deposition
22 testimony, and the written discovery between the parties") (internal quotes omitted);
23 *Simon v. Mercedes Benz N.A*., CIV A 95-2705, 1996 WL 103796, at *5 (E.D. Pa.
24 1996) (finding defendant vehicle manufacturer's prejudice "questionable" in light of
25 voluminous vehicle records evidencing recurring problem with vehicle).   For
26 instance, Chrysler argues that an inspection is necessary to determine whether the
27 failed regulators installed in Ms. Allen's vehicle by a *Chrysler dealer* were actually
28

- 18 -

Chrysler parts, because Chrysler dealers are not "required to use Chrysler-manufactured parts" and *Chrysler dealer* records may not be accurate. Radyko Decl. [Doc. 115] at ¶¶9-10; Def.'s Br. [Doc. 114] at 11. This argument is specious. Surely Chrysler has alternative means of determining whether its *own dealer* sells competitor's products.[14] Nor does Chrysler need an inspection to determine whether Ms. Allen tinted her windows or made any other owner installed modifications. *Compare* Radyko Decl. at ¶15, *and* Allen Dep. at p. 78 ("Q: Did you ever add anything on to the vehicle after you purchased it? A: Just magnets … Q: Did you ever put any window tinting? A: No.").

Because Chrysler has failed to establish that it suffered any significant prejudice as the result of Ms. Allen's pre-litigation sale of her vehicle, Chrysler's motion for sanctions should be denied. *See Cartagena v. Suzuki Motor Co., Ltd.*, 7 F.Supp.2d 109, 113 (D.P.R. 1998) (denying spoliation motion and rejecting defendant vehicle manufacturer's argument that vehicle was needed for plaintiff to establish causation).

**C.** **Adverse Inference Instruction and Adverse Class Certification Ruling Are Inappropriate Sanctions.**

Even if Chrysler could establish spoliation in this case, neither an adverse

---

[14] In his declaration in support of sanctions, Mr. Radyko states that a vehicle inspection was necessary because inspection of Plaintiff Doyle's front passenger door revealed an aftermarket replacement regulator. This is not surprising, however, because the undisputed record shows that that particular regulator was not installed by a Chrysler dealer and is therefore not part of this lawsuit. Chrysler has not identified a single non-Chrysler replacement regulator installed by a Chrysler dealer. *See also* Exh. B to Sherwood Decl., ("Radyko Dep.") at pp. 32-33 ("Q: If there was a 2005 Jeep Liberty that … had come in with a window regulator problem, would the window regulator that would be placed into the vehicle be the same as the one that was originally in the vehicle? A: … If all of the service has been done at a Chrysler dealership -- Q: Right, assume that. A: -- and they've always had service done at the Chrysler dealership, then it would be [a Chrysler] component.").

- 19 -

1  inference instruction, nor a "finding that Allen is not a proper class representative,"

2  is an appropriate sanction here.

3      An adverse inference instruction, like default judgment and case dismissal, is

4  one of the "most severe sanctions" available for spoliation. *Sampson v. City of*

5  *Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008). *See also Apple Inc. v.*

6  *Samsung Electronics Co., Inc.*, 888 F.Supp.2d 976, 994 (N.D. Cal. 2012)

7  ("Certainly, an adverse inference instruction is a 'lesser' sanction than dismissal or

8  default. That it is a comparatively less severe sanction, however, does not mean it

9  should be imposed casually.").[15] Chrysler has failed to establish any misconduct or

10  prejudice justifying such a severe sanction. *See Davis v. Ford Motor Co.*, 375

11  F.Supp.2d 518, 523 (S.D. Miss. 2005) (declining to provide negative inference jury

12  instruction based on vehicle owner's sale and subsequent repair of vehicle because

13  "the design of the accident vehicle is presumably no different from every other 2000

14  Ford Explorer").

15      Chrysler's request for adverse inference instruction at this stage of the

16  litigation is also premature. *See Durham v. Cty. of Maui,* No. CIV 08-00342, 2010

17  WL 3528991, at *8 (D. Haw. Sept. 10, 2010) (denying motion for adverse inference

18  instruction without prejudice to raising the issue at trial); *Bel Air Mart v. Arnold*

19  *Cleaners, Inc.*, No. 2:10-cv-02392, 2014 WL 763185, at 5-6 (C.D. Cal. Feb. 21,

20

---

21  [15] *See also Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 619

22  (S.D. Tex. 2010) (adverse inferences are "among the most severe sanctions a
    court can administer"); *Keithley v. Homestore.com, Inc.*, No. C-03-04447, 2008

23  WL 4830752, at *10 (N.D. Cal. Nov. 6, 2008) ("[A]n adverse inference
    instruction is a harsh remedy."); *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244

24  F.R.D. 335, 340 (M.D. La. 2006) (adverse inference sanctions are "drastic");

25  *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 219 F.R.D. 93, 100–01
    (D.Md.2003) (adverse inference sanctions are "extreme" and "not to be given

26  lightly"); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219–20 ("In practice,

27  an adverse inference instruction often ends litigation—it is too difficult a hurdle
    for the spoliator to overcome.... Accordingly, the adverse inference instruction is

28  an extreme sanction and should not be given lightly.").

- 20 -

1  2014) (similar); *Urrutia v. Ekdahl*, No. CV 03-1990, 2005 WL 5976564, at *3 (D.
2  Ariz. July 15, 2006) (similar); *Progressive Cas. Ins. Co. v. Winnebago Indus., Inc.*,
3  No. 08-343, 2010 WL 6371906, at *6 (W.D. Pa. Nov. 18, 2010) (declining to grant
4  request for adverse inference instruction, noting that "pretrial rulings curtailing proof
5  'should rarely be granted' and 'excluding evidence … at the pretrial stage is an
6  extreme measure that is rarely necessary'") (internal cites omitted).

7       Moreover, "an adverse inference instruction can take many forms … ranging
8  in degrees of harshness." *Apple, Inc.*, 888 F.Supp.2d at 994.   Chrysler has not even
9  bothered to provide the Court with particular language to consider for its requested
10  instruction.  *See Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 523 (D. Md.
11  2009) (rejecting proposed instruction language as too harsh, finding they would be
12  "tantamount to instructing them to find in [defendant's] favor"); *Apple, Inc.*, 888
13  F.Supp.2d at 994 (finding magistrate's proposed instruction too harsh, noting that
14  evidence of prejudice was "not particularly strong").   Without a particular
15  instruction to consider, the Court cannot possibly grant Chrysler's request.

16       Nor is Chrysler entitled to a finding that Allen is not a proper class
17  representative.   As a threshold matter, while Chrysler has cited two class
18  certification decisions for the proposition that a given plaintiff may not be an
19  adequate class representative if he or she is subject to a unique defense,[16] Chrysler
20  provides no authority supporting its contention that denial of class certification is an

21  [16] *See Falcon v. Philips Electronics N. Am. Corp.*, 304 F. App'x 896, 897 (2d
22  Cir. 2008) (trial court did not abuse discretion by denying motion to certify class
23  because (1) plaintiff's husband had purchased the allegedly defective television;
24  (2) her husband's disposal of the television prevented her from obtaining the
relief sought-namely, the repair or replacement of the set; and (3) without the
25  allegedly defective television set, plaintiff will likely have much more difficulty
26  showing design defect than would someone who could produce the product for
examination); *Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 257 (N.D. Cal.
27  2012) (credible accusations that plaintiff erased documents before mailing USB
drive to defendant in order to conceal wrongdoing will impede plaintiff's ability
28  to vigorously represent class).

appropriate form of sanction for spoliation.  *See, e.g., Aguirre v. Home Depot U.S.A., Inc.*, 1:10-CV-00311-LJO, 2012 WL 3639074, at *2 (E.D. Cal. Aug. 23, 2012) (identifying the "three types of non-monetary sanctions" available for spoliation as adverse inference instruction, exclusion of evidence, and dismissal or default judgment); *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 13-CV-01806-JCS, 2014 WL 1338480, at *7 (N.D. Cal. Apr. 1, 2014) (similar);  *Vieste, LLC v. Hill Redwood Dev.*, C-09-04024 JSW DMR, 2011 WL 2198257, at *2 (N.D. Cal. June 6, 2011) (similar).  It is difficult to imagine why innocent class members should be punished for the alleged wrongdoing of Ms. Allen, especially where, as here, Chrysler's ability to defend itself *on the merits* is largely unaffected.

Additionally, the presence of a potential unique defense will normally not preclude class certification unless it "will skew the focus of the litigation and create a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Meijer, Inc. v. Warner Chilcott Holdings Co.* III, 246 F.R.D. 293, 302 (D. D.C. 2007) (quotations omitted).  *See also Lewis v. First Am. Title Ins. Co*., 265 F.R.D. 536, 557 (D. Idaho 2010) ("The mere fact that a putative class representative … is subject to a unique defense does not render her atypical for purposes of class action certification unless that defense threatens to become the focus of litigation thereby prejudicing the absent class members.") (internal quotes omitted); *Huberman v. Tag-It Pac. Inc*., 314 F. App'x 59, 62 (9th Cir. 2009) (reversing denial of class certification based on unique defense, because "[a]lthough the existence of a unique defense that would affect the focus of the case at trial can support an atypicality finding under certain circumstances … the purported factual basis for this defense is insufficient to warrant such a finding here").

In fact, at least two district courts have expressly rejected Chrysler's "unique defense" argument premised on allegations of spoliation.  *See In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.,* 2:08-MD-1919 MJP, 2010 WL 4272567,

at *9 (W.D. Wash. Oct. 12, 2010) (rejecting unique spoliation defense argument and distinguishing *Falcon* because the "purported destruction does not threaten to become the focus of the litigation"); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 287 F.R.D. 1, 33 (D.D.C. 2012) ("Court is satisfied that this alleged [spoliation] defense presents a question of law and fact 'that can readily be resolved by the Court without skewing the focus of the litigation or creating a significant danger of distracting [plaintiffs'] ability to pursue the interests of the absent class members"), vacated on other grounds, *In re Rail Freight Fuel Surcharge Antitrust Litig.*-MDL No. 1869, 725 F.3d 244 (D.C. Cir. 2013).[17]

In conclusion, Chrysler is not entitled to an adverse inference instruction or a finding that Ms. Allen is not an adequate representative.

## IV.   CONCLUSION

For all of the foregoing reasons Plaintiffs respectfully request that the Court deny Chrysler's Motion for Sanctions for Spoliation of Evidence in all respects.

Dated: August 4, 2014

FOLEY BEZEK BEHLE & CURTIS, LLP
ARIAS OZZELLO & GIGNAC LLP
GOLDENBERG SCHNEIDER, L.P.A.


By:   /s/ J. Paul Gignac
            J. Paul Gignac
            Attorneys for Plaintiffs

---

[17] *See also Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 591 (C.D. Cal. 2008) (certifying CLRA class of vehicle owners over defendant's argument that "plaintiffs are subject to spoliation of evidence defenses for knowingly discarding service records").

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SANTA BARBARA

I am employed in the State of California, County of Santa Barbara.  I am over the age of 18 and not a party to the within suit; my business address is 115 S. La Cumbre Lane, Suite 300, Santa Barbara, California 93105.

On August 4, 2014, I served the document described as:

**PLAINTIFFS' OPPOSITION TO CHRYSLER GROUP, LLC'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

on the interested parties in this action by sending [ ] the original [or] [✔] a true copy thereof to interested parties as follows:

"SEE ATTACHED MAILING LIST"

[ ]      **BY MAIL (enclosed in a sealed envelope):** I deposited the envelopes for mailing in the ordinary course of business at Santa Barbara, California.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice, the sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Santa Barbara, CA

[ ]      **BY FAX:** I hereby certify that this document was served by facsimile delivery on the parties listed herein at their most recent fax number of record in this action from Santa Barbara, California.

[✔]     **BY CM/ECF:** I hereby certify that this document was served by the court's CM/ECF system.

[✔]     **BY E-MAIL:** I hereby certify that this document was served by e-mail delivery on the parties listed herein at their most recent e-mail addresses of record in this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **August 4, 2014** at Santa Barbara, California.


Jennifer S. Hunt
Type or Print Name                                          Signature

**PROOF OF SERVICE**

1
2

# EXHIBIT A
## (EMAIL LIST FOR E-SERVICE)

3

*For Chrysler Group LLC:*

4
5

Kathy A. Wisniewski
kwisniewski@thompsoncoburn.com

6

John W. Rogers
jrogers@thompsoncoburn.com

7
8

Stephen D'Aunoy
SDAunoy@thompsoncoburn.com

9
10

Amand Mines
amand.mines@sedgwicklaw.com

11

12

*For Plaintiffs:*

13
14

Peter J. Bezek
pbezek@foleybezek.com

15
16

Robert A. Curtis
rcurtis@foleybezek.com

17

Jeffrey S. Goldenberg
jgoldenberg@gs-legal.com

18
19

Todd Naylor
tnaylor@gs-legal.com

20
21

J. Paul Gignac
j.paul@aogllp.com

22

Mischa Barteau
mbarteau@aogllp.com

23
24
25
26
27
28

1